# UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

**[DRAFTED WITH AI ASSISTANCE — ALL CITATIONS AND FACTUAL ASSERTIONS INDEPENDENTLY VERIFIED]**

CORIAN EDWARDS,

Plaintiff, v.

BELLAGIO, LLC d/b/a BELLAGIO
HOTEL & CASINO et al.,

Defendants.

Case No. 2:25-cv-01247-JAD-MDC

## STIPULATION REGARDING DISCOVERY DISPUTE

Pursuant to LR 26-7 and the Court's Standing Order governing discovery disputes, Plaintiff Corian Edwards (pro se) and Defendants Bellagio, LLC and MGM Resorts International, by and through their counsel of record, jointly submit this Stipulation Regarding Discovery Dispute.

## I.  JOINT SUMMARY OF THE DISCOVERY DISPUTE

The dispute presented by this Stipulation is Defendants' conduct in the meet-and-confer process required by LR IA 1-3(f) and the Court's Standing Order. The dispute does not concern the substance of any particular discovery request. Plaintiff contends that Defendants have not engaged in the good-faith conferral those rules require — by cancelling a confirmed conference on shifting grounds, imposing an undisclosed time limit, filibustering, departing conferences before the substance was reached, and consuming conference time on collateral matters — and that this conduct is what prevents the parties from resolving or narrowing their discovery disputes. Defendants dispute this characterization; their position appears in Section IV.B.

Because of that conduct, and with the discovery period set to close in July 2026, Plaintiff asks the Court to waive or excuse the meet-and-confer prerequisite for the outstanding disputes and permit the parties to proceed to motion practice, or, in the alternative, to impose structural safeguards on any further conferral. Plaintiff does not ask the Court to resolve the merits of any individual discovery request.

*Defendant has failed to respond to requests for participation between 6/6/2026 and 6/9/2026.*

**II.  RESTATEMENT OF THE MATTER IN DISPUTE (DEFENDANTS' CONDUCT)**

The Standing Order permits this section to be presented in single-spaced, 10-point font, and it is set out that way here. Because the dispute concerns Defendants' conduct in the meet-and-confer process rather than the substance of any discovery request, the matter in dispute is restated below as the specific conduct at issue.

**1.**  Same-day cancellation of a confirmed conference on shifting grounds. On May 19, 2026, defense counsel wrote that he was "available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd," and Plaintiff selected 4:00 p.m. on May 21. Approximately eighty minutes before that conference, defense counsel asked to "push our meet-and-confer conference to tomorrow," stating he had "a settlement conference this afternoon that likely will not be finished by 4:00." After Plaintiff offered to begin at 4:30 or 5:00 — within counsel's stated post-2:30 availability — counsel declined, citing "family commitments tonight," directed Plaintiff to "provide your availability next week," and stated, "It's your meet-and-confer request, not mine." Plaintiff noted this was the third confirmed conference cancelled or missed same-day by defense counsel.

**2.**  Imposition of an undisclosed time limit. At the outset of the May 27, 2026 conference (held by Zoom, from approximately 10:00 to 11:00 a.m.), defense counsel announced that he had only sixty minutes available, after previously representing that he would allow as much time as the conferral required. Within that limit the parties did not reach Interrogatories Nos. 6 through 25, the comparator-data dispute, or the mitigation dispute.

**3.**  Filibustering and refusal to identify authority. During the May 27 conference, when Plaintiff asked counsel to identify the specific legal standard supporting his count of nine on Interrogatory No. 7, counsel spent approximately twelve to fifteen minutes deflecting, generalizing, and ultimately reading Kendall — the case Plaintiff himself had cited — aloud, rather than answering. A direct answer identifying counsel's authority would have taken seconds; instead the limited time was consumed. Counsel also threatened to terminate the conference while Plaintiff pressed the point.

**4.**  Departure from conferences before the substance was reached. The June 2, 2026 conference (held by Microsoft Teams), scheduled to run until 5:00 p.m., began at approximately 3:00 p.m. and defense counsel disconnected at approximately 3:27 p.m. — after Plaintiff corrected counsel's mischaracterization of a scheduling exchange. The June 4, 2026 conference (held by Microsoft Teams) was scheduled from 10:00 a.m. to 1:00 p.m. but ended after approximately one hour. Zero substantive agenda items were reached in either session.

**5.**  Consumption of conference time on collateral matters. During the June 4 conference, defense counsel repeatedly questioned whether Plaintiff was recording or transcribing the session — approximately forty times by Plaintiff's count — continuing after Plaintiff answered directly that he was not recording, and directed Plaintiff to stop speaking. No discovery item was addressed.

### III.  JOINT SUMMARY OF MEET-AND-CONFER EFFORTS (LR IA 1-3(f))

**Manner, time, place, and participants.** The parties conducted meet-and-confer conferences by Zoom on May 27, 2026 and by Microsoft Teams on June 2 and June 4, 2026. The May 27 conference lasted approximately one hour (10:00–11:00 a.m.). The June 2 conference began at approximately 3:00 p.m. and ended at approximately 3:27 p.m. The June 4 conference was scheduled from 10:00 a.m. to 1:00 p.m. and lasted approximately one hour. A further conference scheduled for May 21, 2026 did not occur. The participants were Plaintiff Corian Edwards, appearing pro se, and Chad C. Butterfield, Esq., of Jackson Lewis P.C., on behalf of Defendants.

**Summary of discussions:** At the May 27 conference the parties narrowed several counting disputes as to Interrogatories Nos. 1 through 5; they did not reach the remaining interrogatories or the document-production, comparator-data, insurance, or mitigation disputes. The June 2 and June 4 conferences did not reach the substance of any dispute. The related correspondence of May and June 2026 concerned the scheduling and conduct of the conferral itself.

**Inability to resolve:** Despite these conferences, the parties were unable to resolve or narrow the disputes. Plaintiff's position is that resolution was prevented by Defendants' failure to engage in good-faith, substantive conferral, as set forth in Section IV.A; Defendants' position is set forth in Section IV.B. Plaintiff certifies, pursuant to LR IA 1-3(f), that he made a sincere effort to confer and resolve these matters and that they cannot be resolved without the Court's intervention.
*Defendant has failed to respond to requests for participation between 6/6/2026 and 6/9/2026.*

### IV.  RESPECTIVE POSITIONS OF THE PARTIES

**A.  Plaintiff's Position**

The dispute Plaintiff presents is Defendants' failure to participate in the good-faith meet-and-confer process that LR IA 1-3(f) and the Standing Order require. The Standing Order directs that conferral occur by in-person, videoconference, or telephone conference; states that a mere exchange of letters or e-mails does not satisfy the requirement; and conditions any discovery relief on completion of that process. Plaintiff has repeatedly sought that conferral, and Defendants' conduct has prevented the parties from completing it.

The conduct restated in Section II is the antithesis of the good-faith effort the rules require: a same-day cancellation of a confirmed conference on shifting grounds, an undisclosed sixty-minute limit imposed at the May 27 session, filibustering and a refusal to identify authority, early departures from the June 2 and June 4 conferences — each set for three hours — and the use of conference time on collateral questions. The single session that reached the substance, on May 27, produced agreement narrowing several disputes before counsel's time limit cut it off; the two sessions that followed were abandoned after a fraction of their scheduled time. The obligation to confer is mutual; it is not Plaintiff's burden alone, and it is not met by appearing briefly and then disengaging. The disputes that remain are unresolved not because the parties disagree on the merits, but because the conferral required to address them has been repeatedly truncated or abandoned.

LR IA 1-3(f) and Fed. R. Civ. P. 37(a)(1) require a movant to confer or to "attempt to confer" in good faith; by its terms the obligation can be met through genuine effort even where the opposing party refuses to engage. Plaintiff has attempted conferral repeatedly and in good faith, and Defendants' conduct — not any failure by Plaintiff — has prevented resolution. Under this Court's procedures, motion practice is gated by conferral and the stipulation process; when the party that benefits from delay controls that gate, it becomes a bar to the Court rather than a path to resolution, and further conferral would be futile.

Following Plaintiff's submission of this stipulation on June 6, 2026, Defendants' counsel proposed an in-person meet-and-confer as a substitute for participating. Plaintiff does not oppose a change in conferral venue. However, counsel has not identified any deficiency in the prior conferral process that an in-person format would remedy, nor has he articulated how changing the platform would prevent the conduct documented in Section II — same-day cancellations, undisclosed time limits, filibustering, early departures, and the consumption of entire sessions on collateral questioning. None of that conduct is a function of the videoconference format. Defendants contend the conferral process is not yet exhausted, but have offered no rationale for why further conferral would not be equally futile.

The discovery period closes in July 2026, and the two conferences since June 2 produced no substantive progress. If further conferral is ordered and follows the same pattern, discovery will close with these disputes unresolved — the result Defendants' conduct is engineering. The Court has authority under Fed. R. Civ. P. 16(c)(2)(F), LR IA 1-3(f), and its inherent authority to intervene now. Plaintiff therefore requests that the Court find his conferral obligation satisfied, or

further conferral futile, and permit the parties to proceed to motion practice; in the alternative, impose the safeguards set out in Plaintiff's proposal below; and award Plaintiff's reasonable expenses.

**B. Defendants' Position**
*Defendant has failed to respond to requests for participation between 6/6/2026 and 6/9/2026.*

**V. PROPOSALS OF COMPROMISE**
**A. Plaintiff's Proposal**
Plaintiff proposes the following resolution of the dispute over Defendants' conduct:
1. Primary. The Court waive the meet-and-confer prerequisite under LR 26-7 and LR IA 1-3(f) for the outstanding disputes and permit both parties to file discovery motions directly.
2. Alternative. The Court deem Plaintiff's Rule 37(a)(1) conferral obligation satisfied as to the currently outstanding disputes and permit motions without further conferral; and, for any future dispute, deem the obligation satisfied upon a single documented failed conference — a conference being "failed" only where the non-requesting party disconnects, refuses to address the noticed agenda, or consumes the session with unrelated matters, provided the requesting party remained present and willing to confer for the scheduled duration.
3. Safeguards. If the Court orders any further conferral: (a) the parties shall exchange written position statements at least forty-eight (48) hours beforehand, and no new authority or argument may be raised at the conference that was not included in that exchange; and (b) a neutral record shall be used, with Defendants bearing the cost in light of Plaintiff's pro se and unemployed status, or another no-cost neutral method imposed by the Court.
**B. Defendants' Proposal**
*Defendant has failed to respond to requests for participation between 6/6/2026 and 6/9/2026.*

Respectfully submitted this __9th__ day of June, 2026.

/s/ Corian Edwards                                                                          JACKSON LEWIS P.C.
Pro Se Plaintiff
7233 Majestic Bluff Place                                                          **Did Not Participate**
Las Vegas, NV 89113                                                                Chad C. Butterfield (NV Bar 10532)
(810) 449-5659                                                                           Paul T. Trimmer (NV Bar 9291)
coriandelon@gmail.com                                                          300 S. Fourth Street, Suite 900
                                                                                                    Las Vegas, NV 89101
                                                                                                    Attorneys for Defendants

                                                                                                    ___

**UNITED STATES DISTRICT COURT DISTRICT OF NEVADA**

CORIAN EDWARDS,                                Case No. 2:25-cv-01247-JAD-MDC
   Plaintiff, v.

BELLAGIO, LLC d/b/a BELLAGIO
  HOTEL & CASINO, et al.,
   Defendants.

### DECLARATION OF CORIAN EDWARDS IN SUPPORT OF STIPULATION REGARDING DISCOVERY DISPUTE

I, Corian Edwards, declare as follows:

1.    I am the Plaintiff in this action, appearing pro se. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.    On June 6, 2026, I transmitted to Defendant's counsel a Stipulation Regarding Discovery Dispute pursuant to LR 26-7 and the Court's Standing Order. Defendant's counsel responded with formatting deficiencies on June 8, 2026. I submitted a corrected version the same day. As of June 9, 2026, Defendant has not provided its section responses.

3.    Attached hereto as Exhibits A through G are true and correct copies of email correspondence between Plaintiff and Defendants' counsel, Chad C. Butterfield, Esq., of Jackson Lewis P.C., from March 2026 through June 2026, regarding the meet-and-confer process and the Stipulation Regarding Discovery Dispute. The emails are presented in the format in which they were received via Gmail.

4.    I have not altered, edited, or omitted any portion of the email correspondence attached as Exhibits A through G.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 9, 2026, in Las Vegas, Nevada.


_____
Corian Edwards
Plaintiff, Pro Se
7233 Majestic Bluff Place
Las Vegas, NV 89113
(810) 449-5659
coriandelon@gmail.com

# EXHIBIT A

Email Correspondence re: Meet-and-Confer Scheduling (March 11–12, 2026)

 Gmail                                        **Corian Edwards <coriandelon@gmail.com>**

---

## Case No. 2:25-cv-01247-JAD-MDC — Overdue Initial Disclosures, Preservation Notice, RFP Service Date, and Unilateral Discovery Plan
5 messages

---

**Corian Edwards** <coriandelon@gmail.com>                           Wed, Mar 11, 2026 at 9:44 PM
To: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>
Bcc: Corian Edwards <coriandelon@gmail.com>

Paul,

I am writing to address two outstanding items and to transmit Plaintiff's proposed discovery plan ahead of tomorrow's court filing deadline.

1. Initial Disclosures — Overdue

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant's initial disclosures were due fourteen days after the parties' Rule 26(f) conference on February 24, 2026 — that is, on or before March 10, 2026. As of the date of this email, I have not received Defendant's initial disclosures. Please provide them no later than end of business on March 26, 2026. If Defendant does not intend to serve initial disclosures by that date, please advise me in writing so that I may seek appropriate relief from the Court.

2. Evidence Preservation Notice — No Response

On February 26, 2026, I served a formal Evidence Preservation Notice on you and Ms. Portelli requesting written confirmation that a litigation hold had been implemented and identifying the custodians and systems subject to preservation. I requested confirmation within seven days — by March 5, 2026. I have not received any response. Please confirm in writing that a litigation hold has been issued and that routine deletion protocols applicable to the identified systems and custodians have been suspended.

3. RFP Service Date — Confirmed

At our February 24, 2026 Rule 26(f) conference, the parties discussed the service date of Plaintiff's Requests for Production, which were originally delivered on February 10, 2026. I indicated at that time that I would review the applicable rule before confirming the service date.

Having reviewed Federal Rule of Civil Procedure 26(d)(2), I confirm that Plaintiff's RFPs are deemed served as of February 24, 2026 — the date of the Rule 26(f) conference — as required by the rule. Defendant's responses are accordingly due on or before March 26, 2026. Please consider this email written confirmation of that service date and deadline.

4. Unilateral Discovery Plan — Attached

Following our February 24, 2026 meet and confer, you confirmed that the proposed discovery plan was acceptable with no changes needed. Despite that, I have not received a prospective joint plan. Because the Court's deadline for filing the discovery plan is March 13, 2026, I am transmitting Plaintiff's Unilateral Proposed Discovery Plan as an attachment to this email.

If you wish to submit a joint plan instead, please provide your proposed revisions by end of business today, March 12, 2026. If I do not hear from you by that deadline, I will file the unilateral plan with the Court on March 13, 2026 and will note Defendant's non-participation in the submission.

Plaintiff reserves the right to bring Defendant's failure to serve initial disclosures and failure to respond to the Evidence Preservation Notice to the Court's attention through any appropriate procedural mechanism available under the Federal Rules and the Court's scheduling orders.

Very Respectfully,
Corian Edwards
Plaintiff, Pro Se
7233 Majestic Bluff Place
Las Vegas, NV 89113
(810) 449-5659
coriandelon@gmail.com
--
Relax,
Corian

---

📄 **Unilateral_Discovery_Plan_March12.pdf**
92K

---

**Trimmer, Paul T. (Las Vegas)** <Paul.Trimmer@jacksonlewis.com>                    Wed, Mar 11, 2026 at 9:46 PM
To: Corian Edwards <coriandelon@gmail.com>, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr Edwards- Thank you for your email. It's 9:45 PM. I will send a discovery plan to you shortly.



**Paul Trimmer**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2472 | Main: (702) 921-2460
Paul.Trimmer@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, March 11, 2026 9:44:01 PM
**To:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca L. (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Case No. 2:25-cv-01247-JAD-MDC — Overdue Initial Disclosures, Preservation Notice, RFP Service Date, and Unilateral Discovery Plan

[Quoted text hidden]

---

**Trimmer, Paul T. (Las Vegas)** <Paul.Trimmer@jacksonlewis.com>                                        Wed, Mar 11, 2026 at 10:20 PM
To: Corian Edwards <coriandelon@gmail.com>, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards- Our proposed plan, which follows the local rules, is attached for review.  Please review it and let me know if it is agreeable.  We will be providing initial disclosures shortly.  As I explained on the call, my preference is to limit fees and expenses prior to the settlement conference, particularly since we have a motion to dismiss pending.  That notwithstanding, we will move forward with discovery.  If you would like to discuss the plans, let's talk tomorrow so we can submit it once we have agreement.  As I also mentioned on the phone, we need to explain any deviation from the Court's standard plan.

Thanks

Paul



**Paul Trimmer**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2472 | Main: (702) 921-2460
Paul.Trimmer@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, March 11, 2026 9:44 PM
**To:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca L. (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Case No. 2:25-cv-01247-JAD-MDC — Overdue Initial Disclosures, Preservation Notice, RFP Service Date, and Unilateral Discovery Plan

Paul,

[Quoted text hidden]

[Quoted text hidden]

 **[DRAFT] Defendant's Proposed Discovery Plan and Scheduling Order (Edwards - Bellagio).docx**
37K

---

**Corian Edwards** <coriandelon@gmail.com>                                        Thu, Mar 12, 2026 at 8:00 AM

Paul,

Thank you for sending your proposed discovery plan. I have reviewed it and have identified several issues — both clerical and substantive — that will need to be addressed before I can agree to any joint submission. I am available to discuss these by phone tomorrow and would like to resolve them before the March 13 filing deadline.

CLERICAL ERRORS

1. Wrong case number. Your draft lists Case No. 2:25-cv-02289-APG. The correct case number is 2:25-cv-01247-JAD-MDC.

2. Wrong judge. Your draft references Judge APG. The presiding judge in this matter is Judge JAD.

3. Incorrect date in ORDER block. The ORDER block references 2025. The correct year is 2026.

4. Plaintiff's name misspelled. The Certificate of Service spells my name "Corrian." The correct spelling is Corian.

5. Stale date. The document is dated February 24, 2026 and appears to reflect a draft that was never updated.

SUBSTANTIVE ISSUES

1. Discovery cutoff. Your plan measures the 180-day discovery period from January 27, 2026 — the date of Defendant's appearance — yielding a July 27, 2026 cutoff. Plaintiff's position is that the period should be measured from the date of the Rule 26(f) conference, February 24, 2026, yielding a September cutoff. Given that the delay between appearance and conference was attributable to Defendant's motion practice, measuring from appearance disproportionately compresses Plaintiff's discovery window. I am open to discussing this.

2. ESI language — Section 12. The statement that Defendant "does not anticipate any issues" with electronically stored information is inconsistent with the record. On February 26, 2026, I served a formal Evidence Preservation Notice identifying five custodians and specific platforms including Signal, Workday audit logs, and third-party communications with PMI and the Cosmopolitan. That notice remains unacknowledged. Section 12 must be replaced with specific language addressing the custodians, platforms, and production formats already identified.

3. Sections 14, 15, and 16 — False statements regarding the 26(f) conference. All three sections state that Plaintiff did not respond to Defendant's request to conduct the Rule 26(f) conference. That is factually incorrect. The conference took place on February 24, 2026 at 11am via Zoom. This language cannot appear in a court filing as it misrepresents the record to the Court. These sections must be corrected.

4. ENE not reflected. The Court has scheduled an Early Neutral Evaluation on April 22, 2026 at 10:00 AM before Magistrate Judge Weksler, with a confidential statement due April 15, 2026. Neither date appears in your proposed scheduling order. Both should be included.

5. Scope of discovery — Section 9. The current language is boilerplate and does not reflect the specific discovery already initiated in this matter, including the pending RFPs served February 24, 2026.

I remain willing to submit a joint plan and would prefer to do so. Please let me know your availability for a brief call Later today after 9am.

Very Respectfully,
Corian Edwards
Plaintiff, Pro Se
7233 Majestic Bluff Place
Las Vegas, NV 89113
(810) 449-5659
coriandelon@gmail.com
[Quoted text hidden]
--
Relax,
Corian

---

**coriandelon@gmail.com** <coriandelon@gmail.com>                                   Thu, Mar 12, 2026 at 3:18 PM
To: "Paul T. Trimmer" <Paul.Trimmer@jacksonlewis.com>
Cc: "Rebecca L. Portelli" <Rebecca.Portelli@jacksonlewis.com>

Good afternoon,
I reached out via phone earlier this afternoon. Was unable to reach you. At what time will we discuss the editions?

Very Respectfully,

Corian

> On Mar 12, 2026, at 8:00 AM, Corian Edwards <coriandelon@gmail.com> wrote:


[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

<image265757.png>  **Paul Trimmer**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2472 | Main: (702) 921-2460
Paul.Trimmer@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]

--
Relax,
Corian

<image265757.png>  **Paul Trimmer**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street

# EXHIBIT B

Email Correspondence re: Meet-and-Confer Conferences (May 19–28, 2026)

 Gmail

## Edwards v. Bellagio, LLC / Meet and Confer Conference
21 messages

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>    Tue, May 19, 2026 at 8:18 AM
To: "coriandelon@gmail.com" <coriandelon@gmail.com>

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.

Thanks,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>    Tue, May 19, 2026 at 5:36 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Good evening,

Thursday 4pm would work for me.
I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any other matters that may need to be discussed in a reply.

Respectfully,
Corian

> On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Corian,
>
> I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.
>
> Thanks,
> Chad
>
> **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>    Thu, May 21, 2026 at 2:35 PM
To: Corian Edwards <coriandelon@gmail.com>

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm available tomorrow any time before 3:00 p.m.

Thanks,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any other matters that may need to be discussed in a reply.

Respectfully,

Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.

Thanks,
Chad

 **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>                                                                 Thu, May 21, 2026 at 2:40 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling email indicated availability any time after 2:30, so rather than postponing entirely, I'd propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement conference.

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm available tomorrow any time before 3:00 p.m.

Thanks,
Chad

<image029423.png>  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]
Corian

[Quoted text hidden]
[Quoted text hidden]

— **Chad C. Butterfield**
Attorney at Law

Jackson Lewis P.C.
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                          Thu, May 21, 2026 at 2:42 PM
To: Corian Edwards <coriandelon@gmail.com>

I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.


Thanks,

Chad


   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                          Thu, May 21, 2026 at 3:09 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>

Mr. Butterfield,

I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conference.

That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged my professional schedule around that time, and I now have engagements tomorrow that I cannot move.

You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you were available any time after 2:30. That means either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedule. Which is it?

When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior meet-and-confer conferences, I was under the impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? If so, how much time were you allotting for today's conference?

If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is available now and schedule a continuation for the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third time a confirmed conference has been cancelled or missed same-day by defense counsel.

I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is being conducted in the "intentional, sincere, robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

Respectfully,

Corian

On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.

Thanks,
Chad


<image279764.png>   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                          Thu, May 21, 2026 at 3:11 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

My apologies, 2:30pm. That would be 90 minutes.

Respectfully,
Corian
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                          Thu, May 21, 2026 at 4:21 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my offer to start at 4:30 or 5:00, and have not responded to my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do need a response within the next 45 minutes to make the time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing.

Respectfully,

Corian Edwards

[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Thu, May 21, 2026 at 4:30 PM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Dear Mr. Edwards:

I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligated nor inclined to make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                    Thu, May 21, 2026 at 4:48 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to accommodate today's conference at your request. I also asked you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle message stating you would be late. You have not answered any of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I rearranged my professional obligations around that time. You cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are now requesting that I rearrange my schedule a second time while offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountability. My reasonableness was offering to work outside the original time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed a 4:00 PM obligation. You have not explained why we could not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkable. Instead, you quoted my courtesy back to me and asked for more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation that changes that conclusion.

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good faith from both parties, and I am not prepared to continue rearranging my schedule without understanding why the last arrangement was discarded.

> On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Dear Mr. Edwards:
>
> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligated nor inclined to make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.
>
> Best,
> Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                          Thu, May 21, 2026 at 4:50 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Either provide your availability next week or not. It's your meet-and-confer request, not mine.

**JL**    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                          Thu, May 21, 2026 at 5:02 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes may be presented to the Court. It is not a courtesy I am requesting from you,  it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do not consider this conference your obligation are now part of the record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm ,  Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday. I will consider any further delay to be an act of intentional obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.
>
> <image008643.png>    **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Thursday, May 21, 2026 4:49 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                          Thu, May 21, 2026 at 5:07 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                        Thu, May 21, 2026 at 5:19 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Wednesday at 10am is confirmed.
Thank you and have a wonderful weekend yourself.

Respectfully,
Corian

> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.
>
> Best,
> Chad
>
> <image414231.png>  **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                        Tue, May 26, 2026 at 4:39 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>             Wed, May 27, 2026 at 8:35 AM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                        Wed, May 27, 2026 at 8:43 AM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Corian Edwards is inviting you to a scheduled Zoom meeting.

Topic: Corian Edwards' Zoom Meeting
Time: May 27, 2026 10:00 AM Pacific Time (US and Canada)
Join Zoom Meeting
https://us04web.zoom.us/j/76399896266?pwd=x8XctlCFVA8fw1IyQIxfSZhnvBaN4d.1

Meeting chat link

https://us04web.zoom.us/launch...763 9989 6266

Meeting ID: 763 9989 6266
Passcode: 7IgeKW

---

Join by SIP
• 76399896266@zoomcrc.com

Join instructions
https://us04web.zoom.us/meetings/76399896266/invitations?signature=RrQzk8ijFCFXEINFUSq-65YBbNVALWKaCKJ_-NI3FAc

Respectfully,
Corian

On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,
Chad

<image906676.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sending this recap per LR 26-7(c) and Judge Couvillier's Standi... what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated that you would make as much time as necessary to work thr... correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most significant counting dispute between the parties.

## I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. 25 through 34 in your counting). My position is that the s... interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and "cases in this district" that have analyzed interrogatory n... could independently research, you began reading *Kendall* aloud from your screen rather than answering the question directly. I told you that I was already familiar with *Kendall* and that reading it to me was not... not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate interrogatories. You acknowledged that *Kendall* is a District... Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains that this is one interrogatory with logically related subparts. This issue is not resolved and wil...

## II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. The agreements are as follows:

**Interrogatory No. 1**

**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**

**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been better suited as part of a Request for Production.

**Interrogatory No. 3**

**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**

**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that you need to discuss with your client. Please confirm your...

**Interrogatory No. 5**

**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b) and (c) collectively count as a second. Agreed.

## III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with my April 27, 2026 correspondence and subsequently sent a... session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Specifically, your client wants to know what AI system I use a...

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wish to disclose at all, I am willing to certify by affidavit tha... compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclose the specific AI tools I use in litigation preparation. That is work product. If we canno...

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June 2 so I have time to review.

## IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made sure I was aware your client had not yet agreed to do so... occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of the mandatory disclosure under FRCP 26(a)(1)(A)(iv).

You also asked whether I would withdraw my pending motion for sanctions in exchange for declaratory production. [illegible] position is that I need to see meaningful progress across the board befor[e] produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, does not reflect good faith compliance — it reflects leverage.

## V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the "biggest sandbag" in this case. This was met with you rais[...] responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, meet-and-confer request, stipulation, and if necessary, motion to compel — if you belie[...] comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements to stipulate the dispute and, if unsuccessful, file a motion to compel.

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to submit any discovery deficiency notice or request any meet-an[...] of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. The ethical dimensions of this exchange are addressed in Section VI below.

## VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them because Judge Couvillier's Standing Order requires "intentional, [...] both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may bear on the conduct described.

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to reach Interrogatories Nos. 6–25 and had to rush through the prote[...]

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to comply with tribunal rules — here, Judge Couvillier's Sta[...]*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory No. 7, you spent approximately 12–15 minutes deflecting [...] effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely on *X case*" — would have taken seconds and allowed us to move on productively. Instead, [...]

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the sincerity of the position); NRPC 3.4(d) ("fail to make reasonab[...] "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells you to do, I don't really care." You also made repeated co[...] "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dynamic does not entitle you to condescension or intimidation.

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice). See also Yates v. Belli Deli, [...] Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously reviewing documents on screen, you responded: "I do too. [...] moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly explained my request for a couple of seconds to bring myself up to speed on the matter w[...] claim to be afflicted by (mentioning and offering to show the medication) was combative to say the absolute least. For the record, I am currently unmedicated and thus my ADHD does not equate to, or behave l[...] result. Please keep the personal insults out of our communication.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot of real estate, not allowing for rebuttal or clarification qu[...] interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I cannot in good faith say it was to intimidate or not, you took out a pen, clicked it multiple tin[...] subsequently holding the floor on what you characterized as "my meet and confer." There was also a motioning, a waving of your hand, suggesting my input was unwelcome. I addressed this directly. You rebut[...] insulting. If this conduct continues, I will request that the Court impose protocols for future discovery conferences or appoint a discovery referee to ensure productive use of the parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust" conferral); NRPC 8.4(d) (conduct prejudicial to the adm[...]*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raised my voice, used profanity, or made any personal attack. I [...] directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One more comment like that, I will terminate this." I was not ma[...] requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked to support your position is inconsistent with the purpose of the process and with your oblig[...]

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRPC 3.4(c) (disobeying tribunal obligations — the Standing [...] (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want both sides to have an honest account of how the time was s[...] from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here.

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up to meet-and-confer sessions to be mocked for not being a[...] NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that imbalance. *See Yates v. Belli Deli*, No. C07-3556, 2007 WL 2318923, at *4 (N.D. Cal. Aug. 1[...] interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6 and work through the remaining issues including compara[...]

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence will be treated as agreement with the substance of this letter[...]

Respectfully,

Corian

On May 27, 2026, at 8:35AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,
Chad

<image906676.png>  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian

> On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Wednesday at 10am is confirmed.
> Thank you and have a wonderful weekend yourself.
>
> Respectfully,
> Corian

> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.
>
> Best,
> Chad

> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@j
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes may
from you,  it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do not co
record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm ,  Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday. I will
obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.

> — **Chad C. Butterfield**
> Attorney at Law

Jackson Lewis P.C.
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to acco
you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle messag
of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I rearran
cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are now rec
offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountability. My
time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed a 4:0
not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkable. In
more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation that cl

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good faith t
rearranging my schedule without understanding why the last arrangement was discarded.

> On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Dear Mr. Edwards:
>
> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have
> make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated
> these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your a
> as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.
>
> Best,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my offer
my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do need
time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing.

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> My apologies, 2:30pm. That would be 90 minutes.
>
> Respectfully,
> Corian
>
> > On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
> >
> > Mr. Butterfield,

want to be respectful of your time, and I recognize that schedules shift, these things happen, and I am willing to be as reasonable

That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged my pr now have engagements tomorrow that I cannot move.

You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you were ava either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedule. W

When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior meet-a impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? If so today's conference?

If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is availa the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third time cancelled or missed same-day by defense counsel.

I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is being robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

Respectfully,

Corian

On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 2:41 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling email i rather than postponing entirely, I'd propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement confere

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by time before 3:00 p.m.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.
I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any othe
discussed in a reply.

Respectfully,
Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

I must respectfully disagree with some of the points in your recap below.

I suggested that we address the interrogatories in order. You declined, noting that it was your meet-and-confer conference and you would address the interrogatories in whatever order you deemed appropriate. When discussing interro
informed you that I reviewed numerous cases in the District of Nevada in which courts in this jurisdiction have addressed compound interrogatories and numerosity objections. I expressly referenced several cases, including *Kendall v.*
No. 2:24-cv-01215-RFB-EJY, 2025 U.S. Dist. LEXIS 115133 (D. Nev. June 16, 2025) ("Determining whether an interrogatory counts as a separate question requires a pragmatic approach."); and *Racing Optics, Inc. v. Aevoe Corp.*, No.
engaged in "filibustering" is specious, at best.

I generally agree with your recap of our discussion of interrogatory nos. 1-6, although you failed to mention your acknowledgment during our conference that interrogatory no. 4 is improper, which you attributed to an issue with the AI pr

I do not agree that your "Conduct and Candor" accurately represents today's conference. I have no desire to engage in a back-and-forth exchange on these points, however, and will simply leave it at that.

Per your request below, I will provide our competing proposed protective order prior to our June 2, 2026 conference.

Finally, for future meet-and-confer conferences, please do not assume that I have unlimited time available. I will let you know in advance if I am subject to any time constraints so you can plan accordingly.

Sincerely,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, May 27, 2026 1:27 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sending this recap per LR 26-7(c) and Ju agreed, what remains disputed, and what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated that you would make as much time a carried over from my April 27, 2026 correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most significant counting dispute betwee

### I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. 25 through 34 in your counting). I do not stand alone as independent interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and "cases in this district" that have a name. When I pressed for a citation I could independently research, you began reading *Kendall* aloud from your screen rather than answering the question directly. I told you that I was al asked. You also referenced a "pragmatic approach" taken by courts but did not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate interrogatories. You acknowledged th You acknowledged that there is no Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains that this is one interrogatory with lo if we cannot agree on June 2.

### II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. The agreements are as follows:

**Interrogatory No. 1**

**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**

**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been better suited as part of a Request fo

**Interrogatory No. 3**

**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**

**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that you need to discuss with your clie

**Interrogatory No. 5**

**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b) and (c) collectively count as a seco

### III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with my April 27, 2026 correspondence discussed in our last meet-and-confer session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Specifically, your client wants to know system.

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wish to disclose at all, I am willing to system. I am also willing to, if compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclose the specific AI tools I use in liti protective orders will be submitted and the Court will decide.

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June 2 so I have time to review.

### IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made sure I was aware your client had but the coverage amounts, per-occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of the mandatory disclosure under FRC

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position is that I need to see meaningful progress insurance policy should have been produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, does not reflect good faith complian

### V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the "biggest sandbag" in this case. Th correctly reminded you that I responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, meet-and-confer request, stipulatio I have record of attempting multiple times to retrieve comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements to stipulate the dispute and, if unsu

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to submit any discovery deficiency notice your initial objections through any of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. The ethical dimensions of this exch

### VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them because Judge Couvillier's Standing Ord Court will want to know whether both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may bear on the conduct described.

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to reach Interrogatories Nos. 6–25 and had to constraint was yours, not mine.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to comply with tribunal rules — here*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory No. 7, you spent approximately 12 than answering the question — effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely on *X case*" — would have taken sec

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the sincerity of the position); NRPC 3.4(d) request"); NRPC 8.4(d) (conduct "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells you to do, I don't really care." Yo by commenting sarcastically, "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dynamic does not entitle you to cond

*See NRPC 4.3 (prohibiting lawyer from exploiting and imbalance when dealing with unrepresented persons); NRPC 8.4(d) (conduct prejudicial to the administration of justice). See a[...] 2007) (sanctioning attorney under Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously reviewing documents on screen, yo[...] was explaining why I needed a moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly explained my request for a couple[...] my request with a condescending comment of a condition you too claim to be afflicted by (mentioning and offering to show the medication) was combative to say the absolute least. For t[...] behave like your ADHD. Even if we had identical treatment protocols, we are not guaranteed the same result. Please keep the personal insults out of our communication.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot of real estate, not allowing for reb[...] often needed). You accused me of interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I cannot in good faith say it was to in[...] going to start tracking each time I interrupted you. All this, while subsequently holding the floor on what you characterized as "my meet and confer." There was also a motioning, a wavin[...] rebutted that I needed to give you the same respect, and that somehow, it was me that was being insulting. If this conduct continues, I will request that the Court impose protocols for futur[...] parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust" conferral); NRPC 8.4(d) (condu[...]*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raised my voice, used profanity, or mad[...] methodology. Attempting to reframe my directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (conduct prejudicial to the administration o[...]*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One more comment like that, I will termi[...] basis for your position — a basic requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked to support your position is incons[...] Order.

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRPC 3.4(c) (disobeying tribunal obli[...] withdrawal); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want both sides to have an honest accoun[...] professionalism that you both demand from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here.

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up to meet-and-confer sessions to be[...] fact every other sentence. Under NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that imbalance. *See Yates v. Belli Deli*, No[...] notice that I am aware of these obligations and that I expect future interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6 and work through the remaining is[...]

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence will be treated as agreement with the[...]

Respectfully,

Corian

On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,

Corian

> On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:

> Wednesday at 10am is confirmed.

> Thank you and have a wonderful weekend yourself.

> Respectfully,

> Corian

>> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

>> Mr. Edwards,

>> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.

>> Best,

>> Chad

>> — **Chad C. Butterfield**

>> Attorney at Law

>> **Jackson Lewis P.C.**

>> 300 S. Fourth Street
>> Suite 900

>> Las Vegas, NV 89101

>> Direct: (702) 921-2462 | Main: (702) 921-2460

>> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

>> **From:** Corian Edwards <coriandelon@gmail.com>
>> **Sent:** Thursday, May 21, 2026 5:02 PM
>> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
>> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@ja
>> **Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

>> Mr. Butterfield,

>> You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record, the meet-and-confer obligation under LR 26-7 is mutual. It is a prerequisite that both parties must satisfy before discovery disputes may [...] from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do not co[...] record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday. I will[...] obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.
>
> — **Chad C. Butterfield**
>
> Attorney at Law
>
> **Jackson Lewis P.C.**
>
> 300 S. Fourth Street
> Suite 900
>
> Las Vegas, NV 89101
>
> Direct: (702) 921-2462 | Main: (702) 921-2460
>
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> ---
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Thursday, May 21, 2026 4:49 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por[...]
> **Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference
>
> Mr. Butterfield,
>
> Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to acco[...] you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle messag[...] of them. Are you declining to respond?
>
> I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I rearra[...] cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are now re[...] offering no explanation for why the first rearrangement was wasted.
>
> At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountability. My[...] time to accommodate your last-minute change. That offer was rejected.
>
> You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed a 4:0[...] not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkable. In[...] more dates.
>
> I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation that cl[...]
>
> I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good faith f[...] rearranging my schedule without understanding why the last arrangement was discarded.
>
> > On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
> >
> > Dear Mr. Edwards:
> >
> > I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligat[...] I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also rep[...] this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-[...]
> >
> > Best,
> >
> > Chad
> >
> > — **Chad C. Butterfield**
> >
> > Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my offer my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do need time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing.

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> My apologies, 2:30pm. That would be 90 minutes.
>
> Respectfully,
>
> Corian
>
> > On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
> >
> > Mr. Butterfield,
> >
> > I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable
> >
> > That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged my pr now have engagements tomorrow that I cannot move.
> >
> > You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you were ava either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedule. W
> >
> > When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior meet-a impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? If so today's conference?
> >
> > If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is availa the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third time cancelled or missed same-day by defense counsel.
> >
> > I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is being robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.
> >
> > Respectfully,
> >
> > Corian
> >
> > > On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
> > >
> > > I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.
> > >
> > > Thanks,
> > >
> > > Chad
> > >
> > > — **Chad C. Butterfield**
> > >
> > >   Attorney at Law
> > >
> > >   **Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 2:41 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling email indicated availability any time aft
propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement conference.

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm available tomorrow any

Thanks,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any other matters that may need to be di

Respectfully,

Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.

Thanks,
Chad

– **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Thank you for your response. A few points require correction.

Interrogatory No. 4. My recap described this interrogatory as "Pending" because it is pending. I had not yet determined how I intended to proceed, and I was not going to characterize my position in this letter un[...] acknowledgment that it is "improper" — it means I identified errors and reserved my decision on how to address them. That is what "pending" means.

Conduct and Candor. I appreciate your candor in declining to defend the conduct documented in Section VI. Your decision not to dispute any of the specific items, quotes, or applicable rules of professional con[...]

Legal Authority and the Record of Our Call. This is the most important correction. Your email states that you "expressly referenced several cases, including *Kendall*, *KMI Zeolite*, and *Racing Optics*" during ou[...]

First, I was the one who raised *Kendall* — not you. I cited it to you as the controlling District of Nevada authority on interrogatory counting. You responded by telling me that *Kendall* "is not the only case" and [...] one of those cases by name, you refused. Instead of answering my question, you began reading *Kendall* aloud from your screen. I stopped you and told you I was already familiar with *Kendall* and that reading i[...] of it as "specious" does not change what happened.

You provided *Racing Optics* by name only in the narrow context of document identification constituting a separate interrogatory — not as broad authority for your count of nine on Interrogatory No. 7. I asked i[...]

As for *KMI Zeolite, Inc. v. J.C. Steel & Sons, Inc.* — you did not reference that case at any point during our call. You are citing it for the first time in this email. I have no objection to you supplementing your au[...] conference.

To be clear: my recap documented that you declined to identify specific legal authority during the call. Your email, by providing citations you did not offer when asked, confirms rather than contradicts that poin[...]

I will review *KMI Zeolite* and *Racing Optics* before our June 2 session. I expect you to be prepared to discuss the specific application of these cases to Interrogatory No. 7 at that time — something we were una[...] question.

I look forward to your competing proposed protective order and to a productive session on June 2.  It has been quite the eventful day. Hope you have a wonderful night.

Respectfully,

Corian

On May 27, 2026, at 2:08 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I must respectfully disagree with some of the points in your recap below.

I suggested that we address the interrogatories in order. You declined, noting that it was your meet-and-confer conference and you would address the interrogatories in whatever order y[...] and pressed for the legal standard upon which I was relying. I informed you that I reviewed numerous cases in the District of Nevada in which courts in this jurisdiction have addressed o[...] including *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997); *KMI Zeolite, Inc. v. J.C. Steel & Sons, Inc.*, No. 2:24-cv-01215-RFB-EJY, 2025 U.S. Dist. LEXIS 1151[...] question requires a pragmatic approach."); and *Racing Optics, Inc. v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 U.S. Dist. LEXIS 52886 (D. Nev. Apr. 19, 2016). Your accusation th[...]

I generally agree with your recap of our discussion of interrogatory nos. 1-6, although you failed to mention your acknowledgment during our conference that interrogatory no. 4 is impro[...] interrogatories.

I do not agree that your "Conduct and Candor" accurately represents today's conference. I have no desire to engage in a back-and-forth exchange on these points, however, and will sim[...]

Per your request below, I will provide our competing proposed protective order prior to our June 2, 2026 conference.

Finally, for future meet-and-confer conferences, please do not assume that I have unlimited time available. I will let you know in advance if I am subject to any time constraints so you ca[...]

Sincerely,
Chad

&lt;image880405.png&gt; **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, May 27, 2026 1:27 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,


This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sending this recap per LR 26-7(c) a
agreed, what remains disputed, and what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated that you would make as much t
carried over from my April 27, 2026 correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most significant counting dispute be

## I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. 25 through 34 in your count
do not stand alone as independent interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and "cases in this district" that h
name. When I pressed for a citation I could independently research, you began reading *Kendall* aloud from your screen rather than answering the question directly. I told you that I v
asked. You also referenced a "pragmatic approach" taken by courts but did not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate interrogatories. You acknowled
You acknowledged that there is no Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains that this is one interrogatory v
if we cannot agree on June 2.

## II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. The agreements are as follows:

**Interrogatory No. 1**

**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**

**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been better suited as part of a Requ

**Interrogatory No. 3**

**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**

**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that you need to discuss with you

**Interrogatory No. 5**

**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b) and (c) collectively count as

## III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with my April 27, 2026 correspond
discussed in our last meet-and-confer session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Specifically, your client wants to
system.

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wish to disclose at all, I am will
system. I am also willing to, if compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclose the specific AI tools I use
protective orders will be submitted and the Court will decide.

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June 2 so I have time to review.

## IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made sure I was aware your clien
but the coverage amounts, per-occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of the mandatory disclosure und

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position is that I need to see meaningful pr
insurance policy should have been produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, does not reflect good faith com

## V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the "biggest sandbag" in this cas
correctly reminded you that I responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, meet-and-confer request, stip
I have record of attempting multiple times to retrieve comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements to stipulate the dispute and, i

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to submit any discovery deficiency r
your initial objections through any of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. The ethical dimensions of thi

## VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them because Judge Couvillier's Standing
Court will want to know whether both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may bear on the conduct describe

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as needed 06/09/26 We were unable to reach Interrogatories Nos. 6–25 and constraint was yours, not mine.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to comply with tribunal rules –*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory No. 7, you spent approximat than answering the question — effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely on *X case*" — would have take

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the sincerity of the position); NRPC 3 request"); NRPC 8.4(d) (conduct "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells you to do, I don't really car by commenting sarcastically, "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dynamic does not entitle you to

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice). 2007) (sanctioning attorney under Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously reviewing documents on scree was explaining why I needed a moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly explained my request for a c my request with a condescending comment of a condition you too claim to be afflicted by (mentioning and offering to show the medication) was combative to say the absolute least. behave like your ADHD. Even if we had identical treatment protocols, we are not guaranteed the same result. Please keep the personal insults out of our communication.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot of real estate, not allowing fo often needed). You accused me of interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I cannot in good faith say it wa going to start tracking each time I interrupted you. All this, while subsequently holding the floor on what you characterized as "my meet and confer." There was also a motioning, a rebutted that I needed to give you the same respect, and that somehow, it was me that was being insulting. If this conduct continues, I will request that the Court impose protocols fo parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust" conferral); NRPC 8.4(d) (c*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raised my voice, used profanity, o methodology. Attempting to reframe my directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (conduct prejudicial to the administra*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One more comment like that, I will basis for your position — a basic requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked to support your position is i Order.

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRPC 3.4(c) (disobeying tribuna withdrawal); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want both sides to have an honest a professionalism that you both demand from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here.

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up to meet-and-confer sessions fact every other sentence. Under NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that imbalance. *See Yates v. Belli De* notice that I am aware of these obligations and that I expect future interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6 and work through the remain

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence will be treated as agreement wi

Respectfully,

Corian

> On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.
>
> Thanks,
> Chad
>
> — **Chad C. Butterfield**
>   Attorney at Law

Jackson Lewis P.C.
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian

> On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Wednesday at 10am is confirmed.
> Thank you and have a wonderful weekend yourself.
>
> Respectfully,
> Corian

> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.
>
> Best,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes
from you,  it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do n
record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm ,  Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday.
obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecc
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle m of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I re cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are no offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountabili time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkal more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation t

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good rearranging my schedule without understanding why the last arrangement was discarded.

> On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Dear Mr. Edwards:
>
> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously antic these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.
>
> Best,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> My apologies, 2:30pm. That would be 90 minutes.
>
> Respectfully,
> Corian
>
>> On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>>
>> Mr. Butterfield,
>>
>> I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reason
>>
>> That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged r now have engagements tomorrow that I cannot move.

You notified me of this change at 2:40 PM — 20 minutes before the scheduled conference. Your scheduling email stated you were either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedu

When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior m impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? today's conference?

If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is a the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third cancelled or missed same-day by defense counsel.

I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is be robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

Respectfully,

Corian

On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 2:41 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling e rather than postponing entirely, I'd propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement co

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finishe time before 3:00 p.m.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any
discussed in a reply.

Respectfully,
Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works be

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Your continued efforts to mischaracterize the content and tenor of our meet-and-confer conference are noted. Please be prepared to conduct yourself in a productive and collaborative manner on June 2, 2026.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, May 27, 2026 5:34 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Thank you for your response. A few points require correction.

Interrogatory No. 4. My recap described this interrogatory as "Pending" because it is pending. I had not yet determined how I intended to proceed, and I was not going to characterize my
call does not constitute an acknowledgment that it is "improper" — it means I identified errors and reserved my decision on how to address them. That is what "pending" means.

Conduct and Candor. I appreciate your candor in declining to defend the conduct documented in Section VI. Your decision not to dispute any of the specific items, quotes, or applicable ru

Legal Authority and the Record of Our Call. This is the most important correction. Your email states that you "expressly referenced several cases, including *Kendall*, *KMI Zeolite*, and *Ra*

First, I was the one who raised *Kendall* — not you. I cited it to you as the controlling District of Nevada authority on interrogatory counting. You responded by telling me that *Kendall* "is
separate times — to identify even one of those cases by name, you refused. Instead of answering my question, you began reading *Kendall* aloud from your screen. I stopped you and told
asked. That is the filibustering I documented, and your characterization of it as "specious" does not change what happened.

You provided *Racing Optics* by name only in the narrow context of document identification constituting a separate interrogatory — not as broad authority for your count of nine on Interro
formal request?" I said yes.

As for *KMI Zeolite, Inc. v. J.C. Steel & Sons, Inc.* — you did not reference that case at any point during our call. You are citing it for the first time in this email. I have no objection to you
"expressly referenced" it during our conference.

To be clear: my recap documented that you declined to identify specific legal authority during the call. Your email, by providing citations you did not offer when asked, confirms rather th

I will review *KMI Zeolite* and *Racing Optics* before our June 2 session. I expect you to be prepared to discuss the specific application of these cases to Interrogatory No. 7 at that time — s rather than engaging with my question.

I look forward to your competing proposed protective order and to a productive session on June 2. It has been quite the eventful day. Hope you have a wonderful night.

Respectfully,

Corian

On May 27, 2026, at 2:08 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I must respectfully disagree with some of the points in your recap below.

I suggested that we address the interrogatories in order. You declined, noting that it was your meet-and-confer conference and you would address the interrogatories in whatever order you deemed appropriate. When discussing informed you that I reviewed numerous cases in the District of Nevada in which courts in this jurisdiction have addressed compound interrogatories and numerosity objections. I expressly referenced several cases, including *Ken* No. 2:24-cv-01215-RFB-EJY, 2025 U.S. Dist. LEXIS 115133 (D. Nev. June 16, 2025) ("Determining whether an interrogatory counts as a separate question requires a pragmatic approach."); and *Racing Optics, Inc. v. Aevoe Cor* engaged in "filibustering" is specious, at best.

I generally agree with your recap of our discussion of interrogatory nos. 1-6, although you failed to mention your acknowledgment during our conference that interrogatory no. 4 is improper, which you attributed to an issue with th

I do not agree that your "Conduct and Candor" accurately represents today's conference. I have no desire to engage in a back-and-forth exchange on these points, however, and will simply leave it at that.

Per your request below, I will provide our competing proposed protective order prior to our June 2, 2026 conference.

Finally, for future meet-and-confer conferences, please do not assume that I have unlimited time available. I will let you know in advance if I am subject to any time constraints so you can plan accordingly.

Sincerely,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, May 27, 2026 1:27 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sending this recap per LR 26-7(c) a agreed, what remains disputed, and what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated that you would make as much t carried over from my April 27, 2026 correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most significant counting dispute be

### I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. 25 through 34 in your count do not stand alone as independent interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and "cases in this district" that h name. When I pressed for a citation I could independently research, you began reading *Kendall* aloud from your screen rather than answering the question directly. I told you that I w asked. You also referenced a "pragmatic approach" taken by courts but did not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate interrogatories. You acknowled You acknowledged that there is no Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains that this is one interrogatory v if we cannot agree on June 2.

## II. INTERROGATORIES NOS. 1–5 – AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. The agreements are as follows:

**Interrogatory No. 1**

**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**

**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been better suited as part of a Requ

**Interrogatory No. 3**

**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**

**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that you need to discuss with you

**Interrogatory No. 5**

**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b) and (c) collectively count as

## III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with my April 27, 2026 correspon
discussed in our last meet-and-confer session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Specifically, your client wants to
system.

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wish to disclose at all, I am will
system. I am also willing to, if compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclose the specific AI tools I use
protective orders will be submitted and the Court will decide.

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June 2 so I have time to review.

## IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made sure I was aware your clien
but the coverage amounts, per-occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of the mandatory disclosure und

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position is that I need to see meaningful pro
insurance policy should have been produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, does not reflect good faith com

## V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the "biggest sandbag" in this cas
correctly reminded you that I responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, meet-and-confer request, stip
I have record of attempting multiple times to retrieve comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements to stipulate the dispute and, if

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to submit any discovery deficiency
your initial objections through any of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. The ethical dimensions of thi

## VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them because Judge Couvillier's Standing
Court will want to know whether both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may bear on the conduct describe

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to reach Interrogatories Nos. 6–25 and
constraint was yours, not mine.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to comply with tribunal rules –*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory No. 7, you spent approximat
than answering the question — effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely on *X case*" — would have take

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the sincerity of the position); NRPC 3
request"); NRPC 8.4(d) (conduct "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells you to do, I don't really car
by commenting sarcastically, "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dynamic does not entitle you to

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*
*2007) (sanctioning attorney under Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously reviewing documents on scree
was explaining why I needed a moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly explained my request for a c
my request with a condescending comment of a condition you too claim to be afflicted by (mentioning and offering to show the medication) was combative to say the absolute least.
behave like your ADHD. Even if we had identical treatment protocols, we are not guaranteed the same result. Please keep the personal insults out of our communication.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot of real estate, not allowing f
often needed). You accused me of interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I cannot in good faith say it wa
going to start tracking each time I interrupted you. All this, while subsequently holding the floor on what you characterized as "my meet and confer." There was also a motioning, a w
rebutted that I needed to give you the same respect, and that somehow, it was me that was being insulting. If this conduct continues, I will request that the Court impose protocols fo
parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust" conferral); NRPC 8.4(d) (c*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raised my voice, used profanity, o
methodology. Attempting to reframe my directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (explaining influence with an unrepresented person by refusing to support advocacy as conditional on zeal); NRPC 8.4(d) conduct prejudicial to the administra...*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One more comment like that, I will ... basis for your position — a basic requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked to support your position is i... Order.

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRPC 3.4(c) (disobeying tribuna... withdrawal); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want both sides to have an honest a... professionalism that you both demand from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here.

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up to meet-and-confer sessions ... fact every other sentence. Under NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that imbalance. *See Yates v. Belli De...* notice that I am aware of these obligations and that I expect future interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6 and work through the remain...

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence will be treated as agreement wit...

Respectfully,

Corian

> On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.
>
> Thanks,
>
> Chad
>
> — **Chad C. Butterfield**
>
> Attorney at Law
>
> **Jackson Lewis P.C.**
>
> 300 S. Fourth Street
> Suite 900
>
> Las Vegas, NV 89101
>
> Direct: (702) 921-2462 | Main: (702) 921-2460
>
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,

Corian

On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Wednesday at 10am is confirmed.

Thank you and have a wonderful weekend yourself.

Respectfully,

Corian

On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes
from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do n
record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday.
obstruction.

Respectfully,

Corian Edwards

On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Either provide your availability next week or not. It's your meet-and-confer request, not mine.

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecc
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to
you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle m
of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I re
cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are no
offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountabili
time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed
not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkal
more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation t

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good
rearranging my schedule without understanding why the last arrangement was discarded.

> On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Dear Mr. Edwards:
>
> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither
> I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You a
> this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we
>
> Best,
>
> Chad
>
> — **Chad C. Butterfield**
>
>    Attorney at Law
>
>    **Jackson Lewis P.C.**
>
>    300 S. Fourth Street
>    Suite 900
>
>    Las Vegas, NV 89101
>
>    Direct: (702) 921-2462 | Main: (702) 921-2460
>
>    Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

2:35 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do n[...] time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing[...]

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
>
> My apologies, 2:30pm. That would be 90 minutes.
>
>
> Respectfully,
>
> Corian
>
>
> > On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
> >
> >
> > Mr. Butterfield,
> >
> > I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reason[...]
> >
> > That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged n[...] now have engagements tomorrow that I cannot move.
> >
> > You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you wer[...] either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedu[...]
> >
> > When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior m[...] impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? [...] today's conference?
> >
> > If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is a[...] the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third [...] cancelled or missed same-day by defense counsel.
> >
> > I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is b[...] robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.
> >
> > Respectfully,
> >
> > Corian
> >
> > > On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
> > >
> > >
> > > I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.
> > >
> > >
> > > Thanks,
> > >
> > > Chad
> > >
> > >
> > >
> > > — **Chad C. Butterfield**
> > >
> > >   Attorney at Law
> > >
> > >   **Jackson Lewis P.C.**
> > >
> > >   300 S. Fourth Street
> > >   Suite 900
> > >
> > >   Las Vegas, NV 89101
> > >
> > >   Direct: (702) 921-2462 | Main: (702) 921-2460
> > >
> > >   Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
> > >
> > > ---
> > >
> > > **From:** Corian Edwards <coriandelon@gmail.com>
> > > **Sent:** Thursday, May 21, 2026 2:41 PM
> > > **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> > > **Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference
> > >
> > > Mr. Butterfield,
> > >
> > > I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling email indicated availability any tim[...] propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement conference.
> > >
> > > Please confirm.
> > >
> > > Respectfully,

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm available tomorr

Thanks,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any other matters that may need t

Respectfully,

Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.

Thanks,
Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

# EXHIBIT C

Email Correspondence re: May 27, 2026 Conference

 Gmail

Corian Edwards <coriandelon@gmail.com>

## Edwards v. Bellagio, LLC / Meet and Confer Conference
20 messages

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Tue, May 19, 2026 at 8:18 AM
To: "coriandelon@gmail.com" <coriandelon@gmail.com>

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.

Thanks,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>                    Tue, May 19, 2026 at
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Good evening,

Thursday 4pm would work for me.
I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to add any other matters that may need to be discussed in a reply.

Respectfully,
Corian

> On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Corian,
>
> I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.
>
> Thanks,
> Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Thu, May 21, 2026 at
To: Corian Edwards <coriandelon@gmail.com>

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm available tomorrow any time before 3:00 p

Thanks,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**

Case 2:25-cv-01247-JAD-MDC   Document 67   Filed 06/09/26   Page 47 of 239

300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed, and thus I would like to discuss that as well. Please feel free to add any other matters that may need to be discussed in a reply.

Respectfully,

Corian

> On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Corian,
>
> I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that works best for you.
>
> Thanks,
> Chad



**Chad C. Butterfield**

**Attorney at Law**

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your scheduling email indicated availability any time after 2:30, so rat propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement conference.

Please confirm.

Respectfully,

Corian

> On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Corian,
>
> Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be finished by 4:00. I'm a

time before 3:00 p.m.

Thanks,
Chad

 &lt;image029423.png&gt;  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]
Corian

[Quoted text hidden]
[Quoted text hidden]

---

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** &lt;Chad.Butterfield@jacksonlewis.com&gt;                   Thu, May 21, 2026 at 2:42 PM
To: Corian Edwards &lt;coriandelon@gmail.com&gt;

I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.

Thanks,

Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** &lt;coriandelon@gmail.com&gt;                   Thu, May 21, 2026 at 3:
To: "Butterfield, Chad C. (Las Vegas)" &lt;Chad.Butterfield@jacksonlewis.com&gt;

Mr. Butterfield,

I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conferenc

That said, I need to understand what happened here. You asked me in writing to select a time. I selected 4:00 PM. I rearranged my professional schedule around that time, a I now have engagements tomorrow that I cannot move.

You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you were available any time after 2:30. That mean either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedule. Which is it?

When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior meet-and-confer conferences, I was under the impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? If so, how much time were you allotting for today's conference?

If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is available now and schedule a continuatio for the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third time a confirmed conference has been cancelled or missed same-day by defense counsel.

I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is being conducted in the "intentional, sincere, robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

Respectfully,

Corian

> On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.
>
> Thanks,
> Chad
>
> <image279764.png>   **Chad C. Butterfield**
>                       Attorney at Law
>
>                       **Jackson Lewis P.C.**
>                       300 S. Fourth Street
>                       Suite 900
>                       Las Vegas, NV 89101
>                       Direct: (702) 921-2462 | Main: (702) 921-2460
>                       Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                Thu, May 21, 2026 at 3:11 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

My apologies, 2:30pm. That would be 90 minutes.

Respectfully,
Corian
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                Thu, May 21, 2026 at 4:21 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelled at 2:40 PM, declined my offer to start at 4:30 or 5:00, and have not responded to my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late we can start today, but I do need a response within the next 45 minutes to make the time available. After that, I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing.

Respectfully,

Corian Edwards

[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                  Thu, May 21, 2026 at 4:30 PM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Dear Mr. Edwards:

I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligated nor inclined to make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.

Best,

Chad

   **Chad C. Butterfield**
                        Attorney at Law

                        **Jackson Lewis P.C.**
                        300 S. Fourth Street
                        Suite 900

Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>      Thu, May 21, 2026 at 4:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)"
<Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to accommodate today's conference at your request. I also asked you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of gentle message stating you would be late. You have not answered any of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I rearranged my professional obligations around that time. You cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — a are now requesting that I rearrange my schedule a second time while offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountability. My reasonableness was offering to work outside the original time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed a 4:00 PM obligation. Yo have not explained why we could not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkable. Instead, you quoted my courtesy back to me and asked for more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation that changes that conclusio

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good faith from both parties, and am not prepared to continue rearranging my schedule without understanding why the last arrangement was discarded.

> On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Dear Mr. Edwards:
>
> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligated nor inclined to make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.
>
> Best,
> Chad
>
>
> <image471712.png>    **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>      Thu, May 21, 2026 at 4:50 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)"
<Rebecca.Portelli@jacksonlewis.com>

Either provide your availability next week or not. It's your meet-and-confer request, not mine.

    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]

[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>        Thu, May 21, 2026 at 5:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes may be presented to Court. It is not a courtesy I am requesting from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do not consider this conference your obligation are now part of the record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday. I will consider any further delay to be an act of intentional obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.
>
>
> <image008643.png>    **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>      Thu, May 21, 2026 at 5:07 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.

Best,

Chad

    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>        Thu, May 21, 2026 at 5:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Case 2:25-cv-01247-JAD-MDC   Document 67   Filed 06/09/26   Page 52 of 239

Wednesday at 10am is confirmed.
Thank you and have a wonderful weekend yourself.

Respectfully,
Corian

> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.
>
> Best,
> Chad
>
> <image414231.png>   **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                Tue, May 26, 2026 at 4:39 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                  Wed, May 27, 2026 at 8:35 AM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.


Thanks,

Chad


   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                Wed, May 27, 2026 at 8:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Corian Edwards is inviting you to a scheduled Zoom meeting.

Topic: Corian Edwards' Zoom Meeting
Time: May 27, 2026 10:00 AM Pacific Time (US and Canada)
Join Zoom Meeting
https://us04web.zoom.us/j/76399896266?pwd=x8XctlCFVA8fw1IyQIxfSZhnvBaN4d.1

Meeting chat link
https://us04web.zoom.us/launch/jc/76399896266

Meeting ID: 763 9989 6266
Passcode: 7IgeKW

---

Join by SIP
• 76399896266@zoomcrc.com

Join instructions
https://us04web.zoom.us/meetings/76399896266/invitations?signature=RrQzk8ijFCFXEINFUSq-65YBbNVALWKaCKJ_-NI3FAc

Respectfully,
Corian

> On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.
>
> Thanks,
> Chad
>
> <image906676.png>   **Chad C. Butterfield**
>                      Attorney at Law
>
>                      **Jackson Lewis P.C.**
>                      300 S. Fourth Street
>                      Suite 900
>                      Las Vegas, NV 89101
>                      Direct: (702) 921-2462 | Main: (702) 921-2460
>                      Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@

Mr. Butterfield,

This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sending this recap per LR
what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated that you would make
correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most significant counting dispute between the parties.

## I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. 25 through 34 in y
interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and "cases in this dist
could independently research, you began reading *Kendall* aloud from your screen rather than answering the question directly. I told you that I was already familiar with *Ke*
not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate interrogatories. You a
Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains that this is one interrogatory with logically related subp

## II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. The agreements are a

**Interrogatory No. 1**
**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**
**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been better suited as part

**Interrogatory No. 3**
**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**
**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that you need to discus

**Interrogatory No. 5**
**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b) and (c) collectively

## III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with my April 27, 2026
session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Specifically, your clien

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wish to disclose at all compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclose the specific AI tools I use in litigation preparati

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June 2 so I have time to

### IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made sure I was aware occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of the mandatory disclosure under FRCP 26(a)(1)(A)(

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position is that I need to see mean produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, does not reflect good faith compliance — it reflects leve

### V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the "biggest sandbag" responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, meet-and-confer request, stipulation, and if nece comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements to stipulate the dispute and, if unsuccessful, file a motion to compel.

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to submit any discovery d of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. The ethical dimensions of this exchange are addressed

### VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them because Judge Couvillier' both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may bear on the conduct described.

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to reach Interrogatories Nos.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to comply with tribu*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory No. 7, you spent ap effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely on *X case*" — would have taken seconds and allowe

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the sincerity of the position) "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells you to do, I don't "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dynamic does not entitle you to condescension or in

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration o Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously reviewing document moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly explained my request for a couple of seconds to br claim to be afflicted by (mentioning and offering to show the medication) was combative to say the absolute least. For the record, I am currently unmedicated and thus my result. Please keep the personal insults out of our communication.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot of real estate, not a interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I cannot in good faith say it was to intimidate or not, yo subsequently holding the floor on what you characterized as "my meet and confer." There was also a motioning, a waving of your hand, suggesting my input was unwelco insulting. If this conduct continues, I will request that the Court impose protocols for future discovery conferences or appoint a discovery referee to ensure productive use o

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust" conferral); NRP(*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raised my voice, used pr directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (conduct prejudicial to the a*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One more comment like th requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked to support your position is inconsistent with the pur

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRPC 3.4(c) (disobeyi (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want both sides to have a from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here.

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up to meet-and-confe NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that imbalance. *See Yates v. Belli Deli*, No. C07-3556, 200′ interactions to reflect them.

### VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6 and work through

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence will be treated as agre

Respectfully,

Corian

On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,
Chad

<image906676.png>  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian

On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Wednesday at 10am is confirmed.
Thank you and have a wonderful weekend yourself.

Respectfully,
Corian

On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful e

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebe
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer requ

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy
from you,  it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and you
record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm ,  Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alte
obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearrange
you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' no
of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick
cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availab
offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterall
time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments
not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal busine
more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would v

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-con
rearranging my schedule without understanding why the last arrangement was discarded.

> > On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
> >
> > Dear Mr. Edwards:
> >
> > I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not a
> > make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that too
> > these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" y
> > as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.c
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelle
my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late w
time available. After that, I will consider today's conference a missed obligation and will memorialize this exchang

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> My apologies, 2:30pm. That would be 90 minutes.
>
> Respectfully,
> Corian
>
>> On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>>
>> Mr. Butterfield,
>>
>> I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I
>>
>> That said, I need to understand what happened here. You asked me in writing to select a time. I selecte
>> now have engagements tomorrow that I cannot move.
>>
>> You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your sched
>> either you discovered this conflict moments before notifying me, or you were aware of it earlier and did
>>
>> When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by
>> impression that you kept your schedule open so that the conference could run as long as necessary. H
>> today's conference?
>>
>> If you have a shortened window available this evening rather than no availability at all, I would ask that
>> the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly
>> cancelled or missed same-day by defense counsel.
>>
>> I need a substantive response to these questions. The record in this case must reflect whether the me
>> robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.
>>
>> Respectfully,
>>
>> Corian
>>
>>> On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>>>
>>> I have family commitments tonight. If you are not available tomorrow, please provide your availability next wee
>>>
>>> Thanks,
>>> Chad
>>>
>>> — **Chad C. Butterfield**

Case 2:25-cv-01247-JAD-MDC   Document 67   Filed 06/09/26   Page 58 of 239

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 2:41 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitments t
rather than postponing entirely, I'd propose we start at 4:30 or 5:00 today. That should give you sufficient time

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> v

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afterno
time before 3:00 p.m.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.P
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.
I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as we
discussed in a reply.

Respectfully,
Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.c

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select t

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@

Mr. Edwards,

I must respectfully disagree with some of the points in your recap below.

I suggested that we address the interrogatories in order. You declined, noting that it was your meet-and-confer conference and you would address the interrogatories in whatever order you de informed you that I reviewed numerous cases in the District of Nevada in which courts in this jurisdiction have addressed compound interrogatories and numerosity objections. I expressly refe No. 2:24-cv-01215-RFB-EJY, 2025 U.S. Dist. LEXIS 115133 (D. Nev. June 16, 2025) ("Determining whether an interrogatory counts as a separate question requires a pragmatic approach."); a engaged in "filibustering" is specious, at best.

I generally agree with your recap of our discussion of interrogatory nos. 1-6, although you failed to mention your acknowledgment during our conference that interrogatory no. 4 is improper, wl

I do not agree that your "Conduct and Candor" accurately represents today's conference. I have no desire to engage in a back-and-forth exchange on these points, however, and will simply le

Per your request below, I will provide our competing proposed protective order prior to our June 2, 2026 conference.

Finally, for future meet-and-confer conferences, please do not assume that I have unlimited time available. I will let you know in advance if I am subject to any time constraints so you can plan

Sincerely,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Wednesday, May 27, 2026 1:27 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am sendin agreed, what remains disputed, and what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicated tha carried over from my April 27, 2026 correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the most s

### I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories (Nos. do not stand alone as independent interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP 33 and name. When I pressed for a citation I could independently research, you began reading *Kendall* aloud from your screen rather than answering the questi asked. You also referenced a "pragmatic approach" taken by courts but did not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separate in You acknowledged that there is no Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position remains t if we cannot agree on June 2.

## II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge that. Th

**Interrogatory No. 1**

**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**

**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have been l

**Interrogatory No. 3**

**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**

**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues that

**Interrogatory No. 5**

**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subparts (b)

## III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders with r discussed in our last meet-and-confer session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems. Spe system.

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do not wi system. I am also willing to, if compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to disclo protective orders will be submitted and the Court will decide.

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before June

## IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and made but the coverage amounts, per-occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole point of th

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position is tha insurance policy should have been produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions motion, de

## V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it as the correctly reminded you that I responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency notice, I have record of attempting multiple times to retrieve comparator data, and this meet-and-confer was in large part to fulfill the procedural requirements t

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to subn your initial objections through any of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equivalent. 7

## VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them becaus Court will want to know whether both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that may

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to reach In constraint was yours, not mine.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligation to*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrogatory than answering the question — effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we rely o

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the since request"); NRPC 8.4(d) (conduct "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your AI tells by commenting sarcastically, "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. That dy

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to th 2007) (sanctioning attorney under Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneously re was explaining why I needed a moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I calmly my request with a condescending comment of a condition you too claim to be afflicted by (mentioning and offering to show the medication) was comba behave like your ADHD. Even if we had identical treatment protocols, we are not guaranteed the same result. Please keep the personal insults out of our

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up a lot often needed). You accused me of interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." While I going to start tracking each time I interrupted you. All this, while subsequently holding the floor on what you characterized as "my meet and confer." Th rebutted that I needed to give you the same respect, and that somehow, it was me that was being insulting. If this conduct continues, I will request that th parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "robust*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not raise methodology. Attempting to reframe my directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (conduct*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "One m basis for your position — a basic requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being asked Order.

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution); NRF withdrawal); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I want b professionalism that you both demand from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again here

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not show up fact every other sentence. Under NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit that im notice that I am aware of these obligations and that I expect future interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory No. 6

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

---

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silence wi

Respectfully,

Corian

On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,

Corian

> On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> Wednesday at 10am is confirmed.
>
> Thank you and have a wonderful weekend yourself.
>
> Respectfully,
>
> Corian

>> On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>>
>> Mr. Edwards,
>>
>> I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wonderful evening and weekend.
>>
>> Best,
>>
>> Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebe
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer requ

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy
from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and you
record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alte
obstruction.

Respectfully,

Corian Edwards

> On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
>
> Either provide your availability next week or not. It's your meet-and-confer request, not mine.

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearrange
you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' no
of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick
cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availab

offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitments not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal busine more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would v

I will provide next week's availability once you have answered the questions I have already asked. The meet-and-con rearranging my schedule without understanding why the last arrangement was discarded.

On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards:

I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedule this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forwar

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.c
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You cancelle my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how late w time available. After that, I will consider today's conference a missed obligation and will memorialize this exchang

Respectfully,

Corian Edwards

On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:

My apologies, 2:30pm. That would be 90 minutes.

Respectfully,

Corian

On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Gmail - Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I

That said, I need to understand what happened here. You asked me in writing to select a time. I selecte now have engagements tomorrow that I cannot move.

You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your sched either you discovered this conflict moments before notifying me, or you were aware of it earlier and did

When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by impression that you kept your schedule open so that the conference could run as long as necessary. H today's conference?

If you have a shortened window available this evening rather than no availability at all, I would ask that the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly cancelled or missed same-day by defense counsel.

I need a substantive response to these questions. The record in this case must reflect whether the mee robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

Respectfully,

Corian

> On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
>
> I have family commitments tonight. If you are not available tomorrow, please provide your availability next week.
>
>
> Thanks,
>
> Chad
>
>
>
> — **Chad C. Butterfield**
>
> Attorney at Law
>
> **Jackson Lewis P.C.**
>
> 300 S. Fourth Street
> Suite 900
>
> Las Vegas, NV 89101
>
> Direct: (702) 921-2462 | Main: (702) 921-2460
>
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> ---
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Thursday, May 21, 2026 2:41 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference
>
>
> Mr. Butterfield,
>
> I rearranged my schedule to accommodate today's conference and have already shifted other commitments to tomorrow. Your schedul propose we start at 4:30 or 5:00 today. That should give you sufficient time to wrap up your settlement conference.
>
> Please confirm.
>
> Respectfully,
>
> Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this afternoon that likely will not be

Thanks,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.P
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.

I need to note that a possible Discovery extension is needed,  and thus I would like to discuss that as well. Please feel free to ad

Respectfully,

Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to select the day and time that w

Thanks,
Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@

Mr. Butterfield,

Thank you for your response. A few points require correction.

Interrogatory No. 4. My recap described this interrogatory as "Pending" because it is pending. I had not yet determined how I intended to proceed, and I was not going to acknowledgment that it is "improper" — it means I identified errors and reserved my decision on how to address them. That is what "pending" means.

Conduct and Candor. I appreciate your candor in declining to defend the conduct documented in Section VI. Your decision not to dispute any of the specific items, quotes,

Legal Authority and the Record of Our Call. This is the most important correction. Your email states that you "expressly referenced several cases, including *Kendall*, *KMI*

First, I was the one who raised *Kendall* — not you. I cited it to you as the controlling District of Nevada authority on interrogatory counting. You responded by telling me one of those cases by name, you refused. Instead of answering my question, you began reading *Kendall* aloud from your screen. I stopped you and told you I was already f of it as "specious" does not change what happened.

You provided *Racing Optics* by name only in the narrow context of document identification constituting a separate interrogatory — not as broad authority for your count o

As for *KMI Zeolite, Inc. v. J.C. Steel & Sons, Inc.* — you did not reference that case at any point during our call. You are citing it for the first time in this email. I have no c conference.

To be clear: my recap documented that you declined to identify specific legal authority during the call. Your email, by providing citations you did not offer when asked, co

I will review *KMI Zeolite* and *Racing Optics* before our June 2 session. I expect you to be prepared to discuss the specific application of these cases to Interrogatory No. 7 question.

I look forward to your competing proposed protective order and to a productive session on June 2. It has been quite the eventful day. Hope you have a wonderful night.

Respectfully,

Corian

> On May 27, 2026, at 2:08 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I must respectfully disagree with some of the points in your recap below.
>
> I suggested that we address the interrogatories in order. You declined, noting that it was your meet-and-confer conference and you would address the and pressed for the legal standard upon which I was relying. I informed you that I reviewed numerous cases in the District of Nevada in which courts including *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997); *KMI Zeolite, Inc. v. J.C. Steel & Sons, Inc.*, No. 2:24-cv-01215-RF question requires a pragmatic approach."); and *Racing Optics, Inc. v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 U.S. Dist. LEXIS 52886 (D. Nev
>
> I generally agree with your recap of our discussion of interrogatory nos. 1-6, although you failed to mention your acknowledgment during our conferer interrogatories.
>
> I do not agree that your "Conduct and Candor" accurately represents today's conference. I have no desire to engage in a back-and-forth exchange or
>
> Per your request below, I will provide our competing proposed protective order prior to our June 2, 2026 conference.
>
> Finally, for future meet-and-confer conferences, please do not assume that I have unlimited time available. I will let you know in advance if I am subje
>
> Sincerely,
> Chad

&lt;image880405.png&gt;   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards &lt;coriandelon@gmail.com&gt;
**Sent:** Wednesday, May 27, 2026 1:27 PM
**To:** Butterfield, Chad C. (Las Vegas) &lt;Chad.Butterfield@jacksonlewis.com&gt;
**Cc:** Trimmer, Paul T. (Las Vegas) &lt;Paul.Trimmer@jacksonlewis.com&gt;; Levin, Jennifer (Las Vegas) &lt;Jennifer.Levin@jacksonlewis.com&gt;; Portelli, Rebecca (Las Ve
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,


This letter memorializes our meet-and-confer conference held today, May 27, 2026, via Zoom, from approximately 10:00 AM to 11:00 AM. I am s
agreed, what remains disputed, and what was deferred.

At the outset, you informed me that you had only 60 minutes available for today's session. In our prior meet-and-confer sessions, you communicat
carried over from my April 27, 2026 correspondence, the time constraint required me to prioritize. I began with Interrogatory No. 7, which is the n

### I. INTERROGATORY NO. 7 — UNRESOLVED

We spent the first approximately 15 minutes of the call on Interrogatory No. 7. Your position is that it consists of at least 9 discrete interrogatories
do not stand alone as independent interrogatories under *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997).

I asked you, multiple times, to identify the specific legal standard you applied in reaching your count of nine. You stated that you relied on FRCP
name. When I pressed for a citation I could independently research, you began reading *Kendall* aloud from your screen rather than answering the c
asked. You also referenced a "pragmatic approach" taken by courts but did not name the court or case applying it.

At no point during this discussion did you identify a single case, other than *Kendall* itself, that supports counting Interrogatory No. 7 as nine separ
You acknowledged that there is no Ninth Circuit or Supreme Court standard that you are applying. Your position remains at nine. My position rem
if we cannot agree on June 2.

### II. INTERROGATORIES NOS. 1–5 — AGREEMENTS REACHED

After setting No. 7 aside, we worked through Interrogatories Nos. 1 through 5 in order. We made real progress here, and I want to acknowledge th

**Interrogatory No. 1**
**Agreed Count: 1.** Both parties agree. No further discussion needed.

**Interrogatory No. 2**
**Agreed Count: 2.** We were originally at 4. We agreed on 2 after agreeing to drop subsection (c), which requested documentation and would have

**Interrogatory No. 3**
**Agreed Count: 1.** You originally counted this as 2. After further review, we agreed to count as 1.

**Interrogatory No. 4**
**Status: Pending.** You originally counted this as 7, then revised to 6 during the call. After reviewing the interrogatory together, we identified issues

**Interrogatory No. 5**
**Agreed Count: 2.** You originally counted this as 3, then revised to 2. The primary interrogatory and subpart (a) count as one interrogatory; subpar

### III. PROTECTIVE ORDER

Because of your time constraint, I raised the protective order before the hour expired. I had previously transmitted two proposed protective orders
discussed in our last meet-and-confer session. You had not sent a competing order as previously agreed.

You stated that my proposed order is "overall generally agreeable" and that the primary dispute is the treatment of AI and disclosure of AI systems
system.

My position, which I have communicated to you multiple times, is: While I consider the AI platform(s) I use to be privileged information and do n
system. I am also willing to, if compelled by the Court, submit to in camera review should the Court require further assurance. I am not willing to
protective orders will be submitted and the Court will decide.

You agreed to review my proposed order again and send your client's competing proposed order. I am asking that, if possible, you submit it before

### IV. INSURANCE POLICY

You suggested a redacted production removing the names and coverage information of non-Bellagio MGM properties from the Markel policy, and
but the coverage amounts, per-occurrence limits, deductibles, and aggregate limits applicable to Bellagio must be included. That is the whole poin

You also asked whether I would withdraw my pending motion for sanctions in exchange for a redacted policy production. I declined. My position
insurance policy should have been produced months ago as part of initial disclosures. Producing it now, in exchange for dropping a sanctions moti

### V. COMPARATOR DATA AND MITIGATION

These issues came up briefly at the end of the call. Comparator data (RFP No. 5) remains the largest outstanding discovery dispute. I identified it a correctly reminded you that I responded to that request, and that it is your obligation to go through the proper procedural channels — deficiency no I have record of attempting multiple times to retrieve comparator data, and this meet-and-confer was in large part to fulfill the procedural requirem

Your response insinuated that I have committed the same type of "obstruction" with the mitigation documents. I reminded you that you have yet to your initial objections through any of the channels required by the Local Rules or Judge Couvillier's Standing Order. The situations are not equiva

## VI. CONDUCT AND CANDOR

I am documenting the following for the record. I am not raising these points to relitigate our conversation or to be adversarial. I am raising them be Court will want to know whether both parties met that standard. Where applicable, I have identified the Nevada Rule of Professional Conduct that

**1. Time Limitation.** You imposed a 60-minute limit after previously representing that you make as much time as necessary. We were unable to rea constraint was yours, not mine.

*See NRPC 3.2(a) ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"); NRPC 3.4(c) (obligat*

**2. Refusal to Identify Legal Authority and Filibustering.** When I asked for the specific legal standard supporting your count of nine on Interrog than answering the question — effectively filibustering on what you yourself described as already limited time. A straightforward answer — "we

*See NRPC 3.1 (a lawyer's positions must have "a basis in law and fact" that is not frivolous — declining to identify any authority undermines the request"); NRPC 8.4(d) (conduct "prejudicial to the administration of justice").*

**3. Comments Regarding AI and Pro Se Status.** You made multiple references to my AI usage in a dismissive tone, including "–whatever your A by commenting sarcastically, "whatever you want, you're the legal expert–" I understand that I am pro se and that you are experienced counsel. Th

*See NRPC 4.3 (prohibiting a lawyer from exploiting the imbalance when dealing with an unrepresented person); NRPC 8.4(d) (conduct prejudicia 2007) (sanctioning attorney under Rule 4.3 for overreaching with unrepresented parties).*

**4. Comment Regarding ADHD.** When I explained that I have ADHD and was having difficulty processing your spoken words while simultaneou was explaining why I needed a moment of silence while I located the relevant document. That comment was inappropriate and unprofessional. I ca my request with a condescending comment of a condition you too claim to be afflicted by (mentioning and offering to show the medication) was c behave like your ADHD. Even if we had identical treatment protocols, we are not guaranteed the same result. Please keep the personal insults out

*See NRPC 4.3 (exploiting imbalance with an unrepresented person); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

**5. Interruptions and Double Standards.** From the beginning, our conversation took a very strange turn. Your conversation style seems to take up often needed). You accused me of interrupting you numerous times, even when I had the floor in the conversation and you were "interjecting." Wh going to start tracking each time I interrupted you. All this, while subsequently holding the floor on what you characterized as "my meet and confe rebutted that I needed to give you the same respect, and that somehow, it was me that was being insulting. If this conduct continues, I will request parties' time.

*See NRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal — here, the Standing Order's requirement of "sincere" and "r*

**6. Characterizing My Emotional State.** Approximately 12 minutes into the call, you asked: "Are you having a bad day or something?" I had not methodology. Attempting to reframe my directness as emotional instability is not consistent with good-faith conferral.

*See NRPC 4.3 (exploiting imbalance with an unrepresented person by reframing legitimate advocacy as emotional dysfunction); NRPC 8.4(d) (co*

**7. Threatening to Terminate the Call.** During the call, when I was pressing you on the Interrogatory No. 7 counting methodology, you stated: "C basis for your position — a basic requirement of any meet-and-confer. Threatening to end a court-ordered conferral session because you are being Order.

*See NRPC 3.2(a) (duty to expedite litigation — threatening to terminate a mandatory conferral session obstructs rather than expedites resolution) withdrawal); NRPC 8.4(d) (conduct prejudicial to the administration of justice).*

I raise these points because they are part of the record of this conference. If the Court asks whether the parties engaged in meaningful conferral, I professionalism that you both demand from your pro se opponent and refuse to fulfill yourself. I raised this during the call and I am raising it again

Please respect the situation as it stands: I am an unpaid and unemployed pro se litigant. I do not get paid to have obligatory arguments. I do not sh fact every other sentence. Under NRPC 4.3, you have an affirmative ethical obligation when dealing with an unrepresented person not to exploit th notice that I am aware of these obligations and that I expect future interactions to reflect them.

## VII. NEXT SESSION AND ACTION ITEMS

**Continued Meet-and-Confer:** Tuesday, June 2, 2026, at 2:00 PM via Zoom. Three-hour block (2:00–5:00 PM). We will pick up at Interrogatory

**Action Items for Defendant:**

Please find the time to address the following items before we next meet:

1. Confirm acceptance or rejection of Plaintiff's withdrawal of Interrogatory No. 4 (by June 2).

2. Transmit competing proposed protective order (by May 30).

3. Send full citation for *Racing Optics, Inc. v. AEEEOE Corp.* as agreed during the call.

**Action Items for Plaintiff:**

1. Prepare discovery deficiencies for discussion.

2. Review Defendant's proposed protective order upon receipt.

3. Prepare agenda for Interrogatories Nos. 6–25, comparator data, and mitigation for June 2.

If any portion of this recap does not accurately reflect your understanding of today's conference, please respond in writing by May 30, 2026. Silen

Respectfully,

Corian

On May 27, 2026, at 8:35 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have not received a Zoom invitation. Please either re-send or let me know if I need to set up a Teams meeting.

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 26, 2026 4:40 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good Evening,

Meet and Confer via Zoom  Wed May 26th 10am sent to Mr. Butterfield. If you have any questions, please feel free to reply to this text.

Respectfully,
Corian

On May 21, 2026, at 5:19 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Wednesday at 10am is confirmed.
Thank you and have a wonderful weekend yourself.

Respectfully,
Corian

On May 21, 2026, at 5:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available Wednesday at 10:00 a.m. Please circulate a calendar invitation at your earliest convenience. I hope you have a wond

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 5:02 PM

**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must s from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, ar record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose ar obstruction.

Respectfully,

Corian Edwards

On May 21, 2026, at 4:48 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Either provide your availability next week or not. It's your meet-and-confer request, not mine.

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:49 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; F
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rear you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minute of them. Are you declining to respond?

I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed av offering no explanation for why the first rearrangement was wasted.

At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unila time to accommodate your last-minute change. That offer was rejected.

You have not explained when you became aware of today's conflict. You have not explained how family commitn not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal b more dates.

I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I wc

I will provide next week's availability once you have answered the questions I have already asked. The meet-anc rearranging my schedule without understanding why the last arrangement was discarded.

On May 21, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards:

I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon th these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conferer as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.

Best,
Chad

        —  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 4:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jackson
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlew
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

It is 4:20 PM. The meet-and-confer conference you confirmed for 4:00 PM today did not take place. You car
my follow-up questions.

I am available for the next 45 minutes should you wish to proceed today. I do not have a time limit for how la
time available. After that, I will consider today's conference a missed obligation and will memorialize this exc

Respectfully,

Corian Edwards

> On May 21, 2026, at 3:11 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>
> My apologies, 2:30pm. That would be 90 minutes.
>
> Respectfully,
> Corian
>
>> On May 21, 2026, at 3:09 PM, Corian Edwards <coriandelon@gmail.com> wrote:
>>
>> Mr. Butterfield,
>>
>> I want to be respectful of your time, and I recognize that schedules shift — these things happen, a
>>
>> That said, I need to understand what happened here. You asked me in writing to select a time. I s
>> now have engagements tomorrow that I cannot move.
>>
>> You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your s
>> either you discovered this conflict moments before notifying me, or you were aware of it earlier an
>>
>> When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confuse
>> impression that you kept your schedule open so that the conference could run as long as necessa
>> today's conference?
>>
>> If you have a shortened window available this evening rather than no availability at all, I would ask
>> the remaining issues. That is a more reasonable accommodation than cancelling entirely — partic
>> cancelled or missed same-day by defense counsel.
>>
>> I need a substantive response to these questions. The record in this case must reflect whether the
>> robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.
>>
>> Respectfully,
>>
>> Corian
>>
>>> On May 21, 2026, at 2:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> \
>>>
>>> I have family commitments tonight. If you are not available tomorrow, please provide your availability ne:
>>>
>>> Thanks,
>>> Chad
>>>
>>>> —  **Chad C. Butterfield**
>>>> Attorney at Law
>>>>
>>>> **Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Thursday, May 21, 2026 2:41 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Mr. Butterfield,

I rearranged my schedule to accommodate today's conference and have already shifted other commitm
rather than postponing entirely, I'd propose we start at 4:30 or 5:00 today. That should give you sufficien

Please confirm.

Respectfully,

Corian

On May 21, 2026, at 2:35 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.c

Corian,

Can we push our meet-and-confer conference to tomorrow? I have a settlement conference this af
time before 3:00 p.m.

Thanks,
Chad

— **Chad C. Butterfield**
**Attorney at Law**

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, May 19, 2026 5:36 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas)
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebe
**Subject:** Re: Edwards v. Bellagio, LLC / Meet and Confer Conference

Good evening,

Thursday 4pm would work for me.
I need to note that a possible Discovery extension is needed, and thus I would like to discuss that
discussed in a reply.

Respectfully,
Corian

On May 19, 2026, at 8:18 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonle

Corian,

I am available Thursday, May 21st after 2:30 p.m. or anytime Friday May 22nd. Feel free to s

Thanks,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

# EXHIBIT D

Email Correspondence re: June 1, 2026 Discovery Exchange

 Gmail

## Edwards v. Bellagio
29 messages

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                              Mon, Jun 1, 2026 at 11:39 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

**JL**

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**2 attachments**

📄 **2026-01-06 Meet-and-Confer Correspondence.pdf**
87K

📄 **Proposed Stipulated Protective Order (Edwards v. Bellagio).pdf**
70K

---

**Corian Edwards** <coriandelon@gmail.com>                              Mon, Jun 1, 2026 at 7:14 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

### Request No. 2 (Income)

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

### Request No. 3 (Mitigation Efforts)

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

### Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 9 (Complaints to Employers)

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no option charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

### Request No. 13 (Third-Party Complaints)

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

### Request No. 19 (Tax Returns)

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

---

### III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

[Quoted text hidden]
--
Relax,
Corian

---

**Corian Edwards** <coriandelon@gmail.com>                                        Mon, Jun 1, 2026 at 7:17 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

The PDF attachment.

[Quoted text hidden]
--
Relax,
Corian

---

📄 **Plaintiff Response to Meet-Confer Correspondence - June 1 2026.pdf**
20K

---

**Corian Edwards** <coriandelon@gmail.com>                                        Mon, Jun 1, 2026 at 7:43 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

I am writing separately to address several housekeeping matters in advance of our continued meet-and-confer conference.

**1. Requested Time Adjustment**

Due to unforeseen circumstances, I will be traveling to a secure location to conduct the conference between 2:00 p.m. and 3:00 p.m. As a result, I respectfully request that we push our start time from 2:00 p.m. to 3:00 p.m. Based on your prior communication indicating that you have set aside the window from 2:00 p.m. to 5:00 p.m., I am requesting that we meet from 3:00 p.m. to 5:00 p.m. If Defendant is amenable, I am available to extend the session from 3:00 p.m. to 6:00 p.m. to ensure adequate time to address all outstanding matters. Please confirm at your earliest convenience.

**2. Scope of Issues and Anticipated Continuance**

The volume of matters requiring discussion is substantial. Between Plaintiff's April 27, 2026 correspondence (identifying deficiencies in Defendant's discovery responses), Defendant's June 1, 2026 correspondence (identifying objections to Plaintiff's discovery responses), the proposed protective order, Plaintiff's request to extend the discovery period, and other outstanding items, it is likely that a single session will not be sufficient to address everything meaningfully.

I am placing on the record my expectation that a continuance of the meet-and-confer may be necessary. I propose that we reserve the final five to ten minutes of our session to assess what has been resolved, what remains outstanding, and to schedule a continuation date if needed.

**3. Order of Discussion**

I acknowledge Defendant's prior suggestion that we address issues in chronological order. I also want to formally acknowledge that in our previous conference, I attempted to begin with an issue that was not the first matter in sequence, and I understand how that could disrupt the flow of discussion. I apologize for that, and I am committed to a more structured approach going forward.

I propose the following order for our June 2 conference:

(a) Outstanding discovery disputes from Plaintiff's April 27, 2026 correspondence, in the order raised — including but not limited to RFP deficiencies (personnel/HR records completeness, investigation materials, internal communications, PMI/third-party communications, comparator compensation data, insurance policy disclosure), interrogatory numerosity, the proposed protective order, supplemental witness disclosures, and Defendant's non-response to Plaintiff's February 26, 2026 preservation notice (we began with the numerosity issue at our prior conference but were unable to reach the remaining disputes, which must now be addressed); (b) Plaintiff's request to extend the discovery period; (c) Issues raised in Defendant's June 1, 2026 correspondence, in the order presented; (d) Defendant's proposed Stipulated Protective Order; (e) Any additional matters either party wishes to raise; and (f) Scheduling of continuance, if necessary.

**4. Additional Agenda Item — Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I am requesting that we address, as part of our conferral, the circumstances surrounding the rescheduling of our original meet-and-confer conference, including the rationale provided by Defendant for the cancellation and the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record. I need to discuss this matter as part of our meet-and-confer process in connection with a subsequent stipulated discovery dispute filing. I am placing this on the agenda now so that Defendant is on notice and comes prepared to discuss it.

Please confirm the adjusted start time at your earliest convenience so that both parties may plan accordingly.

Respectfully,

Corian

[Quoted text hidden]
The PDF attachment.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

<image981786.png>   **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

--
Relax,
Corian
<Plaintiff Response to Meet-Confer Correspondence - June 1 2026.pdf>

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                          Tue, Jun 2, 2026 at 7:28 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Dear Mr. Edwards,

My responses to the issues raised in your email below are as follows:

**1. Requested Time Adjustment**

I have no objection to your request to change the time of today's meet-and-confer conference from 2:00 p.m. to 3:00 p.m. I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conference.

**2. Scope of Issues and Anticipated Continuance**

I have no objection to your proposal of reserving a few minutes at the conclusion of the conference to assess what has been resolved, what remains outstanding, and to schedule a continuation date/time if necessary.

**3. Order of Discussion**

I'm generally agreeable with your proposed order of discussion, with the exception of the inclusion of "Defendant's non-response to Plaintiff's February 26, 2026 preservation notice" in the meet-and-confer conference. There is no obligation under the Federal Rules of Civil Procedure, the Local Rules, or any Ninth Circuit or District of Nevada case of which I am aware which requires an adverse party to respond to a litigation hold notice. If I am mistaken, please provide the legal authorities, if any, upon which you are relying, which I would be happy to review and consider.

**4. Additional Agenda Item – Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I do not agree to include these issues in the meet-and-confer conference. I have no obligation to further explain "the circumstances surrounding the rescheduling of our original meet-and-confer conference" and expressly decline to do so. I also decline your request to discuss "the rational provided by Defendant for … the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record." I am not inclined to disclose information which is protected under the work product doctrine. Furthermore, as you are aware, the Court struck the joinder "without prejudice to MGM's ability to file a proper motion to dismiss" (ECF No. 60) which was promptly filed the following day (ECF No. 63). The appropriate time and method to raise any concerns regarding the propriety of MGM's joinder/motion to dismiss is in your opposition brief.

Best,

Chad

    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                          Tue, Jun 2, 2026 at 12:16 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Thank you for your prompt response and for agreeing to the adjusted conference time of 3:00 p.m. I appreciate the accommodation.

I write briefly to address your responses to Items 3 and 4 of my housekeeping correspondence.

**Item 3 — Preservation Notice**

Defendant's non-response to Plaintiff's February 26, 2026 preservation notice was included in the agenda for today's conference because it is one of the outstanding discovery disputes from Plaintiff's April 27, 2026 correspondence that the parties were unable to reach at the prior conference. We began with the numerosity issue and were unable to address the remaining disputes, which must now be addressed. This is not a new topic — it has been pending since April 27.

Defendant's position that there is no obligation to respond to a litigation hold notice mischaracterizes Plaintiff's request. Plaintiff is not asking for a standalone response to a litigation hold. Preservation notice is the topic, not the singular question. Along with looking for a response that the preservation notice was received, Plaintiff is actively looking to verify based on Defense's disclosure activity lacking any Signal, text, or email messages between the

parties as listed that expressly name or insinuate as a subject the Plaintiff. Likewise, by acknowledging the absence of said communications and/or its intent to object to its production not part of a privilege log. Plaintiff is asking the following question as part of the meet-and-confer conferral process, to which Defendant is obligated to respond: whether there exist any text messages, Signal communications, or other electronic communications — not authored by Plaintiff — between any of the individuals identified in Plaintiff's February 26, 2026 preservation notice that reference, identify, or discuss Plaintiff by name, badge number, or by implication.

Under FRCP 34(b)(2)(C), a party objecting to a production request must state whether any responsive materials are being withheld on the basis of that objection. Defendant has neither produced internal text messages or Signal communications between its employees nor stated that no such communications exist. This is not a discretionary omission — it is a failure to comply with the mandate of Rule 34(b)(2)(C).

Plaintiff has produced his own text messages and Signal communications with Defendant's employees (PLF000104-233, PLF000234-247), establishing that these platforms were used as a routine course of business for scheduling, training coordination, and workplace communications. Under the course of business doctrine, communications conducted through personal devices for business purposes are business records subject to discovery — not personal or privileged communications. Defendant has actively incorporated Plaintiff's text message and Signal productions into its own disclosures and record, confirming the business character of these communications. Yet Defendant has not produced a single internal communication between its own employees on these same platforms.

The Ninth Circuit has made clear that text message preservation in employment cases is not optional. In *Jones v. Riot Hospitality Group, LLC*, 95 F.4th 730 (9th Cir. 2024), the Court affirmed dismissal of an employment discrimination case under Rule 37(e)(2) for spoliation of text messages, holding that circumstantial evidence — including gaps in production, selective preservation, and timing — is sufficient to establish intent to deprive. The complete absence of internal text messages from Defendant's production, combined with Defendant's refusal to confirm or deny their existence and Defendant's non-response to Plaintiff's February 26, 2026 preservation notice, is precisely the type of circumstantial evidence courts examine under *Jones*.

Under FRCP 37(a)(1), Plaintiff is required to confer in good faith before presenting any discovery dispute to the Court. Plaintiff is attempting to satisfy that obligation now. Conferral is a mutual obligation — it requires both parties to engage substantively on the issue, not one party to raise it and the other to decline participation. See LR IA 1-3(f); Standing Order of Magistrate Judge Couvillier (requiring conferral that is "intentional, sincere, robust, and deliberately planned"). Plaintiff requests a direct answer to the question posed above at today's conference. If Defendant declines to answer, Plaintiff will have satisfied his conferral obligation and will present this issue to the Court accordingly.

**Item 4 — Prior Rescheduling and Subsequent Filing**

I want to be explicit about why this topic was placed on the agenda. I am not seeking disclosure of Defendant's litigation strategy or work product. I am raising the circumstances surrounding the rescheduling of our original meet-and-confer conference and the conduct that followed as a conferral topic because I intend to include it in a stipulated discovery dispute filing under LR 26-7.

Under LR 26-7(b) and the Court's Standing Order, issues included in a stipulated discovery dispute must first be raised and discussed at meet-and-confer. I am satisfying that requirement now by placing Defendant on explicit written notice that the following topics are intended for inclusion in the stipulation:

(a) The circumstances of the May 21, 2026 conference cancellation, including Defendant's stated rationale; (b) Defendant's refusal of Plaintiff's proposed same-day alternative times (4:30 p.m. and 5:00 p.m.), which resulted in no conference occurring before the Memorial Day holiday weekend; (c) The cancellation occurred on Wednesday, May 21 — the last business day before the Memorial Day holiday weekend — ensuring no conference could occur until the following week, during which time Defendant filed the Joinder (ECF No. 59), which the Court struck from the record; and (d) Whether the pattern of conferral conduct — including the cancellation, the refusal of same-day alternatives immediately preceding a holiday weekend, the filing of a motion during the resulting delay, and Defendant's statement that the meet-and-confer was "your request, not mine" — is consistent with the good-faith conferral obligations required by LR IA 1-3(f) and the Court's Standing Order.

If Defendant declines to discuss these topics at today's conference, Plaintiff will note Defendant's refusal in the stipulation. Plaintiff has satisfied his good-faith conferral obligation by raising these issues in writing and at conference. If Defendant has a legitimate explanation for the sequence of events described above, the meet-and-confer is the appropriate forum to provide it. If Defendant declines, the record will reflect that.

I look forward to a productive conference at 3:00 p.m.

Respectfully,

Corian

On Jun 2, 2026, at 7:28 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

My responses to the issues raised in your email below are as follows:

**1. Requested Time Adjustment**

I have no objection to your request to change the time of today's meet-and-confer conference from 2:00 p.m. to 3:00 p.m. I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conference.

**2. Scope of Issues and Anticipated Continuance**

I have no objection to your proposal of reserving a few minutes at the conclusion of the conference to assess what has been resolved, what remains outstanding, and to schedule a continuation date/time if necessary.

**3. Order of Discussion**

I'm generally agreeable with your proposed order of discussion, with the exception of the inclusion of "Defendant's non-response to Plaintiff's February 26, 2026 preservation notice" in the meet-and-confer conference. There is no obligation under the Federal Rules of Civil Procedure, the Local Rules, or any Ninth Circuit or District of Nevada case of which I am aware which requires an adverse party to respond to a litigation hold notice. If I am mistaken, please provide the legal authorities, if any, upon which you are relying, which I would be happy to review and consider.

**4. Additional Agenda Item – Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I do not agree to include these issues in the meet-and-confer conference. I have no obligation to further explain "the circumstances surrounding the rescheduling of our original meet-and-confer conference" and expressly decline to do so. I also decline your request to discuss "the rational provided by Defendant for … the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record." I am not inclined to disclose information which is protected under the work product doctrine. Furthermore, as you are aware, the Court struck the joinder "without prejudice to MGM's ability to file a proper motion to dismiss" (ECF No. 60) which was promptly filed the following day (ECF No. 63). The appropriate time and method to raise any concerns regarding the propriety of MGM's joinder/motion to dismiss is in your opposition brief.

Best,

Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Case 2:25-cv-01247-JAD-MDC    Document 67    Filed 06/09/26    Page 81 of 239    Tue, Jun 2, 2026 at 12:22 PM

Mr. Edwards,

Your unilateral insistence upon addressing non-discovery matters in a discovery meet-and-confer conference is inappropriate. My previously stated positions stand.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 12:16 PM
[Quoted text hidden]

[Quoted text hidden]

---

**coriandelon@gmail.com** <coriandelon@gmail.com>
To: "Chad C. Butterfield" <Chad.Butterfield@jacksonlewis.com>
Cc: "Paul T. Trimmer" <Paul.Trimmer@jacksonlewis.com>, Rebecca Portelli <Rebecca.Portelli@jacksonlewis.com>, Jennifer Levin <Jennifer.Levin@jacksonlewis.com>

Tue, Jun 2, 2026 at 12:30 PM

Mr. Butterfield,

Are you able to articulate how preservation of evidence, and establishing whether that evidence exists or doesn't exist, isn't a discovery concern? I'm concerned that I don't see the lack in connection. Item 3 speaks for itself as a discovery concern.

Item 4 is regarding potential bad faith in meet and conferral, are you stating meet and conferral isn't a discovery concern?

Again, you're free to respond as you would like. I just can't follow your rationale of not allowing it in our meet and conferral. That currently reads more like you don't want the courts to be involved in these matters.

Very Respectfully,

Corian

> On Jun 2, 2026, at 12:22 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
>
> Mr. Edwards,
>
> Your unilateral insistence upon addressing non-discovery matters in a discovery meet-and-confer conference is inappropriate. My previously stated positions stand.
>
> Best,
>
> Chad
>
> ---
>
> <image034426.png>   **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: "coriandelon@gmail.com" <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Tue, Jun 2, 2026 at 12:32 PM

Mr. Edwards,

By your rationale, your pushing the time for today's conference is evidence of bad faith. I am not going to entertain your demands for explanations to which you have no entitlement.

Best,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900

Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** coriandelon@gmail.com <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 12:30 PM

[Quoted text hidden]

[Quoted text hidden]

---

**corehealingbodyworks@gmail.com** <corehealingbodyworks@gmail.com>                                      Tue, Jun 2, 2026 at 12:39 PM
To: "Chad C. Butterfield" <Chad.Butterfield@jacksonlewis.com>
Cc: coriandelon@gmail.com, "Paul T. Trimmer" <Paul.Trimmer@jacksonlewis.com>, Rebecca Portelli <Rebecca.Portelli@jacksonlewis.com>, Jennifer Levin <Jennifer.Levin@jacksonlewis.com>

You could argue that. You would then have to explain to the courts why you accepted without contest, later to claim it to be bad faith.

I'm not asking you to type an answer. I'm establishing that it's a question I will be asking. As the lawyer in this exchange, I look to you for your open and honest legal opinion on the deficiencies of my request. Please articulate plainly for my legally uneducated mind why my request is not acceptable. At minimum, should I research it, still disagree, and move forward, you can say you completed your duty in the exchange to notify me of the deficiency.

I appreciate your vigor in keeping a clean record.

Respectfully,
Corian

> On Jun 2, 2026, at 12:33 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
>
> Mr. Edwards,
>
> By your rationale, your pushing the time for today's conference is evidence of bad faith. I am not going to entertain your demands for explanations to which you have no entitlement.
>
> Best,
> Chad
>
> <image191920.png>   **Chad C. Butterfield**
>                      Attorney at Law
>
>                      **Jackson Lewis P.C.**
>                      300 S. Fourth Street
>                      Suite 900
>                      Las Vegas, NV 89101
>                      Direct: (702) 921-2462 | Main: (702) 921-2460
>                      Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                      Tue, Jun 2, 2026 at 12:42 PM
To: "corehealingbodyworks@gmail.com" <corehealingbodyworks@gmail.com>
Cc: "coriandelon@gmail.com" <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

While you are correct that I am a lawyer, I am not your lawyer. Please keep that in mind moving forward.

Best,

Chad

   **Chad C. Butterfield**
                        Attorney at Law

                        **Jackson Lewis P.C.**
                        300 S. Fourth Street
                        Suite 900
                        Las Vegas, NV 89101
                        Direct: (702) 921-2462 | Main: (702) 921-2460
                        Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                      Tue, Jun 2, 2026 at 1:05 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,
Obviously you are not my lawyer. I know at least that much. However, you are a lawyer dealing with an unrepresented person, which carries its own obligations.

Under Rule 4.3 of the Nevada Rules of Professional Conduct, a lawyer dealing with an unrepresented party must not take unfair advantage of that person's lack of representation.

Under Rule 3.4(d), a lawyer shall not fail to make a reasonably diligent effort to comply with a legally proper discovery request in pretrial procedure.

Under Rule 4.1(a), a lawyer shall not knowingly make a false statement of material fact or law to a third person.

Under Rule 8.4(c), it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Neither rule requires you to be my lawyer. All require you to engage in good faith. You made statements I can't verify. I want to give you the chance to retract them, or clarify.

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                   Tue, Jun 2, 2026 at 1:07 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

Thank you for your email. I look forward to our conference today at 3:00 p.m.

Best,
Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 1:05 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                                Tue, Jun 2, 2026 at 1:13 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Very good. Talk to you soon!

Respectfully,
Corian

> On Jun 2, 2026, at 1:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Thank you for your email. I look forward to our conference today at 3:00 p.m.
>
> Best,
> Chad
>
> <image907969.png>   **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                   Tue, Jun 2, 2026 at 2:36 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In Ford Motor Cov. V. EEOC, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" Id. at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." Id. at 231 (citing Merriweather v. Hercules, Inc., 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); Thornton v. East Texas Motor Freight, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in Merriweather argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." Merriweather, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." Id. (citing Taylor v. Philips Industries, Inc., 593 F.2d 783, 786 (7th Cir.1979).

In Thornton v. E. Tex. Motor Freight, 497 F.2d 416, 422 (6th Cir. 1974), which the Ford Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in Bing v. Roadway Express, Inc., 485 F.2d 441 (5th Cir. 1973). In Bing, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in Thornton and Bing refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in Ford, Merriweather, and Thornton, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts."  Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [name] [on the plaintiff's ADEA claim], you must determine the plaintiff [name]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [name]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [name] [discharged] [failed to hire] [failed to promote] [demoted] [state other adverse employment action] the plaintiff [name] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]. The plaintiff [name] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [name] has a duty to undertake reasonable measures to minimize [his] [her] [other pronoun] damages and the defendant [name] is not required to compensate the plaintiff [name] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [name] actually avoided, or could have avoided, if [he] [she] [other pronoun] had made reasonable efforts. The defendant [name] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [name] proved that the plaintiff [name] received from other employment from the date the defendant [name] [discharged] [failed to hire] [failed to promote] [demoted] [state other adverse employment action] the plaintiff [name] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [name] proved the plaintiff [name] received after the discharge.]

[b.] [c.]          If the defendant [name] proves by a preponderance of the evidence either:

(i)      that the plaintiff [name] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [name], or

(ii)      that the plaintiff [name] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [name] could have earned from the time the plaintiff [name] could have obtained such new job [or should have obtained from such new job, had [he] [she] [other pronoun] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [name] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

### Request No. 2 (Income)

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

### Request No. 3 (Mitigation Efforts)

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

### Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy.

Defendant's assertion that individual client sessions are relevant is "illogical." Plaintiff's request is compulsory. Mitigation concludes production of income records particular is non-entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 9 (Complaints to Employers)

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

> In the one conversation had between the Respondent and I, there was little talk of weekend availability. The conversation was about disparaging conversations had between his wife (▮▮▮▮▮▮▮ the other owner) and I, along with salary discussions. I had been forced to focus on firing an employee that the Respondent's wife did not care for, in one such occurrence being told "we have too many black people" and that we needed to get rid of some. This was a matter that I had brought up previously to the Respondent, yet he continuously notified me that he did not want to be in the conversation because of "He did not say that". The conversation focused on my personal problems coming off of the ADHD medication Vyvanse and feeling as though I had allowed certain behaviors and rhetoric to be unchecked. I explained that I was uncomfortable with the "tokenism" my position seemed to become and how if the Respondent wanted me to continue being a mediator between his wife and his employees, I needed to be paid accordingly.

### Request No. 13 (Third-Party Complaints)

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

### Request No. 19 (Tax Returns)

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see Cora, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. See Fed. R. Civ. P. 26(b)(1).

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. See, e.g., Gerald v. Univ. of P.R., 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); Cherkaoui v. City of Quincy, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006); Koch v. Cox, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

---

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to clarify Plaintiff's position. Plaintiff looks forward to a productive meet-and-confer and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                                      Tue, Jun 2, 2026 at 2:59 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff  needs to reserve a continuance for the following Requests to properly engage in the matter further:

- **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
- **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
- **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
- **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
- **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
- **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian


On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad


<image743097.png>    **Chad C. Butterfield**
                      Attorney at Law

                      **Jackson Lewis P.C.**
                      300 S. Fourth Street
                      Suite 900
                      Las Vegas, NV 89101
                      Direct: (702) 921-2462 | Main: (702) 921-2460
                      Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's]  work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

[Quoted text hidden]

<image002.png>

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com


--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                        Tue, Jun 2, 2026 at 3:03 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Tue, Jun 2, 2026 at 3:32 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                    Tue, Jun 2, 2026 at 3:47 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Your characterization of today's conference is inaccurate. I did not speak over you. I responded to your statements directly and attempted multiple times to advance the conference to substantive agenda items — including asking "can we please continue", making note we are to continue from Interrogatory 6 (we only did 5 in one hour) and stating "I'm ready to move forward from where we are." You chose to continue discussing scheduling and your opinion of me "not being prepared" to potentially new legal standards and citations you brought up 20 minutes ago that you spent hours on drafting.

During the conference, you mischaracterized my time-change request, stating that I "cut an hour." I corrected you on the spot: my housekeeping email expressly offered to extend to 6:00 p.m. — a net gain, not a reduction. You did not dispute the correction.

Your current email proposes three hours tomorrow or Thursday ending by 5:00 p.m. I offered three hours today — 3:00 p.m. to 6:00 p.m. You declined. I was also agreeable to addressing the interrogatories today given where we were in the agenda and scheduling the remaining items for the next available date. You stated during the conference that if we met today, you would not be available again until the following week. I agreed to that. You then characterized my agreement to your own stated timeline as delay. I cannot simultaneously agree to your schedule and be accused of delaying.

I want to note a distinction for the record. Throughout this litigation, you have repeatedly accused me of mischaracterizing your statements. The difference between your accusations and mine is that when I identify a mischaracterization, I provide the proof. Today I did exactly that, and you disconnected shortly after. You left after 27 minutes without addressing a single substantive agenda item. I did not leave. I am still in the Teams meeting. I was prepared for the full two hours. I am not going to take positions on case law received twenty-four minutes before conferral.

That is not a failure to prepare. I was prepared on every item for which I had adequate notice.

Respectfully,

Corian Edwards

> On Jun 2, 2026, at 3:32 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.
>
> Best,
> Chad

<image493801.png> **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.        Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.        Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.        You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.        You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]        If the defendant [*name*] proves by a preponderance of the evidence either:

(i)        that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)        that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Sam Verba v. California 117-1147-04DCJLT, 2013 U.S. Dist. LEXIS 173994, at *1 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that in actions alleging discrimination, a plaintiff places his financial condition at issue making required disclosure financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA bar stated in response to Requests Nos. 7 and 8. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

**II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES**

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

**III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT**

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the

pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                      Tue, Jun 2, 2026 at 3:50 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

I expressly asked you on multiple occasions to allow me to finish speaking. Your representation that you did not speak over me is blatantly inaccurate. I have sent a Teams invitation for tomorrow from 2:00 p.m. to 5:00 p.m. which you have neither accepted nor proposed any alternatives. I request that you comport yourself in a more collaborative manner.

Best,
Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:47 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

Your characterization of today's conference is inaccurate. I did not speak over you. I responded to your statements directly and attempted multiple times to advance the conference to substantive agenda items — including asking "can we please continue", making
note we are to continue from Interrogatory 6 (we only did 5 in one hour) and stating "I'm ready to move forward from where we are." You chose to continue discussing scheduling and your opinion of me "not being prepared" to potentially new legal standards and
citations you brought up 20 minutes ago that you spent hours on drafting.

During the conference, you mischaracterized my time-change request, stating that I "cut an hour." I corrected you on the spot: my housekeeping email expressly offered to extend to 6:00 p.m. — a net gain, not a reduction. You did not dispute the correction.

Your current email proposes three hours tomorrow or Thursday ending by 5:00 p.m. I offered three hours today — 3:00 p.m. to 6:00 p.m. You declined. I was also agreeable to addressing the interrogatories today given where we were in the agenda and scheduling
the remaining items for the next available date. You stated during the conference that if we met today, you would not be available again until the following week. I agreed to that. You then characterized my agreement to your own stated timeline as delay. I
cannot simultaneously agree to your schedule and be accused of delaying.

I want to note a distinction for the record. Throughout this litigation, you have repeatedly accused me of mischaracterizing your statements. The difference between your accusations and mine is that when I identify a mischaracterization, I provide the proof.
Today I did exactly that, and you disconnected shortly after. You left after 27 minutes without addressing a single substantive agenda item. I did not leave. I am still in the Teams

meeting. I was prepared to sit for two hours. I am not going to take positions on case law received twenty-four minutes before conferral.

That is not a failure to prepare. I was prepared on every item for which I had adequate notice.

Respectfully,

Corian Edwards

On Jun 2, 2026, at 3:32 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

<image493801.png>   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.     Mitigation of Back Pay. A plaintiff in a job discrimination case has a duty to use reasonable measures to mitigate [her] damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.     You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.     You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]     If the defendant [*name*] proves by a preponderance of the evidence either:

(i)     that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)     that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

**Request No. 13 (Third Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the First Amended Complaint was the operative complaint. The request remains valid despite the subsequent amendment.

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Corian Edwards** <coriandelon@gmail.com>                                                    Tue, Jun 2, 2026 at 3:57 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

<image493801.png>   **Chad C. Butterfield**
                     Attorney at Law

                     **Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with

contemporaneous notes, prior emails, and placing my positions on the record in writing before we meet, so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]       If the defendant [*name*] proves by a preponderance of the evidence either:

(i)      that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)      that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation

would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his reported salary/wages of his income.

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42) — each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

**II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES**

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

**III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT**

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

— **Chad C. Butterfield**
**Attorney at Law**

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                         Tue, Jun 2, 2026 at 4:06 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.


RE: Defense Counsel's early Meet and Confer Exit


Summarize

Butterfield, Chad C. (Las Vegas)
To ◯ Corian Edwards; 🔴 Trimmer, Paul T. (Las Vegas)
Cc ✅ Levin, Jennifer (Las Vegas); ✅ Portelli, Rebecca (Las Vegas)

😊 ↩ Reply   ↩ Reply All   → Forward   🔳   ···
Tue 6/2/2026 3:42 PM

🛡 Internal

Mr. Edwards,

You initiated the scheduling dispute. Last night, you requested to move the start time to 3:00 p.m. Today, you advised that you were unprepared to address the legal authorities I provided in response to your rebuttal. You engaged in snark and repeatedly interrupted me and talked over me. You also refused to cooperate on scheduling the meet-and-confer conference under any terms inconsistent with your unilateral demands. I have offered three hour blocks tomorrow and Thursday, which you have declined without any reason.

I am now making a firm proposal to conduct a three-hour meet and confer conference tomorrow, June 3, 2026, from 2:00 p.m. to 5:00 p.m. and will send you a calendar invitation. ==If you are not available during that time, please provide alternate proposed dates and times.==

Best,
Chad


**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit for your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just send a request and was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,

Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM

**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff  needs to reserve a continuance for the following Requests to properly engage in the matter further:

- **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)

- **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)

- **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)

- **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)

- **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)

- **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,

Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issue. Back pay is mandatory under 42 U.S.C. § 2000e-5: a back pay award "shall be reduced by [i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]        If the defendant [*name*] proves by a preponderance of the evidence either:

(i)      that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)      that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against employers — Plaintiff has filed one. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

<span style="color:red">Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:</span>

&lt;image002.png&gt;

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.</span>

<span style="color:red">Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.</span>

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.</span>

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:</span>

<span style="color:red">The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).</span>

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g., Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.</span>

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

<span style="color:red">Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.</span>

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation is not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

---

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--

Relax,

Corian

---

Corian Edwards <coriandelon@gmail.com>                                                                                  Tue, Jun 2, 2026 at 4:10 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.
This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,
Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

<image954451.png>     **Chad C. Butterfield**
                        Attorney at Law

                        **Jackson Lewis P.C.**
                        300 S. Fourth Street
                        Suite 900
                        Las Vegas, NV 89101
                        Direct: (702) 921-2462 | Main: (702) 921-2460
                        Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

— **Chad C. Butterfield**

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]        If the defendant [*name*] proves by a preponderance of the evidence either:

(i)      that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)      that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the total award [an amount of money that the plaintiff [name] could have earned from another job the plaintiff [name] could have obtained such new job [or should have obtained from such new job, had [he] [she] [other pronoun] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [name] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cites in support — *Azarov* — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete *Azarov* ruling to the Court and seek fees under Rule 37(a)(5)(B).

*Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at \*15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.*

*Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.*

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

*Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.*

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

*At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see Cora, 2026 U.S. Dist. LEXIS 66363, at \*22-23, in which the Court soundly rejected your relevance objection:*

> *The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. See Fed. R. Civ. P. 26(b)(1).*

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

*At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. See, e.g., Gerald v. Univ. of P.R., 2011 U.S. Dist. LEXIS 167980, at \*7 (D.P.R. July 28, 2011); Cherkaoui v. City of Quincy, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at \*3 (D. Mass. July 23, 2015); Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006); Koch v. Cox, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.*

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

*Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.*

*Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. EEOC v. Ventura Corp., 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); Aghamehdi v. OSRAM Sylvania Inc., 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019).*

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to

any claim or defense. Plaintiff will produce post-termination W-2 income reports upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

---

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                Tue, Jun 2, 2026 at 4:30 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

I am available any time Thursday from 8:00 a.m. to 5:00 p.m.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.

This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,

Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,

Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad

– **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

- · **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)

- · **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)

- · **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)

- · **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)

- · **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)

- · **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,

Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red. In case of conflict, Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id*. at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id*. at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id*.(citing *Taylor* v. *Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.        Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.        Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.    You must deduct any wages or other earnings that the defendant [*name*] proved the plaintiff [*name*] received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.    You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]    If the defendant [*name*] proves by a preponderance of the evidence either:

(i)    that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)    that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement.]]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 seeks complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g., Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

### Chad C. Butterfield

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--

Relax,

Corian

Corian Edwards <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Per your call, you offered tomorrow OR Thursday. You have changed, again. How about you provide your availability? Asking for mine hasn't been historically substantive.

Respectfully,
Corian

On Jun 2, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available any time Thursday from 8:00 a.m. to 5:00 p.m.

Best,
Chad

<image335772.png>   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.
This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,
Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

—   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff  needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM

**To:** Butterfield, Chad V. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.	Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.	Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.	You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.	You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[or if the defendant [name] proves by a preponderance of the evidence either]

(i)     that the plaintiff [name] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [name], or

(ii)    that the plaintiff [name] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [name] could have earned from the time the plaintiff [name] could have obtained such new job [or should have obtained from such new job, had [he] [she] [other pronoun] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [name] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM*

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff

independently produce documentation and that same information, Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

---

### III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Tue, Jun

Mr. Butterfield,
I misread your message, my apologies.
You ARE available Thursday, yes?

10am.

On Jun 2, 2026, at 4:36 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Per your call, you offered tomorrow OR Thursday. You have changed, again. How about you provide your availability? Asking for mine hasn't been historically substantive.

Respectfully,
Corian

On Jun 2, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available anytime Thursday from 9:00 a.m. to 5:00 p.m.

Best,
Chad

<image335772.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.
This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,
Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name]* [on the plaintiff's ADEA claim], you must determine the plaintiff [*name]*'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name]*. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the plaintiff [*name]* to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name]* has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [*name]* has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun]*damages and the defendant [*name]* is not required to compensate the plaintiff [*name]* for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name]* actually avoided, or could have avoided, if [he] [she] [*other pronoun]* had made reasonable efforts. The defendant [*name]* has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [*name]* proved that the plaintiff [*name]* received from other employment from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the plaintiff [*name]* to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [*name]* proved the plaintiff [*name]* received after the discharge.]

[b.] [c.]      If the defendant [*name]* proves by a preponderance of the evidence either:

(i)      that the plaintiff [*name]* unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name], or*

(ii)      that the plaintiff [*name]* failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name]* could have earned from the time the plaintiff [*name]* could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun]* made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name]* [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-

employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include

say it continues from Azarov. By including the relevant period, Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

---

**II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES**

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

---

**III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT**

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian


On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com


--
Relax,
Corian


---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                         Tue, Jun 2, 2026 at 4:4
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>


I have no idea what you are talking about. I have repeatedly offered tomorrow or Thursday. When you failed to respond, I set a meeting for tomorrow at 2:00 p.m. and asked you to provide alternative dates/times if tomorrow does not work for you. At 4:11 p.m. you stated "We will have to schedule for Thursday. Give me your Thursday availability." I responded by informing you that I am available Thursday between 8:00 a.m. and 5:00 p.m.  Please clarify your email below as I cannot make sense of it.




**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:37 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio


Per your call, you offered tomorrow OR Thursday. You have changed, again. How about you provide your availability? Asking for mine hasn't been historically substantive.


Respectfully,

Corian

On Jun 2, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available any time Thursday from 8:00 a.m. to 5:00 p.m.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.

This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,

Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM

**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,

Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

- · **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather, Thornton, Bing*, Jury Instruction 11.13, *Ram Nehara*)

- · **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)

- · **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen, Gerald v. Univ. of P.R., Cherkaoui, Doe v. Oberweis Dairy, Koch v. Cox*)

- · **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp., Aghamehdi v. OSRAM*)

- · **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)

- · **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,

Corian

> On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Dear Mr. Edwards,

> To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

> Sincerely,

> Chad

> — **Chad C. Butterfield**

>   Attorney at Law

>   **Jackson Lewis P.C.**

>   300 S. Fourth Street
>   Suite 900

>   Las Vegas, NV 89101

>   Direct: (702) 921-2462 | Main: (702) 921-2460

>   Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to is reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.*(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.    Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.    Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.    You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.    You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]    If the defendant [*name*] proves by a preponderance of the evidence either:

(i)    that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)    that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client

authorization or a court order identifying the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. And the legal prohibition Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

*Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.*

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

*No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).*

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

*Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:*

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

*Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.*

*Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.*

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

*Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.*

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> *The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. See Fed. R. Civ. P. 26(b)(1).*

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

*At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. See, e.g., Gerald v. Univ. of P.R., 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); Cherkaoui v. City of Quincy, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006); Koch v. Cox, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.*

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to

Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendants represent [ ] a sophisticated national law firm. The disparity in resources between the Defendant[ ] and Plaintiff is readily [ ] discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
>
> Attorney at Law
>
> **Jackson Lewis P.C.**
>
> 300 S. Fourth Street
> Suite 900
>
> Las Vegas, NV 89101
>
> Direct: (702) 921-2462 | Main: (702) 921-2460
>
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--

Relax,

Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                                                                            Tue, Jun
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Confirmed for Thursday at 10:00 a.m.

Thanks,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:38 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I misread your message, my apologies.

You ARE available Thursday, yes?

10am.

On Jun 2, 2026, at 4:36 PM, Corian Edwards <coriandelon@gmail.com> wrote:

Per your call, you offered tomorrow OR Thursday. You have changed, again. How about you provide your availability? Asking for mine hasn't been historically substantive.

Respectfully,

Corian

On Jun 2, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available any time Thursday from 8:00 a.m. to 5:00 p.m.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.

This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,

Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,

Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff  needs to reserve a continuance for the following Requests to properly engage in the matter further:

- · **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)

- · **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)

- · **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)

- · **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)

- · **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)

- · **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,

Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id*. at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id*. at 231 (citing *Merriweather* v. *Hercules, Inc*., 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id*.(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.    Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.    Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.    You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.    You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]         If the defendant [*name*] proves by a preponderance of the evidence either:

(i)       that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)      that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

### Request No. 2 (Income)

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may deduct investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

&lt;image002.png&gt;

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. See Cora v. Amgen Mfg., No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see Cora, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. See Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting the factual allegations in the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

---

**II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES**

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served, the First Amended Complaint was the operative complaint. The Court's later ruling dismissing the superseded amendment

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--

Relax,

Corian

**Corian Edwards** <coriandelon@gmail.com>                                                                                                      Tue, Jun
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

I corrected the record 2 minutes before you completed this email. I will color this as you not reading that email in time.
Respectfully,
Corian

On Jun 2, 2026, at 4:40 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

I have no idea what you are talking about. I have repeatedly offered tomorrow or Thursday. When you failed to respond, I set a meeting for tomorrow at 2:00 p.m. and asked you to prov
alternative dates/times if tomorrow does not work for you. At 4:11 p.m. you stated "We will have to schedule for Thursday. Give me your Thursday availability." I responded by informing y
I am available Thursday between 8:00 a.m. and 5:00 p.m.  Please clarify your email below as I cannot make sense of it.

<image588543.png>   **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:37 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.
**Subject:** Re: Edwards v. Bellagio

Per your call, you offered tomorrow OR Thursday. You have changed, again. How about you provide your availability? Asking for mine hasn't been historically substantive.

Respectfully,
Corian

On Jun 2, 2026, at 4:30 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I am available any time Thursday from 8:00 a.m. to 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 4:11 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.
This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,
Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

— **Chad C. Butterfield**
    Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
    Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
    Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.      Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.      Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had

the reasonable certainty that the [plaintiff] [name] has lost future earnings by a preponderance of the evidence, and to what months it should be made and the amount by which the award should reduced.

Therefore:

a.      You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.      You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]          If the defendant [*name*] proves by a preponderance of the evidence either:

(i)      that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)      that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

### Request No. 2 (Income)

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

### Request No. 3 (Mitigation Efforts)

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

### Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 9 (Complaints to Employers)

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to accurately and truthfully representative of any income you earn from your employment at Access Store 1 LLC:

&lt;image002.png&gt;

### Request No. 13 (Third-Party Complaints)

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

### Request No. 19 (Tax Returns)

Plaintiff has reviewed *Azarov v. Sam's E., Inc.*, Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited *Azarov* for the proposition that all income sources must be produced. Defendant omitted that: (1) the *Azarov* court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the *Azarov* court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The *Azarov* court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under *Azarov's* own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — *Azarov* — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete *Azarov* ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such

communications and hasd produced nothing — despite Plaintiff narrowing the request to a single week (June 15–22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

<span style="color:red">Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.</span>

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

# EXHIBIT E

Email Correspondence re: June 2, 2026 Conference

 Gmail

Corian Edwards <coriandelon@gmail.com>

**Edwards v. Bellagio**
24 messages

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>     Mon, Jun 1, 2026 at 11:39 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**2 attachments**

 **2026-01-06 Meet-and-Confer Correspondence.pdf**
87K

 **Proposed Stipulated Protective Order (Edwards v. Bellagio).pdf**
70K

---

**Corian Edwards** <coriandelon@gmail.com>     Mon, Jun 1, 2026 at 7:14 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 9 (Complaints to Employers)

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

### Request No. 13 (Third-Party Complaints)

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

### Request No. 19 (Tax Returns)

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

### Request No. 26 (Emotional Distress — FAC)

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

### Request No. 38 (PMI Communications)

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

---

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

[Quoted text hidden]
--
Relax,
Corian

---

Corian Edwards <coriandelon@gmail.com>                                                                        Mon, Jun 1, 2026 at 7:17 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

The PDF attachment.

[Quoted text hidden]
--
Relax,
Corian

---

📄 **Plaintiff Response to Meet-Confer Correspondence - June 1 2026.pdf**
20K

---

**Corian Edwards** <coriandelon@gmail.com>                                                    Mon, Jun 1, 2026 at 7:43 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

I am writing separately to address several housekeeping matters in advance of our continued meet-and-confer conference.

**1. Requested Time Adjustment**

Due to unforeseen circumstances, I will be traveling to a secure location to conduct the conference between 2:00 p.m. and 3:00 p.m. As a result, I respectfully request that we push our start time from 2:00 p.m. to 3:00 p.m. Based on your prior communication indicating that you have set aside the window from 2:00 p.m. to 5:00 p.m., I am requesting that we meet from 3:00 p.m. to 5:00 p.m. If Defendant is amenable, I am available to extend the session from 3:00 p.m. to 6:00 p.m. to ensure adequate time to address all outstanding matters. Please confirm at your earliest convenience.

**2. Scope of Issues and Anticipated Continuance**

The volume of matters requiring discussion is substantial. Between Plaintiff's April 27, 2026 correspondence (identifying deficiencies in Defendant's discovery responses), Defendant's June 1, 2026 correspondence (identifying objections to Plaintiff's discovery responses), the proposed protective order, Plaintiff's request to extend the discovery period, and other outstanding items, it is likely that a single session will not be sufficient to address everything meaningfully.

I am placing on the record my expectation that a continuance of the meet-and-confer may be necessary. I propose that we reserve the final five to ten minutes of our session to assess what has been resolved, what remains outstanding, and to schedule a continuation date if needed.

**3. Order of Discussion**

I acknowledge Defendant's prior suggestion that we address issues in chronological order. I also want to formally acknowledge that in our previous conference, I attempted to begin with an issue that was not the first matter in sequence, and I understand how that could disrupt the flow of discussion. I apologize for that, and I am committed to a more structured approach going forward.

I propose the following order for our June 2 conference:

(a) Outstanding discovery disputes from Plaintiff's April 27, 2026 correspondence, in the order raised — including but not limited to RFP deficiencies (personnel/HR records completeness, investigation materials, internal communications, PMI/third-party communications, comparator compensation data, insurance policy disclosure), interrogatory numerosity, the proposed protective order, supplemental witness disclosures, and Defendant's non-response to Plaintiff's February 26, 2026 preservation notice (we began with the numerosity issue at our prior conference but were unable to reach the remaining disputes, which must now be addressed); (b) Plaintiff's request to extend the discovery period; (c) Issues raised in Defendant's June 1, 2026 correspondence, in the order presented; (d) Defendant's proposed Stipulated Protective Order; (e) Any additional matters either party wishes to raise; and (f) Scheduling of continuance, if necessary.

**4. Additional Agenda Item — Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I am requesting that we address, as part of our conferral, the circumstances surrounding the rescheduling of our original meet-and-confer conference, including the rationale provided by Defendant for the cancellation and the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record. I need to discuss this matter as part of our meet-and-confer process in connection with a subsequent stipulated discovery dispute filing. I am placing this on the agenda now so that Defendant is on notice and comes prepared to discuss it.

Please confirm the adjusted start time at your earliest convenience so that both parties may plan accordingly.

Respectfully,

Corian

> [Quoted text hidden]
> The PDF attachment.
>
>
>
>> [Quoted text hidden]
>>> [Quoted text hidden]
>>> [Quoted text hidden]
>>>> [Quoted text hidden]
>>>>
>>>> <image981786.png>   **Chad C. Butterfield**
>>>>                     Attorney at Law
>>>>
>>>>                     **Jackson Lewis P.C.**
>>>>                     300 S. Fourth Street
>>>>                     Suite 900
>>>>                     Las Vegas, NV 89101
>>>>                     Direct: (702) 921-2462 | Main: (702) 921-2460
>>>>                     Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>>>>
>>>>
>>>> --
>>>> Relax,
>>>> Corian
>>>
>>> --
>>> Relax,
>>> Corian
>>> <Plaintiff Response to Meet-Confer Correspondence - June 1 2026.pdf>

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>       Tue, Jun 2, 2026 at 7:28 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Dear Mr. Edwards,

My responses to the issues raised in your email below are as follows:

**1. Requested Time Adjustment**

I have no objection to your request to change the time of today's meet-and-confer conference from 2:00 p.m. to 3:00 p.m. I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conference.

**2. Scope of Issues and Anticipated Continuance**

I have no objection to your proposal of reserving a few minutes at the conclusion of the conference to assess what has been resolved, what remains outstanding, and to schedule a continuation date/time if necessary.

**3. Order of Discussion**

I'm generally agreeable with your proposed order of discussion, with the exception of the inclusion of "Defendant's non-response to Plaintiff's February 26, 2026 preservation notice" in the meet-and-confer conference. There is no obligation under the Federal Rules of Civil Procedure, the Local Rules, or any Ninth Circuit or District of Nevada case of which I am aware which requires an adverse party to respond to a litigation hold notice. If I am mistaken, please provide the legal authorities, if any, upon which you are relying, which I would be happy to review and consider.

**4. Additional Agenda Item – Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I do not agree to include these issues in the meet-and-confer conference. I have no obligation to further explain "the circumstances surrounding the rescheduling of our original meet-and-confer conference" and expressly decline to do so. I also decline your request to discuss "the rational provided by Defendant for … the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record." I am not inclined to disclose information which is protected under the work product doctrine. Furthermore, as you are aware, the Court struck the joinder "without prejudice to MGM's ability to file a proper motion to dismiss" (ECF No. 60) which was promptly filed the following day (ECF No. 63). The appropriate time and method to raise any concerns regarding the propriety of MGM's joinder/motion to dismiss is in your opposition brief.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>       Tue, Jun 2, 2026 at 12:16 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Thank you for your prompt response and for agreeing to the adjusted conference time of 3:00 p.m. I appreciate the accommodation.

I write briefly to address your responses to Items 3 and 4 of my housekeeping correspondence.

**Item 3 — Preservation Notice**

Defendant's non-response to Plaintiff's February 26, 2026 preservation notice was included in the agenda for today's conference because it is one of the outstanding discovery disputes from Plaintiff's April 27, 2026 correspondence that the parties were unable to reach at the prior conference. We began with the numerosity issue and were unable to address the remaining disputes, which must now be addressed. This is not a new topic — it has been pending since April 27.

Defendant's position that there is no obligation to respond to a litigation hold notice mischaracterizes Plaintiff's request. Plaintiff is not asking for a standalone response to a litigation hold. Preservation notice is the topic, not the singular question. Along with looking for a response that the preservation notice was received, Plaintiff is actively looking to verify based on Defense's disclosure activity lacking any Signal, text, or email messages between the parties as listed that expressly name or insinuate as a subject the Plaintiff. Defense hasn't acknowledged the absence of said communications, nor attempted to object to their disclosure, nor mark them as part of a privilege log. Plaintiff is asking the following question as part of

the meet-and-confer conferral process, to which Defendant is obligated to respond: whether there exist any text messages, Signal communications, or other electronic communications — not authored by Plaintiff — between any of the individuals identified in Plaintiff's February 26, 2026 preservation notice that reference, identify, or discuss Plaintiff by name, badge number, or by implication.

Under FRCP 34(b)(2)(C), a party objecting to a production request must state whether any responsive materials are being withheld on the basis of that objection. Defendant has neither produced internal text messages or Signal communications between its employees nor stated that no such communications exist. This is not a discretionary omission — it is a failure to comply with the mandate of Rule 34(b)(2)(C).

Plaintiff has produced his own text messages and Signal communications with Defendant's employees (PLF000104-233, PLF000234-247), establishing that these platforms were used as a routine course of business for scheduling, training coordination, and workplace communications. Under the course of business doctrine, communications conducted through personal devices for business purposes are business records subject to discovery — not personal or privileged communications. Defendant has actively incorporated Plaintiff's text message and Signal productions into its own disclosures and record, confirming the business character of these communications. Yet Defendant has not produced a single internal communication between its own employees on these same platforms.

The Ninth Circuit has made clear that text message preservation in employment cases is not optional. In *Jones v. Riot Hospitality Group, LLC*, 95 F.4th 730 (9th Cir. 2024), the Court affirmed dismissal of an employment discrimination case under Rule 37(e)(2) for spoliation of text messages, holding that circumstantial evidence — including gaps in production, selective preservation, and timing — is sufficient to establish intent to deprive. The complete absence of internal text messages from Defendant's production, combined with Defendant's refusal to confirm or deny their existence and Defendant's non-response to Plaintiff's February 26, 2026 preservation notice, is precisely the type of circumstantial evidence courts examine under *Jones*.

Under FRCP 37(a)(1), Plaintiff is required to confer in good faith before presenting any discovery dispute to the Court. Plaintiff is attempting to satisfy that obligation now. Conferral is a mutual obligation — it requires both parties to engage substantively on the issue, not one party to raise it and the other to decline participation. See LR IA 1-3(f); Standing Order of Magistrate Judge Couvillier (requiring conferral that is "intentional, sincere, robust, and deliberately planned"). Plaintiff requests a direct answer to the question posed above at today's conference. If Defendant declines to answer, Plaintiff will have satisfied his conferral obligation and will present this issue to the Court accordingly.

**Item 4 — Prior Rescheduling and Subsequent Filing**

I want to be explicit about why this topic was placed on the agenda. I am not seeking disclosure of Defendant's litigation strategy or work product. I am raising the circumstances surrounding the rescheduling of our original meet-and-confer conference and the conduct that followed as a conferral topic because I intend to include it in a stipulated discovery dispute filing under LR 26-7.

Under LR 26-7(b) and the Court's Standing Order, issues included in a stipulated discovery dispute must first be raised and discussed at meet-and-confer. I am satisfying that requirement now by placing Defendant on explicit written notice that the following topics are intended for inclusion in the stipulation:

(a) The circumstances of the May 21, 2026 conference cancellation, including Defendant's stated rationale; (b) Defendant's refusal of Plaintiff's proposed same-day alternative times (4:30 p.m. and 5:00 p.m.), which resulted in no conference occurring before the Memorial Day holiday weekend; (c) The cancellation occurred on Wednesday, May 21 — the last business day before the Memorial Day holiday weekend — ensuring no conference could occur until the following week, during which time Defendant filed the Joinder (ECF No. 59), which the Court struck from the record; and (d) Whether the pattern of conferral conduct — including the cancellation, the refusal of same-day alternatives immediately preceding a holiday weekend, the filing of a motion during the resulting delay, and Defendant's statement that the meet-and-confer was "your request, not mine" — is consistent with the good-faith conferral obligations required by LR IA 1-3(f) and the Court's Standing Order.

If Defendant declines to discuss these topics at today's conference, Plaintiff will note Defendant's refusal in the stipulation. Plaintiff has satisfied his good-faith conferral obligation by raising these issues in writing and at conference. If Defendant has a legitimate explanation for the sequence of events described above, the meet-and-confer is the appropriate forum to provide it. If Defendant declines, the record will reflect that.

I look forward to a productive conference at 3:00 p.m.

Respectfully,

Corian

On Jun 2, 2026, at 7:28 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

My responses to the issues raised in your email below are as follows:

**1. Requested Time Adjustment**

I have no objection to your request to change the time of today's meet-and-confer conference from 2:00 p.m. to 3:00 p.m. I want to be respectful of your time, and I recognize that schedules shift — these things happen, and I am willing to be as reasonable as possible to facilitate this conference.

**2. Scope of Issues and Anticipated Continuance**

I have no objection to your proposal of reserving a few minutes at the conclusion of the conference to assess what has been resolved, what remains outstanding, and to schedule a continuation date/time if necessary.

**3. Order of Discussion**

I'm generally agreeable with your proposed order of discussion, with the exception of the inclusion of "Defendant's non-response to Plaintiff's February 26, 2026 preservation notice" in the meet-and-confer conference. There is no obligation under the Federal Rules of Civil Procedure, the Local Rules, or any Ninth Circuit or District of Nevada case of which I am aware which requires an adverse party to respond to a litigation hold notice. If I am mistaken, please provide the legal authorities, if any, upon which you are relying, which I would be happy to review and consider.

**4. Additional Agenda Item – Prior Meet-and-Confer Rescheduling and Subsequent Filing**

I do not agree to include these issues in the meet-and-confer conference. I have no obligation to further explain "the circumstances surrounding the rescheduling of our original meet-and-confer conference" and expressly decline to do so. I also decline your request to discuss "the rational provided by Defendant for … the subsequent filing of the Joinder (ECF No. 59), which the Court struck from the record." I am not inclined to disclose information which is protected under the work product doctrine. Furthermore, as you are aware, the Court struck the joinder "without prejudice to MGM's ability to file a proper motion to dismiss" (ECF No. 60) which was promptly filed the following day (ECF No. 63). The appropriate time and method to raise any concerns regarding the propriety of MGM's joinder/motion to dismiss is in your opposition brief.

Best,

Chad

  &lt;image680438.png&gt;  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>   Tue, Jun 2, 2026 at 12:22 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

Your unilateral insistence upon addressing non-discovery matters in a discovery meet-and-confer conference is inappropriate. My previously stated positions stand.

Best,

Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 12:16 PM
[Quoted text hidden]

[Quoted text hidden]

---

**coriandelon@gmail.com** <coriandelon@gmail.com>   Tue, Jun 2, 2026 at 12:30 PM
To: "Chad C. Butterfield" <Chad.Butterfield@jacksonlewis.com>
Cc: "Paul T. Trimmer" <Paul.Trimmer@jacksonlewis.com>, Rebecca Portelli <Rebecca.Portelli@jacksonlewis.com>, Jennifer Levin <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Are you able to articulate how preservation of evidence, and establishing whether that evidence exists or doesn't exist, isn't a discovery concern? I'm concerned that I don't see the lack in connection.
Item 3 speaks for itself as a discovery concern.

Item 4 is regarding potential bad faith in meet and conferral, are you stating meet and conferral isn't a discovery concern?

Again, you're free to respond as you would like. I just can't follow your rationale of not allowing it in our meet and conferral. That currently reads more like you don't want the courts to be involved in these matters.

Very Respectfully,

Corian

On Jun 2, 2026, at 12:22 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your unilateral insistence upon addressing non-discovery matters in a discovery meet-and-confer conference is inappropriate. My previously stated positions stand.

Best,

Chad

---

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>      Tue, Jun 2, 2026 at 12:32 PM
To: "coriandelon@gmail.com" <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

By your rationale, your pushing the time for today's conference is evidence of bad faith. I am not going to entertain your demands for explanations to which you have no entitlement.

Best,
Chad

**JL**     **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** coriandelon@gmail.com <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 12:30 PM
[Quoted text hidden]

[Quoted text hidden]

---

**corehealingbodyworks@gmail.com** <corehealingbodyworks@gmail.com>      Tue, Jun 2, 2026 at 12:39 PM
To: "Chad C. Butterfield" <Chad.Butterfield@jacksonlewis.com>
Cc: coriandelon@gmail.com, "Paul T. Trimmer" <Paul.Trimmer@jacksonlewis.com>, Rebecca Portelli <Rebecca.Portelli@jacksonlewis.com>, Jennifer Levin <Jennifer.Levin@jacksonlewis.com>

You could argue that. You would then have to explain to the courts why you accepted without contest, later to claim it to be bad faith.

I'm not asking you to type an answer. I'm establishing that it's a question I will be asking. As the lawyer in this exchange, I look to you for your open and honest legal opinion on the deficiencies of my request. Please articulate plainly for my legally uneducated mind why my request is not acceptable. At minimum, should I research it, still disagree, and move forward, you can say you completed your duty in the exchange to notify me of the deficiency.

I appreciate your vigor in keeping a clean record.

Respectfully,
Corian

> On Jun 2, 2026, at 12:33 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

By your rationale, your pushing the time for today's conference is evidence of bad faith. I am not going to entertain your demands for explanations to which you have no entitlement.

Best,
Chad

<image191920.png>     **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Tue, Jun 2, 2026 at 12:42 PM
To: "corehealingbodyworks@gmail.com" <corehealingbodyworks@gmail.com>
Cc: "coriandelon@gmail.com" <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)"
<Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

While you are correct that I am a lawyer, I am not _your_ lawyer. Please keep that in mind moving forward.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                              Tue, Jun 2, 2026 at 1:05 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)"
<Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,
Obviously you are not my lawyer. I know at least that much. However, you are a lawyer dealing with an unrepresented person, which carries its own obligations.

Under Rule 4.3 of the Nevada Rules of Professional Conduct, a lawyer dealing with an unrepresented party must not take unfair advantage of that person's lack of
representation.

 Under Rule 3.4(d), a lawyer shall not fail to make a reasonably diligent effort to comply with a legally proper discovery request in pretrial procedure.

Under Rule 4.1(a), a lawyer shall not knowingly make a false statement of material fact or law to a third person.

Under Rule 8.4(c), it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Neither rule requires you to be my lawyer. All require you to engage in good faith. You made statements I can't verify. I want to give you the chance to retract them, or
clarify.
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Tue, Jun 2, 2026 at 1:07 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)"
<Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

Thank you for your email. I look forward to our conference today at 3:00 p.m.

Best,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 1:05 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                    Tue, Jun 2, 2026 at 1:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Very good. Talk to you soon!

Respectfully,
Corian

> On Jun 2, 2026, at 1:07 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,

> Thank you for your email. I look forward to our conference today at 3:00 p.m.

> Best,
> Chad

> <image907969.png>    **Chad C. Butterfield**
>                       Attorney at Law
>
>                       **Jackson Lewis P.C.**
>                       300 S. Fourth Street
>                       Suite 900
>                       Las Vegas, NV 89101
>                       Direct: (702) 921-2462 | Main: (702) 921-2460
>                       Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>           Tue, Jun 2, 2026 at 2:36 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

    **Chad C. Butterfield**
                        Attorney at Law

                        **Jackson Lewis P.C.**
                        300 S. Fourth Street
                        Suite 900
                        Las Vegas, NV 89101
                        Direct: (702) 921-2462 | Main: (702) 921-2460
                        Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

Gmail - Edwards v. Bellagio

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.     Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.     Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*] damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.     You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.     You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]     If the defendant [*name*] proves by a preponderance of the evidence either:

(i)     that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)     that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more,

Defendant should identify the specific legal authority supporting that contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please refer to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:

In the one conversation had between the Respondent and I, there was little talk of weekend availability. The conversation was about disparaging conversations had between his wife (███████, the other owner) and I, along with salary discussions. I had been forced to focus on firing an employee that the Respondent's wife did not care for, in one such occurrence being told "we have too many black people" and that we needed to get rid of some. This was a matter that I had brought up previously to the Respondent, yet he continuously notified me that he did not want to be in the conversation because "He did not say that". The conversation focused on my personal problems coming off of the ADHD medication Vyvanse and feeling as though I had allowed certain behaviors and rhetoric to be unchecked. I explained that I was uncomfortable with the "tokenism" my position seemed to become and how if the Respondent wanted me to continue being a mediator between his wife and his employees, I needed to be paid accordingly.

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income documentation must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request thus broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

*Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. EEOC v. Ventura Corp., 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); Aghamehdi v. OSRAM Sylvania Inc., 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.*

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

*At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.*

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

*Plaintiff's extraordinary mischaracterizations of fact and law are noted.*

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

*Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.*

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>        Tue, Jun 2, 2026 at 2:
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

- **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
- **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
- **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
- **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
- **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
- **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagio's supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's

position.

Sincerely,
Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

[Quoted text hidden]

<image002.png>

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                     Tue, Jun 2, 2026 at 3:03 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,

Chad

**JL**    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

**Corian Edwards** <coriandelon@gmail.com>                                                                                          Tue, Jun 2, 2026 at 3:27 PM
Draft To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)"
<Jennifer.Levin@jacksonlewis.com>

[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                                            Tue, Jun 2, 2026 at 3:32 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)"
<Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,


Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to
set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered
three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an
efficient or productive use of time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.


Best,

Chad


      **Chad C. Butterfield**
          Attorney at Law

          **Jackson Lewis P.C.**
          300 S. Fourth Street
          Suite 900
          Las Vegas, NV 89101
          Direct: (702) 921-2462 | Main: (702) 921-2460
          Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                                                                          Tue, Jun
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@

Mr. Butterfield,

Your characterization of today's conference is inaccurate. I did not speak over you. I responded to your statements directly and attempted multiple times to advance the conference to substant
— including asking "can we please continue", making note we are to continue from Interrogatory 6 (we only did 5 in one hour) and stating "I'm ready to move forward from where we are." You
discussing scheduling and your opinion of me "not being prepared" to potentially new legal standards and citations you brought up 20 minutes ago that you spent hours on drafting.

During the conference, you mischaracterized my time-change request, stating that I "cut an hour." I corrected you on the spot: my housekeeping email expressly offered to extend to 6:00 p.m.
a reduction. You did not dispute the correction.

Your current email proposes three hours tomorrow or Thursday ending by 5:00 p.m. I offered three hours today — 3:00 p.m. to 6:00 p.m. You declined. I was also agreeable to addressing the
today given where we were in the agenda and scheduling the remaining items for the next available date. You stated during the conference that if we met today, you would not be available ag
following week. I agreed to that. You then characterized my agreement to your own stated timeline as delay. I cannot simultaneously agree to your schedule and be accused of delaying.

I want to note a distinction for the record. Throughout this litigation, you have repeatedly accused me of mischaracterizing your statements. The difference between your accusations and mine
identify a mischaracterization, I provide the proof. Today I did exactly that, and you disconnected shortly after. You left after 27 minutes without addressing a single substantive agenda item. I c
still in the Teams meeting. I was prepared for the full two hours. I am not going to take positions on case law received twenty-four minutes before conferral.

That is not a failure to prepare. I was prepared on every item for which I had adequate notice.


Respectfully,

Corian Edwards


> On Jun 2, 2026, at 3:32 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer pro
> discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I
> and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in
> piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your avail
> a three hour meet-and-confer conference tomorrow or Thursday.
>
> Best,
> Chad
>
>
> <image493801.png>   **Chad C. Butterfield**
>                      Attorney at Law
>
>                      **Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tom
Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff  needs to reserve a continuance for the following Requests to properly engage in the me
further:

  · **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction
  11.13, *Ram Nehara*)
  · **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
  · **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. o*
  *P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
  · **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
  · **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
  · **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and let
mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. Bellagi
supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's
position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900

Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer
(Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer
conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your
correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing
before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email versio
has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust tha
will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-
employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's
employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited autho
— mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged
regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or
her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant conten
that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co.,
F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by eith
"[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed o
underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which]
expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall
operate to reduce the back pay otherwise allowable.'" *Id*. at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laiman
often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requiremen
that a claimant minimize damages or forfeit his right to compensation." *Id*. at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 198
(voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary
minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from
employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d a
1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim
earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to i
the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id*
(citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that
back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be
deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set
forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings"
within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight.
The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employmen
Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, witho
distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the
plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay
awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consist
with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name]*'s damages. Damages means the amour
money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory a
of the defendant [*name*]. You may award the following:

Back Pay:

1.        Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the plaintiff [*name]* to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name]* has the burden of proving both the existence and the amount back pay by a preponderance of the evidence.

2.        Mitigation of Back Pay Award: The plaintiff [*name]* has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun]*damages and the defendant [*name]* is not required to compensate the plaintiff [*name]* for avoidable damages. Thus, your award of bac pay should be reduced by the amount of damages that the plaintiff [*name]* actually avoided, or could have avoided, if [he] [she] [*other pronoun]* made reasonable efforts. The defendant [*name]* has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.        You must deduct any wages or other earnings that the defendant [*name]* proved that the plaintiff [*name]* received from other employme from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the plainti [*name]* to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.        You must deduct any severance pay [and pension benefits] that the defendant [*name]* proved the plaintiff [*name]* received after the discharge.]

[b.] [c.]        If the defendant [*name]* proves by a preponderance of the evidence either:

(i)        that the plaintiff [*name]* unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name],* or

(ii)        that the plaintiff [*name]* failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name]* could have earned from the time the plaintiff [*name]* could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun]* made reasonable efforts t find such new job] to the [date of trial] [date the plaintiff [*name]* [declined] [accepted] reinstatement.]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparato compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in t lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not releva to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelev to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 21 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimila positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case und Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting tha contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please re to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — c override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serv that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client sess logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entit to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which th clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-referen his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, paymer sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-pa privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

<span style="color:red">No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).</span>

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable fede law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defenda decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

### Request No. 9 (Complaints to Employers)

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional producti

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with an federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

<span style="color:red">Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 L</span>

<image002.png>

### Request No. 13 (Third-Party Complaints)

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint c charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produce by both parties. There is nothing further to produce.

### Request No. 19 (Tax Returns)

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for t reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Co Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendan position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to th needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required t disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directl relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.</span>

<span style="color:red">Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.</span>

### Request No. 20 (Criminal/Civil/Administrative Proceedings)

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or forma withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in th case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.</span>

### Request No. 25 (Significant Financial Loss — FAC)

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been supersede by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (EC No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubl down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity tha wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial los under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same deman under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Co order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quin* 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koc Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any su communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badg revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's R No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will inclu any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintif employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressin the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under R 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that w never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized bas for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organiz entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's ow response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or w terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpo This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-pa non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of the documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

---

**II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES**

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based o Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendan cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plai independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

---

**III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT**

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.)
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));

- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 4 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant t bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productiv discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>                                          Tue, Jun
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@

Mr. Edwards,

I expressly asked you on multiple occasions to allow me to finish speaking. Your representation that you did not speak over me is blatantly inaccurate. I hav Teams invitation for tomorrow from 2:00 p.m. to 5:00 p.m. which you have neither accepted nor proposed any alternatives. I request that you comport yours collaborative manner.

Best,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:47 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Email Edwards v Bellagio

Mr. Butterfield,

Your characterization of today's conference is inaccurate. I did not speak over you. I responded to your statements directly and attempted multiple time the conference to substantive agenda items — including asking "can we please continue", making note we are to continue from Interrogatory 6 (we only did 5 in one hour) and stating "I'm ready to move forward from where we are." You chose to conti scheduling and your opinion of me "not being prepared" to potentially new legal standards and citations you brought up 20 minutes ago that you spent hours on drafting.

During the conference, you mischaracterized my time-change request, stating that I "cut an hour." I corrected you on the spot: my housekeeping email offered to extend to 6:00 p.m. — a net gain, not a reduction. You did not dispute the correction.

Your current email proposes three hours tomorrow or Thursday ending by 5:00 p.m. I offered three hours today — 3:00 p.m. to 6:00 p.m. You declined. agreeable to addressing the interrogatories today given where we were in the agenda and scheduling the remaining items for the next available date. You stated during the conference that if we met today, you would not be available again until the followir agreed to that. You then characterized my agreement to your own stated timeline as delay. I cannot simultaneously agree to your schedule and be accused of delaying.

I want to note a distinction for the record. Throughout this litigation, you have repeatedly accused me of mischaracterizing your statements. The differe your accusations and mine is that when I identify a mischaracterization, I provide the proof. Today I did exactly that, and you disconnected shortly after. You left after 27 minutes without addressing a single substantive agenda item. I did not lea the Teams meeting. I was prepared for the full two hours. I am not going to take positions on case law received twenty-four minutes before conferral.

That is not a failure to prepare. I was prepared on every item for which I had adequate notice.

Respectfully,

Corian Edwards

On Jun 2, 2026, at 3:32 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer pro discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your avail a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

<image493801.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available ton Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the ma further:

- **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
- **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
- **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. o P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
- **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
- **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
- **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs and let mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in <span style="color:red">red</span> for ease of reference. Bellagio supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

---

### Chad C. Butterfield
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email versic has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust tha will not. A PDF version of this response is attached for your convenience.

---

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's

employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited autho — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant conten that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by eith "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed c underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laiman often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requiremen that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 198 (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d a 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to i the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employmen Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, witho distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consist with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name]* [on the plaintiff's ADEA claim], you must determine the plaintiff [*name]*'s damages. Damages means the amoun money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory a of the defendant [*name].* You may award the following:

Back Pay:

1.       Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the plaintiff [*name]* to the [da of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name]* has the burden of proving both the existence and the amount back pay by a preponderance of the evidence.

2.       Mitigation of Back Pay Award: The plaintiff [*name]* has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun]*damages and the defendant [*name]* is not required to compensate the plaintiff [*name]* for avoidable damages. Thus, your award of bac pay should be reduced by the amount of damages that the plaintiff [*name]* actually avoided, or could have avoided, if [he] [she] [*other pronoun]* made reasonable efforts. The defendant [*name]* has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.       You must deduct any wages or other earnings that the defendant [*name]* proved that the plaintiff [*name]* received from other employme from the date the defendant [*name]* [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action]* the planti [*name]* to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.       You must deduct any severance pay [and pension benefits] that the defendant [*name]* proved the plaintiff [*name]* received after the discharge.]

[b.] [c.]            If the defendant [*name]* proves by a preponderance of the evidence either:

(i)        that the plaintiff [*name]* unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name]*, or

(ii)       that the plaintiff [*name]* failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name]* could have earned from the time the plaintiff [*name]* could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun]* made reasonable efforts t find such new job] to the [date of trial] [date the plaintiff [*name]* [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparato compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in t lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not releva to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelev to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 21 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimila positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case und Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting tha contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error. Please ref to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — c override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serv that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client sess logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entit to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which th clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-referen his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, paymen sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-pa privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable fed law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defenda decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional producti

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with a federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 L

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produce by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Co Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or forma withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in th case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been supersede by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (EC No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubl down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity tha wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial los under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same deman under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Co order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quin* 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koc Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and

proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any su communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badg revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

*Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.*

*Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. EEOC v. Ventura Corp., 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); Aghamehdi v. OSRAM Sylvania Inc., 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019).*

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's R No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will includ any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintif employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

*Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. EEOC v. Ventura Corp., 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); Aghamehdi v. OSRAM Sylvania Inc., 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019).*

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressin the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under R 37(a)(5)(B) and 28 U.S.C. § 1927.

*Please provide the basis for your contention that you are a covered entity subject to HIPAA.*

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that w never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized bas for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organiz entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

*Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. EEOC v. Ventura Corp., 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); Aghamehdi v. OSRAM Sylvania Inc., 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.*

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's ow response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or w terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpo This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-pa non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of the documents will be met with a request for sanctions under Rule 37(a)(5)(B).

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

---

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based o Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plai independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.</span>

---

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.)
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 4 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

<span style="color:red">Plaintiff's extraordinary mischaracterizations of fact and law are noted.</span>

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant t bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintif pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

<span style="color:red">Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.</span>

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productiv discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Corian Edwards** <coriandelon@gmail.com>                                                                Tue, Jun
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last messa
reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer pro
discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authorities I
and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in
piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your avail
a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

<image493801.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las
<Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available ton
Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

—    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

Email Edwards v. Bellagio

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the ma further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. o P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and let mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in <span style="color:red">red</span> for ease of reference. Bellagi supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email versic has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I trust tha will not. A PDF version of this response is attached for your convenience.

**I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS**

**Request No. 1 (Earned Income)**

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited autho — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 198 (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to i the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employmer Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, witho distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are consist with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

**11.13 Age Discrimination—Damages—Back Pay—Mitigation**

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amour money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory a of the defendant [*name*]. You may award the following:

Back Pay:

1.       Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [da of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the amount back pay by a preponderance of the evidence.

2.       Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of bac pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.       You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employme from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the planti [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.       You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]       If the defendant [*name*] proves by a preponderance of the evidence either:

(i)       that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)       that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts t find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparato compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the

benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

<span style="color:red">You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in t lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).</span>

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not releva to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelev to mitigation, which applies only after the adverse action.

<span style="color:red">Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.</span>

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 21 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimila positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case und Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting tha contention.

<span style="color:red">Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please ref to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.</span>

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — c override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serv that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client sess logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not enti to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which th clients have no connection.

<span style="color:red">Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.</span>

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-referen his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, paymen sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-pa privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

<span style="color:red">No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).</span>

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable fed law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defenda decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rul 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional producti

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with a federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

<span style="color:red">Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 L</span>

&lt;image002.png&gt;

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produce by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Co Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required t disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at \*15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.</span>

<span style="color:red">Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.</span>

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or forma withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in th case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.</span>

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been supersede by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (EC No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubl down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activity tha wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial los under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same deman under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at \*22-23, in which the Court soundly rejected your relevance objection:

<span style="color:red">The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).</span>

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Co order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Request No. 26.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at \*7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quin* 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at \*3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Koc Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.</span>

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any su

communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the badg revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

<span style="color:red">Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.</span>

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's R No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

### Requests Nos. 39 and 40 (Cirque du Soleil)

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will inclu any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintif employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

### Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed above repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressin the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct under R 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

### Request No. 43 (Core Healing Body Works Income)

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that w never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognized bas for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organiz entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.</span>

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's ov response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or w terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery purpo This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-pa non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of the documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of allege economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based c Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendar cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plai independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.)
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 4 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant t bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including Plaintiff pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productiv discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identified ir Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> —  **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>      Tue, Jur
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose alternative dates/times. I have made it cl
willing to set aside a substantial amount of time.

RE: Defense Counsel's early Meet and Confer Exit




Mr. Edwards,

You initiated the scheduling dispute. Last night, you requested to move the start time to 3:00 p.m. Today, you advised that you were unprepared to address the legal authorities I provided in response to your rebuttal. You engaged in snark and repeatedly interrupted me and talked over me. You also refused to cooperate on scheduling the meet-and-confer conference under any terms inconsistent with your unilateral demands. I have offered three hour blocks tomorrow and Thursday, which you have declined without any reason.

I am now making a firm proposal to conduct a three-hour meet and confer conference tomorrow, June 3, 2026, from 2:00 p.m. to 5:00 p.m. and will send you a calendar invitation. If you are not available during that time, please provide alternate proposed dates and times.

Best,
Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas
<Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a request as I was responding to your last messa
reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,

Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-confer process. As discussed, I am willing to a single block of time to address our respective issues once you have educated yourself on the legal authorities I provided and are prepared to move forward. I have offered three hours or Thursday, provided we end by 5:00 p.m. I am not interested in doing this in a piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or producti time. Please advise as to your availability for a three hour meet-and-confer conference tomorrow or Thursday.

Best,

Chad

—　**Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available tomorrow or Thursday at your conver provided we conclude by 5:00 p.m.

Best,

Chad

—　**Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Gmail - Edwards v. Bellagio

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in the matter further:

- **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)

- **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)

- **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. Univ. of P.R.*, *Cherkaoui*, *Doe v. Oberwe Dairy*, *Koch v. Cox*)

- **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSRAM*)

- **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)

- **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defendant's previous claims not to compile briefs and letters mere moments before deadlin and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,

Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in <span style="color:red">red</span> for ease of reference. Bellagio's supplemental analysis below i not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff's position.

Sincerely,

Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confer conference scheduled for June 2, 202_ 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in writing before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands ente_ the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email version has been prepared specifically that these interactions are preserved in a format the Court may review should it become necessary. I trust that it will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income or self-employment records. Core Heali_ Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Moto_ Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited authority — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting his or her own business." This authorit_ draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant contends that self-employment income should offset Plaintiff's damages, t_ is Defendant's affirmative defense burden under EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1).

In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemployed or underemployed claimant, like a_ other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which] expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g_ The Court further noted that "[c]laimants often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA5 1980) (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned from employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F.2d at 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of interim earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitled to in the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involved." *Id.* (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered that back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings would be deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rationale set forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonli_ earnings were "interim earnings" within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moonlight. _ city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation employment." Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, without distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that the plaintiff actually avoided, or could ha_ avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back pay awards in Age Discrimination cases, in which (unlike Title VII cases) back p_ determinations are an issue for the jury, the principles are consistent with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the amount of money that will reasonably a_ fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discriminatory act of the defendant [*name*]. You may award the following:

Back Pay:

1.    Award: Back pay includes any [back wages] [lost pay] [employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed _ hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The pla_ [*name*] has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence.

2.    Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award of back pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pronoun*] had made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance _ the evidence that a reduction should be made and the amount by which the award should reduced.

Therefore:

a.    You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other employment from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.    You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after the discharge.]

[b.] [c.]    If the defendant [*name*] proves by a preponderance of the evidence either:

(i)    that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)    that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the plaintiff [*name*] could have obtained such job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable efforts to find such new job] to the [date of trial] [date the plaintiff [*name*] [declin_ [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comparator compensation data responsive t_ Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding the benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of post-termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-called comparators, none of whom you ha_ identified. Unlike you, none of the so-called comparators have placed their financial condition at issue in this lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. D_ LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon entry of the protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not relevant to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is irrelevant to mitigation, which applies only after the adverse action.

<span style="color:red">Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.</span>

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates" this duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Plaintiff articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dissimilar positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this case under Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supporting that contention.

<span style="color:red">Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Please refer to Bellagio's original response, Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.</span>

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Order — can override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C.F.R. § 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these records serve that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual client session logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is not entitled to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to which those clients have no connection.

<span style="color:red">Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subject to HIPAA, as I have found none.</span>

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-reference his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, payment sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and non-party privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party client identities without serving any purpose that aggregate income documentation does not already satisfy.

<span style="color:red">No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).</span>

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicable federal law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should Defendant decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former employers — Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff has none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional production.

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed with any federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, state of mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

<span style="color:red">Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Store 1 LLC:</span>

&lt;image002.png&gt;

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any complaint or charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other than Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been produced by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though not for the reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted that: (1) the Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) the Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court drew exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidence. Core Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not relevant.

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defendant's position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradicts Defendant's own position. Defendant identified no other basis for compelling production of complete joint tax returns, 1099 income, or self-employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportional to the needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will present the complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be required to disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.</span>

<span style="color:red">Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.</span>

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justification for Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic matters — bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Plaintiff demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or formally withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense in this case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

<span style="color:red">Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-J demonstrates, on its face, the relevance of this request.</span>

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been superseded by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleading (ECF No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence doubles down on a request directed at a pleading Defendant knows is no longer operative. This precisely the kind of unnecessary litigation activity that wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financial losses under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same demand under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the continued pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including as evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Please also see *Co* 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection:

> The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records, and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amended Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) and Court order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demand that Defendant formally withdraw Request No. 26.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment. Furthermore, disco extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotional condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City of Quincy*, 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy* 456 F.3d 704, 718 (7th Cir. 2006); *Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medical condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years of Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of any such communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 22, 2025) surrounding the badge revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PMI communications for a one-week peri These positions are mutually exclusive. Either PMI communications are relevant to this case or they are not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on the same subject. If they are not relevant, Defendant should withdraw Request No. 38.

Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstanding.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventu Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at * (D.N.H. Feb. 25, 2019).

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identities of all PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaintiff's RFP No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the period of February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to provide.

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. 1 and 7, with no independent analysis why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear any relevance to any claim or defense. Plaintiff will produce post-termina W-2 income records upon entry of the protective order, which will include any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating Plaintiff's employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withdraw them.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventu Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at * (D.N.H. Feb. 25, 2019).

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks individual client appointment records from a based independent contractor platform — the same HIPAA-protected health information addressed above, repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without addressing the federal law that prohibits th production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plainti violate federal law will be treated as sanctionable conduct under Rule 37(a)(5)(B) and 28 U.S.C. § 1927.

Please provide the basis for your contention that you are a covered entity subject to HIPAA.

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plaintiff's employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. It is a pre-existing independent business, and its income documentatio constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never asked to provide such support — Defendan correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something that was never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — production of which is mandatory under Rul 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a protective order. Defendant cannot simultaneously argue that its own insura records are proprietary business information exempt from production while contending that Plaintiff's independently organized business income records are not. Either proprietar business information is a recognized basis for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parti

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authority and sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the original deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately organized entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court as evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventu Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at * (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

**Request No. 44 (Anytime Fitness Arrangements)**

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing Body Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendant's own response references "sources of income" and mitigation, yet t Request itself asks for "agreements or arrangements," not income records. Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or defense in this employment discriminatio action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises, or what terms govern that relationship does not calculate mitigation, or not establish damages, and does not advance any legitimate discovery purpose. This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with third-party non-parties are not discovera in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production of these documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of alleged economic loss. *EEOC v. Ventu Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OSRAM Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at * (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

## II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defendant's employees at PLF000104-233 a PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production index. Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily based on Plaintiff's personal knowledge recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defendant has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Defendant cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand that Plaintiff independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defendant's Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subsequent amendment.

## III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addressed in Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separate requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E., Inc.);
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the same subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on proprietary grounds (Request No. 43 vs. Ru 26(a)(1)(A)(iv));
- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 42, 43, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defendant to bury Plaintiff in facially deficien discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaintiff has documented each deficiency identified above and will present th record to the Court in connection with any Rule 37 proceedings. Plaintiff respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating future motions — including Plaintiff's pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a productive discussion and hopes Defenda will come prepared to address its own outstanding discovery obligations, including the deficiencies identified in Plaintiff's April 27, 2026 correspondence, which remain unresolve

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

> Mr. Edwards,
>
> In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like to address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
>
>    Attorney at Law
>
>    **Jackson Lewis P.C.**
>
>    300 S. Fourth Street
>    Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--

Relax,

Corian

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@

I will have to cancel a patient in order to make your time. We will have to schedule for Thursday. Give me your Thursday availability.
This is not agreement to your behavior. I will be reaching out to the bench.

Respectfully,
Corian

On Jun 2, 2026, at 4:06 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

As I stated multiple times on our call and again in my email at 3:42 p.m. this afternoon, if tomorrow at 2:00 p.m. does not work for you please propose dates/times. I have made it clear that I am willing to set aside a substantial amount of time.

<image001.png>

<image954451.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 3:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer (Las <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

By comport, are you suggesting I submit to your authority? You didn't ask me if I'm available at that time, didn't list alternative times, just sent a reque responding to your last message. We have to reel this in Chad, it's not leading to this work getting done.

I would like to continue today, please.

Respectfully,
Corian

On Jun 2, 2026, at 3:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your insistence on speaking over me and repeatedly interrupting me does not demonstrate a good faith attempt to engage in the meet-and-conf discussed, I am willing to set aside a single block of time to address our respective issues once you have educated yourself on the legal authori and are prepared to move forward. I have offered three hours tomorrow or Thursday, provided we end by 5:00 p.m. I am not interested in doing piecemeal fashion nor do I think a four to six hour meet-and-confer conference is an efficient or productive use of time. Please advise as to your a three hour meet-and-confer conference tomorrow or Thursday.

Best,
Chad

—    **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Sent:** Tuesday, June 2, 2026 3:03 PM
**To:** Corian Edwards <coriandelon@gmail.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer <Jennifer.Levin@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio

Mr. Edwards,

I am not opposed to a continuance, but I would prefer to continue the entire conference rather than conduct it in piecemeal fashion. I am available Thursday at your convenience, provided we conclude by 5:00 p.m.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 2, 2026 2:59 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, Jennifer <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Thank you for the response,

Due to the timing of Defendant's response (2:36pm), Plaintiff needs to reserve a continuance for the following Requests to properly engage in t further:

· **Request No. 1** — Defendant's supplemental analysis on interim earnings (new case law: *Merriweather*, *Thornton*, *Bing*, Jury Instruction 11.13, *Ram Nehara*)
· **Request No. 19** — Tax returns (new case law: *Cora v. Amgen Mfg.*)
· **Requests Nos. 25 & 26** — Superseded pleading argument and emotional distress discovery (new case law: *Cora v. Amgen*, *Gerald v. U P.R.*, *Cherkaoui*, *Doe v. Oberweis Dairy*, *Koch v. Cox*)
· **Requests Nos. 39, 40, 43, 44** — New mitigation case law applied across multiple requests (*EEOC v. Ventura Corp.*, *Aghamehdi v. OSF*
· **Request No. 9** — Defendant's characterization of Adesso employment (new factual assertions requiring review)
· **Request No. 3** — Defendant's supplemental analysis incorporating Request No. 1 arguments

Everything else Plaintiff is acceptable to continuing in the next couple minutes, yet contrary to Defedant's previous claims not to compile briefs a mere moments before deadline/ meet and confer, that's exactly what happened here. I assume the Defendant has no argument with his?

Respectfully,
Corian

On Jun 2, 2026, at 2:36 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Dear Mr. Edwards,

To facilitate a productive meet-and-confer conference, please see Bellagio's responses to your email below in red for ease of reference. B supplemental analysis below is not exhaustive and any omission is not to be construed as a concession that Bellagio agrees with Plaintiff' position.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 1, 2026 7:14 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>; Levin, J (Las Vegas) <Jennifer.Levin@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio

Mr. Butterfield,

I am in receipt of your correspondence dated June 1, 2026, identifying issues Defendant intends to raise at our continued meet-and-confe conference scheduled for June 2, 2026 at 2:00 p.m. This email memorializes Plaintiff's current position on each issue raised in your correspondence. Given documented issues with contemporaneous notes in prior conferrals, I am placing my positions on the record in wri before we meet so that each issue is clearly outlined and there is no ambiguity regarding where Plaintiff stands entering the conference.

I want to be clear: this written memorialization should not be necessary. However, the circumstances of this litigation require it. This email has been prepared specifically so that these interactions are preserved in a format the Court may review should it become necessary. I tru will not. A PDF version of this response is attached for your convenience.

---

## I. RESPONSES TO DEFENDANT'S SECTION I — PLAINTIFF'S OBJECTIONS

### Request No. 1 (Earned Income)

Plaintiff will produce W-2 records for the post-termination period upon entry of the protective order. Plaintiff will not produce 1099 income c employment records. Core Healing Body Works is a pre-existing independent business that operated before, during, and after Plaintiff's employment with Bellagio. It is not mitigation employment. Under Ford Motor Co. v. EEOC, 458 U.S. 219 (1982) — Defendant's own cited — mitigation requires pursuit of comparable employment through reasonable diligence. A pre-existing business that continued unchanged regardless of Plaintiff's employment with Defendant is not a mitigation effort.

Defendant's own letter cites McHugh v. Papillon Airways for the proposition that a plaintiff may "satisfactorily mitigate damages by starting her own business." This authority draws a distinction between self-employment and mitigation — it does not collapse them. If Defendant c that self-employment income should offset Plaintiff's damages, that is Defendant's affirmative defense burden under EEOC v. Farmer Bros F.3d 891, 906 (9th Cir. 1994). Defendant may not compel Plaintiff to build Defendant's affirmative defense.

Plaintiff continues to misapprehend the issues of back pay and mitigation. Under 42 U.S.C. § 2000e-5, a backpay award may be reduced "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g

In *Ford Motor Cov. V. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982), the Supreme Court of the United States expressly stated "An unemplc underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g) … [which expressly states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against sha operate to reduce the back pay otherwise allowable.'" *Id.* at 230-31, n.14 (citing 42 U.S.C. § 2000e-5(g)). The Court further noted that "[c]la often take other lesser or dissimilar work during the pendency of their claims, even though doing so is not mandated by the statutory requi that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 (citing *Merriweather* v. *Hercules, Inc.*, 631 F.2d 1161 (CA (voluntary minimization of damages in dissimilar work); *Thornton* v. *East Texas Motor Freight*, 497 F.2d 416, 422 (CA6 1974) (voluntary minimization of damages by moonlighting).

Similar to your contention, the employee in *Merriweather* argued on appeal "that the district court had no right to offset any income earned employment subsequent to the discharge which was not similar in nature to [the employee's] work at [the employer]." *Merriweather*, 631 F 1168. The Fifth Circuit rejected this contention, citing to § 2000e-5(g) and noting "[t]here is no distinction made between various types of in earnings. This court will not create such a distinction. Under the statute, the amount which an employee would otherwise have been entitle the absence of the discrimination will be reduced by any earnings acquired during the interim period regardless of the type of work involve (citing *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

In *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974), which the *Ford* Court cited with approval, the district court ordered back pay was to be reduced by the claimants' earnings during the relevant time period, without specifying whether moonlight earnings wou deducted. On appeal, the Sixth Circuit rejected the EEOC's contention that moonlight earnings should not be deducted, under the rational forth in *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the Fifth Circuit held moonlight earnings were "interim earnin within the meaning of § 2000e-5(g), explaining that the road driver who works from sixty to one hundred hours per week is unable to moor The city driver who works fewer hours on his regular job is able to moonlight and earn more than the road driver.

The rationale set forth in *Thornton* and *Bing* refutes your unsupported contention that "Core Healing Body Works … is not mitigation empl Moreover, as clearly set forth in *Ford*, *Merriweather*, and *Thornton*, any back pay award will be subject to an offset for all interim earnings, distinction.

Ninth Circuit Model Civil Jury Instruction 11.13 unambiguously requires back pay awards to be "reduced by the amount of damages that th plaintiff actually avoided, or could have avoided, if he had made reasonable efforts." Note that although Instruction 11.13 applies to back F awards in Age Discrimination cases, in which (unlike Title VII cases) back pay determinations are an issue for the jury, the principles are c with the back pay and mitigation requirements in Title VII cases. The text of Instruction 11.13 is as follows:

### 11.13 Age Discrimination—Damages—Back Pay—Mitigation

If you find for the plaintiff [*name*] [on the plaintiff's ADEA claim], you must determine the plaintiff [*name*]'s damages. Damages means the a money that will reasonably and fairly compensate the plaintiff for any loss of [pay] [wages] [benefits] you find was caused by the discrimina of the defendant [*name*]. You may award the following:

Back Pay:

1.          Award: Back pay includes any [back wages] [lost pay] [and employee benefits] the plaintiff would have received from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the plaintiff [*name*] to [ of trial] [date the plaintiff [declined] [accepted] reinstatement]]. The plaintiff [*name*] has the burden of proving both the existence and the am back pay by a preponderance of the evidence.

2.          Mitigation of Back Pay Award: The plaintiff [*name*] has a duty to undertake reasonable measures to minimize [his] [her] [*other pronoun*]damages and the defendant [*name*] is not required to compensate the plaintiff [*name*] for avoidable damages. Thus, your award o pay should be reduced by the amount of damages that the plaintiff [*name*] actually avoided, or could have avoided, if [he] [she] [*other pror* made reasonable efforts. The defendant [*name*] has the burden of proving by a preponderance of the evidence that a reduction should be and the amount by which the award should reduced.

Therefore:

a.          You must deduct any wages or other earnings that the defendant [*name*] proved that the plaintiff [*name*] received from other emp from the date the defendant [*name*] [discharged] [failed to hire] [failed to promote] [demoted] [*state other adverse employment action*] the [ [*name*] to the [date of trial] [date the plaintiff [declined] [accepted] reinstatement].

[b.          You must deduct any severance pay [and pension benefits] that the defendant [*name*] proved the plaintiff [*name*] received after th discharge.]

[b.] [c.]          If the defendant [*name*] proves by a preponderance of the evidence either:

(i)          that the plaintiff [*name*] unjustifiably failed to take a new job of like kind, status, and pay which was available to plaintiff [*name*], or

(ii)          that the plaintiff [*name*] failed to make reasonable efforts to find such new

job;

you must subtract from the back pay award the amount of money you find that the plaintiff [*name*] could have earned from the time the pla [*name*] could have obtained such new job [or should have obtained from such new job, had [he] [she] [*other pronoun*] made reasonable ef find such new job] to the [date of trial] [date the plaintiff [*name*] [declined] [accepted] reinstatement].]

Please also see Ram Nehara v. California, No. 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 63994, at *6-8 (E.D. Cal. May 3, 2013).

Additionally, Defendant's demand for comprehensive income documentation is inconsistent with Defendant's own refusal to produce comp compensation data responsive to Plaintiff's RFP No. 5. Defendant cannot demand granular detail about Plaintiff's income while withholding benchmark against which mitigation would be measured. Without comparator data, neither party can meaningfully assess what level of po termination income constitutes adequate mitigation.

You have not asserted a wage discrimination claim. Damages for lost wages are based on your actual earnings, not the earnings of so-cal comparators, none of whom you have identified. Unlike you, none of the so-called comparators have placed their financial condition at issu lawsuit. *See Cora v. Amgen Mfg.*, No. 20-1626 (GMM), 2026 U.S. Dist. LEXIS 66363 (D.P.R. Mar. 26, 2026).

**Request No. 2 (Income)**

Plaintiff accepts Defendant's concession to exclude gifts. Plaintiff will produce W-2 income records for the post-termination period upon en protective order. Investments, pre-existing income streams, and income sources not connected to Plaintiff's Bellagio employment are not r to mitigation and will not be produced. The temporal scope is limited to the post-termination period — Plaintiff's income before Bellagio is i to mitigation, which applies only after the adverse action.

Bellagio will also agree that Plaintiff may omit investment income from his response to RFP No. 2.

**Request No. 3 (Mitigation Efforts)**

Defendant's response fails to identify any specific legal error in Plaintiff's objection. Plaintiff correctly cited Ford Motor Co. v. EEOC, 458 U (1982), establishing that mitigation requires pursuit of substantially comparable employment. Defendant's assertion that Plaintiff "misstates duty is unsupported — Defendant identifies no contrary authority and does not explain what the duty supposedly requires beyond what Pla articulated.

Plaintiff will produce documentation of applications to comparable massage therapist positions at casino spa properties. Applications to dis positions in unrelated fields are not probative of mitigation under the controlling standard and are disproportionate to the needs of this cas Rule 26(b)(1). If Defendant contends the mitigation standard requires more, Defendant should identify the specific legal authority supportir contention.

Bellagio expressly identified "the reasons set forth in Bellagio's response to Plaintiff's objections to Request No. 1" as the legal error.  Plea to Bellagio's original response to Plaintiff's objection to RFP No. 1 and its supplemental analysis herein.

**Requests Nos. 7 and 8 (Massage Session Records and Client Payment Records)**

Plaintiff objects to Requests Nos. 7 and 8 in their entirety and will not be supplementing these responses.

Request No. 7 seeks individual client session records that constitute protected health information under HIPAA, 42 U.S.C. § 1320d et seq. Compliance would require Plaintiff to violate federal law. No protective order — including Defendant's proposed Stipulated Protective Orde override Plaintiff's obligations under HIPAA absent individual client authorization or a court order meeting the specific requirements of 45 C 164.512(e), neither of which exists here. Beyond the legal prohibition, Defendant has failed to articulate any specific purpose these record that income documentation — which Plaintiff has offered to produce — does not already satisfy. Defendant's assertion that individual clien logs are relevant to "mitigation efforts and Plaintiff's damages" is conclusory. Mitigation is calculable from income records. Defendant is no to the names, dates, treatment details, and personal information of Plaintiff's non-party clients in an employment discrimination case to wh clients have no connection.

Please identify the legal authorities upon which you rely in support of your contention that massage therapists are "covered entities" subje HIPAA, as I have found none.

Emily Edwards v. Bellagio

Request No. 8 is duplicative of Requests Nos. 1, 2, and 7 — a point Defendant effectively concedes by agreeing that Plaintiff may cross-re his supplemental response to Request No. 1. To the extent Request No. 8 seeks granular payment records identifying individual clients, pa sources, and transaction details for massage services, Plaintiff reasserts his objections to Request No. 7 in full, including the HIPAA and r privacy objections stated therein. Individual client payment records expose Plaintiff's proprietary business relationships and non-party clier identities without serving any purpose that aggregate income documentation does not already satisfy.

No such aggregate income documentation has been produced, despite your affirmative obligation under FRCP 26(a)(1)(A)(iii).

Plaintiff puts Defendant and its counsel on formal notice under Rule 26(g)(1)(B) that Requests Nos. 7 and 8 are inconsistent with applicab law and disproportionate to the needs of this case. Plaintiff demands that Defendant formally withdraw Requests Nos. 7 and 8. Should De decline to withdraw and instead pursue a motion to compel production of HIPAA-protected client records, Plaintiff will seek sanctions unde 37(a)(5)(B) and 28 U.S.C. § 1927.

**Request No. 9 (Complaints to Employers)**

Defendant's authorities are inapplicable. Defendant cites cases compelling production of discrimination charges filed against former emplc Plaintiff has filed none. Defendant cites cases compelling production of job performance documents at subsequent employers — Plaintiff h none, and Plaintiff's performance records at Bellagio are already in Defendant's possession. The cited authorities support no additional prc

Plaintiff has no prior discrimination complaints, no prior harassment complaints, no prior retaliation complaints, and no prior charges filed v federal, state, or local agency against any employer other than Defendant. There is nothing to produce. Defendant's invocation of "motive, mind, credibility, and litigiousness" presupposes the existence of prior claims that do not exist. No supplementation is warranted.

Your representation does not appear to be accurate, based on the following representative example from your employment at Adesso Stor

<image002.png>

**Request No. 13 (Third-Party Complaints)**

Request No. 13 is duplicative of Request No. 9. Plaintiff incorporates his response to Request No. 9 in full. Plaintiff has not filed any comp charge with any local, state, or federal governmental agency regarding discrimination, harassment, or retaliation against any party other th Defendant. The sole government agency filing is EEOC Charge No. 487-2024-02233, which is already part of the record and has been prc by both parties. There is nothing further to produce.

**Request No. 19 (Tax Returns)**

Plaintiff has reviewed Azarov v. Sam's E., Inc., Doc. 108 (N.D. Ind. Nov. 1, 2022) in full and agrees this authority is instructive — though nc reasons Defendant suggests. Defendant cited Azarov for the proposition that all income sources must be produced. Defendant omitted tha Azarov court's order was based on the plaintiff's waiver of objections and prior agreement to produce, neither of which exists here; and (2) Azarov court expressly held that the plaintiff's pre-existing consulting income prior to employment was "not relevant." The Azarov court dre exactly the line Plaintiff draws here — pre-existing independent business income falls outside the scope of discoverable mitigation evidenc Healing Body Works operated before, during, and after Plaintiff's employment with Bellagio. Under Azarov's own reasoning, it is not releva

Defendant's selective presentation of this authority — citing the favorable sentence while omitting the holding that directly contradicts Defe position — is noted and has been documented.

Plaintiff demands that Defendant formally withdraw Request No. 19. The sole authority Defendant cited in support — Azarov — contradict: Defendant's own position. Defendant has identified no other basis for compelling production of complete joint tax returns, 1099 income, or employment records. A request that lacks legal support and seeks the private financial information of a non-party spouse is not proportion: needs of this case under Rule 26(b)(1). Should Defendant decline to withdraw and instead pursue a motion to compel, Plaintiff will presen complete Azarov ruling to the Court and seek fees under Rule 37(a)(5)(B).

Federal courts have recognized that, in civil actions alleging discrimination, a party who places his financial condition at issue may be requ disclose financial information relevant to claimed damages, including tax returns. Financial information, including Plaintiff's tax returns, is c relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts. *See Cora v. Amgen Mfg.*, No. 20-162( (GMM), 2026 U.S. Dist. LEXIS 66363 at *15-16 (D.P.R. Mar. 26, 2026) and cases cited therein.

Bellagio agrees that Plaintiff may redact information from his tax returns that does not relate to his income or the sources of his income.

**Request No. 20 (Criminal/Civil/Administrative Proceedings)**

Defendant's response to Request No. 20 consists entirely of a cross-reference to its response to Request No. 9. Request No. 9 concerns complaints regarding discrimination, harassment, and retaliation. Request No. 20 seeks all documents regarding any criminal, civil, or administrative proceeding of any kind. These are categorically different requests, and Defendant's failure to provide an independent justific Request No. 20 confirms the absence of one.

Defendant has not articulated any specific relevance that Plaintiff's involvement in unrelated legal proceedings — including minor traffic ma bears on any claim or defense in this employment discrimination action. A request this broad requires a purpose, not a cross-reference. Pl demands that Defendant either articulate a standalone justification for Request No. 20 that would survive scrutiny under Rule 26(b)(1), or i withdraw the Request. Absent withdrawal or a substantive response identifying the specific relevance of this Request to a claim or defense case, Plaintiff will treat any motion to compel as frivolous and seek fees under Rule 37(a)(5)(B).

Defendant declines to withdraw this request despite Plaintiff's meritless threats. Your petition for judicial review in Case No. A-25-919706-. demonstrates, on its face, the relevance of this request.

**Request No. 25 (Significant Financial Loss — FAC)**

Request No. 25 seeks documents supporting paragraph 12 of the First Amended Complaint. The First Amended Complaint has been supe by the Second Amended Complaint (ECF No. 45), as Defendant is well aware — Defendant stipulated to the SAC as the operative pleadir No. 46), and the Court entered the order approving that stipulation (ECF No. 47). Despite this, Defendant's June 1, 2026 correspondence down on a request directed at a pleading Defendant knows is no longer operative. This is precisely the kind of unnecessary litigation activi wastes both parties' time and judicial resources.

Plaintiff demands that Defendant formally withdraw Request No. 25. To the extent Defendant seeks documents regarding Plaintiff's financi under the operative pleading, those documents are addressed in Plaintiff's responses to Requests Nos. 1 and 3. Repackaging the same d under a superseded pleading reference does not create an independent discovery obligation. Plaintiff puts counsel on notice that the cont pursuit of facially deficient requests will be documented and presented to the Court in connection with any Rule 37 proceedings, including evidence of a pattern of discovery conduct designed to burden a pro se litigant rather than advance legitimate discovery objectives.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subse amendment. Please also see *Cora*, 2026 U.S. Dist. LEXIS 66363, at *22-23, in which the Court soundly rejected your relevance objection

<span style="color:red">The $1,500,000.00 damages demand further underscores the importance of this discovery. The requested documents are essential to evaluating the factual and evidentiary basis for Plaintiff's damages claim. The proportionality factors likewise support production. The amount and legitimacy of the damages claimed are central to this litigation. Plaintiff has primary access to the relevant supporting documentation. The burden of production is minimal considering modern access to records and the likely benefit of the requested discovery outweighs any burden. *See* Fed. R. Civ. P. 26(b)(1).</span>

**Request No. 26 (Emotional Distress — FAC)**

Request No. 26 suffers from the identical deficiency as Request No. 25 — it seeks documents supporting paragraph 12 of the First Amend Complaint, which has been superseded by the Second Amended Complaint (ECF No. 45) per Defendant's own stipulation (ECF No. 46) a order (ECF No. 47). Plaintiff incorporates his response to Request No. 25 in full, including the demand for formal withdrawal and the notice regarding Defendant's pattern of pursuing facially deficient discovery requests. Plaintiff demands that Defendant formally withdraw Reques 26.

<span style="color:red">At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subse amendment. Furthermore, discovery extends to a plaintiff's medical history where the plaintiff affirmatively places his physical or emotiona condition in controversy. *See, e.g.*, *Gerald v. Univ. of P.R.*, 2011 U.S. Dist. LEXIS 167980, at *7 (D.P.R. July 28, 2011); *Cherkaoui v. City o* 2015 U.S. Dist. LEXIS 96234, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) *Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007). By seeking damages for emotional distress Plaintiff has placed his medi condition squarely at issue. Plaintiff's baseless accusation that this is a facially deficient request is without merit.</span>

**Request No. 38 (PMI Communications)**

Defendant's position on Request No. 38 is irreconcilable with Defendant's own discovery conduct. Defendant contends that over two years Plaintiff's communications with any employee or agent of PMI — an undefined and unlimited universe of individuals — is "relevant and proportionate." Yet when Plaintiff requested Defendant's communications with PMI in RFP No. 4, Defendant claimed to be "not aware" of a communications and has produced nothing — despite Plaintiff narrowing the request to a single week (June 15-22, 2025) surrounding the revocation at an MGM-affiliated property.

Defendant cannot maintain that two years of Plaintiff's PMI communications are proportionate while simultaneously withholding its own PM communications for a one-week period. These positions are mutually exclusive. Either PMI communications are relevant to this case or th not. If they are relevant, Defendant must supplement its response to Plaintiff's RFP No. 4 before demanding Plaintiff's communications on same subject. If they are not relevant, Defendant should withdraw Request No. 38.

<span style="color:red">Please re-read Bellagio's response to Plaintiff's RFP No. 4. Bellagio is aware of no such communications, your speculation notwithstandin</span>

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OS Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

Additionally, this Request seeks communications with "any employee or agent" of PMI without limitation. Plaintiff does not know the identit PMI employees and agents. Communications with PMI personnel on matters unrelated to this litigation are not discoverable.

Plaintiff demands that Defendant formally withdraw Request No. 38 or, in the alternative, simultaneously supplement its response to Plaint No. 4 with all communications between Defendant, its agents, subsidiaries, and affiliated properties and PMI regarding Plaintiff for the per February 20, 2024 to present — the identical scope Defendant demands of Plaintiff. Defendant cannot demand discovery it refuses to pro

**Requests Nos. 39 and 40 (Cirque du Soleil)**

Defendant's response is a conclusory assertion that Plaintiff's objections are "unfounded" followed by a cross-reference to Requests Nos. with no independent analysis of why Cirque du Soleil records from 2022 — two years before Plaintiff's employment with Bellagio — bear a relevance to any claim or defense. Plaintiff will produce post-termination W-2 income records upon entry of the protective order, which will any W-2 earnings from Cirque du Soleil during the relevant period. Defendant has identified no purpose served by documents predating P employment. Plaintiff demands that Defendant either articulate a specific, non-duplicative justification for these Requests or formally withd them.

<span style="color:red">Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at *4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OS Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at *3-4 (D.N.H. Feb. 25, 2019).</span>

**Requests Nos. 41 and 42 (Soothe / Mobile Platform Records)**

Plaintiff incorporates his objections and the HIPAA notice stated in response to Requests Nos. 7 and 8 in full. Request No. 41 seeks indivi client appointment records from a gig-based independent contractor platform — the same HIPAA-protected health information addressed repackaged under a different platform name. Request No. 42 is duplicative of Request No. 41.

Defendant has now sought individual client session records through four separate requests (Nos. 7, 8, 41, and 42), each time without add the federal law that prohibits their production. Repetition does not cure the deficiency. Plaintiff demands that Defendant formally withdraw Requests Nos. 41 and 42. Continued pursuit of requests requiring Plaintiff to violate federal law will be treated as sanctionable conduct un 37(a)(5)(B) and 28 U.S.C. § 1927.

<span style="color:red">Please provide the basis for your contention that you are a covered entity subject to HIPAA.</span>

**Request No. 43 (Core Healing Body Works Income)**

Core Healing Body Works is a separately organized business entity operating under its own EIN. It operated before, during, and after Plain employment with Bellagio on a schedule built around Plaintiff's fixed Bellagio shifts. It is not replacement employment. It is not mitigation. I pre-existing independent business, and its income documentation constitutes proprietary business information of that entity.

Defendant contends that Plaintiff "failed to identify any support" for the position that this information is proprietary. Plaintiff was never aske provide such support — Defendant's correspondence is the first time this contention has been raised. Plaintiff cannot fail to do something never requested.

Defendant's position is also irreconcilable with its own discovery conduct. Defendant has withheld its insurance policy information — produ which is mandatory under Rule 26(a)(1)(A)(iv) — on the express basis that it constitutes proprietary business information requiring a prote order. Defendant cannot simultaneously argue that its own insurance records are proprietary business information exempt from production contending that Plaintiff's independently organized business income records are not. Either proprietary business information is a recognize for withholding pending appropriate protections, or it is not. Defendant must choose one position and apply it consistently to both parties.

Defendant's response cross-references Requests Nos. 1 and 7 — the same responses that relied on the mischaracterized Azarov authori sought HIPAA-protected records without a compliant framework. Building one deficient response on top of others does not cure the origina deficiency.

Plaintiff demands that Defendant formally withdraw Request No. 43. Continued pursuit of proprietary business records from a separately entity — while simultaneously withholding Defendant's own business information on proprietary grounds — will be presented to the Court evidence of Defendant's inconsistent and inequitable discovery practices.

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OS Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

### Request No. 44 (Anytime Fitness Arrangements)

Request No. 44 does not seek income documentation. It seeks the terms, contracts, and business arrangements between Core Healing B Works and Anytime Fitness — proprietary commercial agreements of a separately organized entity operating under its own EIN. Defendan response references "sources of income" and mitigation, yet the Request itself asks for "agreements or arrangements," not income record Defendant does not appear to understand the scope of its own Request.

The rental terms, business partnerships, and contractual arrangements of Core Healing Body Works bear no relevance to any claim or de this employment discrimination action. Knowing what Plaintiff pays in rent to Anytime Fitness, what services he provides on their premises terms govern that relationship does not calculate mitigation, does not establish damages, and does not advance any legitimate discovery This is an intrusion into the operations of a separate business entity.

Plaintiff demands that Defendant formally withdraw Request No. 44. The private business contracts of a separately organized entity with tl non-parties are not discoverable in an employment discrimination case between Plaintiff and Defendant. Any motion to compel production documents will be met with a request for sanctions under Rule 37(a)(5)(B).

Information regarding Plaintiff's efforts to obtain alternative employment is directly relevant to mitigation of damages and the calculation of economic loss. *EEOC v. Ventura Corp.*, 2013 U.S. Dist. LEXIS 19662, 2013 WL 550550, at \*4-7 (D.P.R. Feb. 12, 2013); *Aghamehdi v. OS Sylvania Inc.*, 2019 U.S. Dist. LEXIS 29157, 2019 WL 919487, at \*3-4 (D.N.H. Feb. 25, 2019). Please also see Bellagio's original and supplemental analysis regarding RFP No. 1 above.

---

### II. RESPONSES TO DEFENDANT'S SECTION II — PRODUCTION INDEX DISCREPANCIES

Request No. 14 — The responsive documents were produced within Plaintiff's production (text messages and communications with Defen employees at PLF000104-233 and PLF000234-247) but were inadvertently not cross-referenced to Request No. 14 in the production inde Plaintiff will correct the index to reflect the proper cross-references.

Request No. 22 — Plaintiff's damages computation, including historical service volume and daily client frequency data, was necessarily ba Plaintiff's personal knowledge and recollection because the most accurate source of this information — the Zenoti booking system used by Bellagio to track therapist appointments, service volume, and client frequency — is in Defendant's exclusive possession and control. Defe has not produced Zenoti data in response to any of Plaintiff's discovery requests despite its direct relevance to damages computation. Def cannot simultaneously withhold the booking system records that would precisely document Plaintiff's service volume and then demand tha independently produce documentation of that same information. Plaintiff will supplement his damages computation upon receipt of Defenc Zenoti data. Until Defendant produces the records within its own control, Plaintiff's computation based on personal knowledge stands.

Request No. 26 — Plaintiff incorporates his response from Section I regarding the superseded First Amended Complaint.

At the time the request was served the first amended complaint was the operative complaint. The request remains valid despite the subse amendment.

---

### III. NOTICE REGARDING PATTERN OF DEFENDANT'S DISCOVERY CONDUCT

Plaintiff puts Defendant and its counsel on formal notice regarding the pattern reflected in this correspondence. Across the requests addre Defendant's June 1 letter, Defendant has:

- Demanded production of HIPAA-protected health information of non-party clients without a compliant framework, through four separa requests (Nos. 7, 8, 41, 42);
- Selectively presented judicial authority by omitting holdings that contradict Defendant's position (Request No. 19, Azarov v. Sam's E.
- Pursued discovery directed at a superseded pleading that Defendant itself stipulated to replace (Requests Nos. 25, 26);
- Demanded two years of Plaintiff's PMI communications while producing nothing in response to Plaintiff's narrower request on the sar subject (Request No. 38);
- Claimed Plaintiff's business income is not proprietary while simultaneously withholding Defendant's own insurance records on propri grounds (Request No. 43 vs. Rule 26(a)(1)(A)(iv));

- Repeatedly substituted conclusory assertions and cross-references for substantive legal argument (Requests Nos. 3, 20, 39, 40, 41, 44); and
- Sought proprietary business contracts of a separately organized non-party entity with no articulated relevance to any claim or defense (Request No. 44).

Plaintiff's extraordinary mischaracterizations of fact and law are noted.

Plaintiff is a pro se litigant. Defendant is represented by a sophisticated national law firm. The disparity in resources does not entitle Defend bury Plaintiff in facially deficient discovery demands designed to consume time rather than advance legitimate discovery objectives. Plaint documented each deficiency identified above and will present this record to the Court in connection with any Rule 37 proceedings. Plaintif respectfully requests that the Court scrutinize the pattern of Defendant's discovery conduct in evaluating any future motions — including P pending Motion for Sanctions and any additional sanctions Plaintiff may seek.

Plaintiff's objections are without merit, for the reasons set forth above and in my prior correspondence.

This correspondence is sent in advance of our June 2, 2026 conference to memorialize Plaintiff's positions. Plaintiff looks forward to a pro discussion and hopes Defendant will come prepared to address its own outstanding discovery obligations, including the deficiencies identi Plaintiff's April 27, 2026 correspondence, which remain unresolved.

Respectfully,

Corian

On Mon, Jun 1, 2026 at 11:39 AM Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

In anticipation of our continued meet-and-confer conference, please see the attached correspondence identifying issues we would like t address, and a copy of Defendants' proposed confidentiality agreement and stipulated protective order.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

--
Relax,
Corian

 **Gmail**

Corian Edwards <coriandelon@gmail.com>

---

## RE: Defense Counsel's early Meet and Confer Exit
5 messages

---

**Corian Edwards** <coriandelon@gmail.com>                                                                Tue, Jun 2, 2026 at 3:35 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

This email memorializes the June 2, 2026 meet-and-confer conference, which began at approximately 3:00 p.m. and ended when Defendant's counsel disconnected at approximately 3:27 p.m. — 27 minutes into a scheduled two-hour conference.

### Items Not Reached

Due to Defendant's counsel's departure, the following agenda items were not addressed:

- Plaintiff's outstanding discovery disputes from the April 27, 2026 correspondence, including RFP deficiencies, preservation notice, and comparator compensation data
- Plaintiff's request to extend the discovery period
- Defendant's June 1, 2026 deficiency requests (Requests Nos. 1-44)
- Defendant's proposed Stipulated Protective Order
- The circumstances surrounding the May 21, 2026 rescheduling and subsequent joinder filing
- Scheduling of continuance

### What Occurred During the 27-Minute Conference

The conference was consumed by a scheduling dispute initiated by Defendant's counsel. Plaintiff noted at the outset that Defendant's supplemental response — containing new case law and substantive legal arguments across multiple requests — was received at approximately 2:36 p.m., twenty-four minutes before the conference began. Plaintiff stated that he was unable to evaluate those new arguments in that timeframe and requested that those items be reserved for a continuance.

Defendant's counsel objected and stated his preference to address all items in a single block of four to five hours. Plaintiff explained that he is a pro se litigant who does not receive billable hours for conferral time, has other deadlines this week, and proposed breaking the remaining items into manageable blocks — either a continuance later this week or the following week.

Defendant's counsel stated that Plaintiff had "an affirmative obligation to educate yourself" regarding the case law submitted twenty-four minutes earlier. Plaintiff responded that an inability to evaluate new legal citations received minutes before conferral is not a failure to prepare — it is the natural consequence of Defendant's timing.

Defendant's counsel repeatedly mischaracterized Plaintiff's positions during the exchange. When Plaintiff identified and corrected specific mischaracterizations with supporting facts, Defendant's counsel became increasingly unresponsive. Defendant's counsel then turned off his camera and disconnected from the conference at approximately 3:27 p.m. without addressing any substantive agenda item.

### Preservation Question

Plaintiff's conferral question regarding the existence of internal text messages and Signal communications referencing Plaintiff — raised in writing before the conference — was not addressed. Defendant's counsel left the conference without answering.

### Plaintiff's Position Going Forward

Plaintiff was prepared to confer for the full two-hour window and offered to schedule a continuance to address items requiring further evaluation. Defendant's counsel chose to leave after 27 minutes. Plaintiff has satisfied his good-faith conferral obligation. The record of today's conference, including the email correspondence preceding it, will be included in any stipulated discovery dispute filing or Rule 37 motion.

Plaintiff remains willing to confer on all outstanding items at a mutually agreeable time. Please provide your availability for a continuance.

Respectfully,

Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                   Tue, Jun 2, 2026 at 3:42 PM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

You initiated the scheduling dispute. Last night, you requested to move the start time to 3:00 p.m. Today, you advised that you were unprepared to address the legal authorities I provided in response to your rebuttal. You engaged in snark and repeatedly interrupted me and talked over me. You also refused to cooperate on scheduling the meet-and-confer conference under any terms inconsistent with your unilateral demands. I have offered three hour blocks tomorrow and Thursday, which you have declined without any reason.

I am now making a firm proposal to conduct a three-hour meet and confer conference tomorrow, June 3, 2026, from 2:00 p.m. to 5:00 p.m. and will send you a calendar invitation. If you are not available during that time, please provide alternate proposed dates and times.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                      Tue, Jun 2, 2026 at 4:07 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)"
<Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

I will move my schedule around. I want to make note you left a scheduled meet and confer after 20 minutes of arguing pointlessly regarding scheduling and never attempted to address the substance of the meet and confer. I also want to make note you have a running theme of claiming "mischaracterization" but refusing to leave contemporaneous notes. At this point, the only peaceful solution maybe Mr. Trimmer handling meet and confer, or the defense covering expenses for a court reporter.  This is food for thought, not a demand.

Respectfully,
Corian

> On Jun 2, 2026, at 3:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> You initiated the scheduling dispute. Last night, you requested to move the start time to 3:00 p.m. Today, you advised that you were unprepared to address the legal authorities I provided in response to your rebuttal. You engaged in snark and repeatedly interrupted me and talked over me. You also refused to cooperate on scheduling the meet-and-confer conference under any terms inconsistent with your unilateral demands. I have offered three hour blocks tomorrow and Thursday, which you have declined without any reason.
>
> I am now making a firm proposal to conduct a three-hour meet and confer conference tomorrow, June 3, 2026, from 2:00 p.m. to 5:00 p.m. and will send you a calendar invitation. If you are not available during that time, please provide alternate proposed dates and times.
>
> Best,
> Chad
>
> <image566078.png>    **Chad C. Butterfield**
>                        Attorney at Law
>
>                        **Jackson Lewis P.C.**
>                        300 S. Fourth Street
>                        Suite 900
>                        Las Vegas, NV 89101
>                        Direct: (702) 921-2462 | Main: (702) 921-2460
>                        Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                      Tue, Jun 2, 2026 at 4:26 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)"
<Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

There was no dispute until you came on camera. Your own message at 3:03pm showcases your willingness to the continuance on the items I requested. You expressed a preference to reschedule the whole meet and confer because you have been up since 4:30 to prepare for all of these deadlines you have. I said verbatim " I understand and empathize" and offered to ONLY address interrogatories tonight and we could address the rest at your earliest convenience. You told me, if we don't do a block of time on 1 day, you found it to be inefficient. You told me if I was insistent on continuing today, you wouldn't be available again for a week. I agreed. You seen the next 5 minutes walking back that statement, saying it wasn't a " proposition" and characterizing it some other way. Now, instead of addressing the part of the record we are currently engaged in, we are engaging in emails. I would beg for you to practice some decorum and come back to the meeting so we can at least put a dent in the work load. If you only want to work on another 5 interrogatories, I'll agree to that. Its fine. Not doing any work at all is not agreeable and I will be reaching out for emergency attention from the bench (you will be included).

Respectfully,
Corian

> On Jun 2, 2026, at 3:42 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> You initiated the scheduling dispute. Last night, you requested to move the start time to 3:00 p.m. Today, you advised that you were unprepared to address the legal authorities I provided in response to your rebuttal. You engaged in snark and repeatedly interrupted me and talked over me. You also refused to cooperate on scheduling the meet-and-confer conference under any terms inconsistent with your unilateral demands. I have offered three hour blocks tomorrow and Thursday, which you have declined without any reason.
>
> I am now making a firm proposal to conduct a three-hour meet and confer conference tomorrow, June 3, 2026, from 2:00 p.m. to 5:00 p.m. and will send you a calendar invitation. If you are not available during that time, please provide alternate proposed dates and times.
>
> Best,
> Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Tue, Jun 2, 2026 at 4:31 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

You can take whatever action you deem appropriate. The record will reflect that I repeatedly offered three-hour blocks tomorrow or Thursday.

Best,

Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT F

Email Correspondence re: June 4, 2026 Conference

 Gmail

# Meet and Confer

2 messages

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>    Thu, Jun 4, 2026 at 11:24 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Edwards,

During today's meet and confer conference I asked if you are recording or transcribing the meeting or if you have recorded or transcribed any of our prior meetings. You answered that you are not recording or transcribing and that you do not record or transcribe. I repeatedly asked you to clarify whether you have recorded or transcribed any of our prior meetings. You never answered that specific question and instead repeatedly asserted "asked and answered" and accused me of badgering you. This occurred for at least an hour, during which you constantly interrupted me and spoke over me, despite numerous requests that you afford me the opportunity to speak without being interrupted. I documented at least 24 instances in which you engaged in this behavior, although there were numerous instances that I failed to contemporaneously document. You also engaged in name calling (calling me "childish") and accused me of attempting to assert some "weird moral high ground." You also accused me of "manipulating the record." I asked you to refrain from name calling, accusations, and insults and affirmatively stated that I would do my best to avoid in engaging in any such behavior. I expressly asked if you could agree to this request, to which you responded "I can definitely agree that we are not being productive and the conversation is a waste of time." You also engaged in condescension, stating you were sorry if calling me childish hurt my feelings. To be clear, it did not. My request was aimed at raising the level of discourse so that we could at least attempt to have a productive discussion.

You proposed as a "ground rule" that each party be allowed to speak uninterrupted for one minute, at which time the other party would have one minute. On numerous occasions, you cut me off during my allotted time and proceeded to speak for at times several minutes while I silently waited for you to finish. After I pointed this out multiple times, you repudiated the "ground rule" you had proposed. You also stated you were refusing to discuss anything that was not specifically identified in prior written communications. When you asked if I was willing to move forward with discussing the substantive issues, I answered affirmatively provided you cease your improper interruptions. Before I could even finish that sentence, you again interrupted me with a raised voice and stated to the effect that you were "done" with the proposed ground rule, at which time I terminated the meeting.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**Corian Edwards** <coriandelon@gmail.com>    Thu, Jun 4, 2026 at 11:39 AM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>

Mr. Butterfield,

Your email requires correction on several points.

**Recording.** You asked whether I was recording. I answered: I am not recording. I do not record. You then spent approximately one hour repeating variations of the same question — by your own count, at least 24 times — rather than addressing any substantive agenda item. Recording of conferences was not a conferral topic, yet out of respect I answered you. It was not on the agenda. It does not relate to any discovery dispute before us. I answered your question. You chose to spend the session asking it again.

**"Childish."** I did not call you childish. I called your behavior childish — specifically, the practice of speaking in uninterrupted monologues of three to five minutes, posing rhetorical questions, and then marking your notepad each time I attempted to interject or acknowledge what you were saying, which you then characterized as an "interruption." That conduct is what I described.

**"Weird moral high ground."** I used this phrase to describe your position on interruptions — specifically, that you reserved the right to speak at length without interruption while simultaneously cutting into my sentences, then claiming that interruptions were one-sided. The characterization was about the inconsistency of the standard you were applying, not about the recording topic.

**"Manipulating the record."** This was not an accusation made in the heat of the moment. It is a documented observation. In your June 1 correspondence, you cited *Azarov v. Sam's E., Inc.* for the proposition that all income sources must be produced. You omitted that the *Azarov* court held pre-existing consulting income was "not relevant" and that the order was based on the plaintiff's waiver — holdings that directly contradict your position. I identified this in my written response. This is one example among several in which your correspondence has presented authority for a proposition the cited case does not support, or has recharacterized my statements in a manner inconsistent with what was actually said or written. When I say the record is being manipulated, I am referring to documented conduct, not making an unsupported accusation.

**The one-minute rule.** I proposed a structure allowing each party to interject for clarifying questions — not a rule limiting each party to one minute of speaking. You recharacterized my proposal as a strict one-minute speaking limit, which is not what I proposed and not what I agreed to. When you then accused me of violating a rule I did not agree to, I stated that the conversation was not going anywhere and that I wanted to address the substantive record. That is not "repudiating" a ground rule. It is rejecting a mischaracterization of one.

**Abusive conduct.** I notified Mr. Butterfield during the conference that his behavior was abusive in nature. Specifically, after recharacterizing my proposed interjection rule into a strict one-minute speaking limit, Defendant's counsel used his allotted time to repeat the same recording question — effectively filibustering the conference by weaponizing a procedural structure he had already distorted. The result was that each "round" of the modified rule produced one minute of the same non-agenda question from Defendant's counsel, followed by an accusation of interruption when I attempted to redirect to the substantive agenda. This is not conferral. It is a deliberate abuse of the process designed to consume time while producing the appearance of participation.

**"Done."** I said I was done engaging on non-agenda topics unless we were going to address the substantive record — the items both parties identified for conferral. After one hour of non-conferral discussion, that is a reasonable position. I did not say I was done with the conference. I said I was done wasting time on matters that have nothing to do with the discovery disputes before us. There is a difference.

**"Waste of time."** I said we were wasting time — referring to the direction of the discussion, not the conferral process itself. Your email recharacterizes this as me calling "the conversation a waste of time," which carries a different meaning. I value this process. I do not value spending an hour on questions unrelated to the agenda.

**"Refusing to discuss anything not in prior written communications."** I declined to address questions that are not part of the meet-and-confer agenda. Recording and transcription are not conferral topics. They are not in my April 27 correspondence, your June 1 correspondence, or any item identified by either party. Declining to submit to off-agenda interrogation is not a refusal to confer — it is an insistence on conferring about the matters we are here to resolve.

**What your email omits.**

Your email does not mention that you told me to "keep my mouth shut." Your email does not mention that you accused me of conferring in bad faith because I interrupted you — a misapplication of a legal standard carrying sanctions consequences, directed at a pro se litigant. Your email does not mention that I asked you multiple times to move to the substantive agenda. Your email does not mention that zero items on the agenda were addressed during today's session. Your email does not mention that this is the second consecutive conference in which no substantive discovery issue was discussed.

**The bottom line.**

Regardless of how either party characterizes the tone of today's conference, the undisputed fact is that we met for approximately one hour and addressed zero items on the discovery agenda. That is now two conferences — approximately 90 combined minutes — with no substantive progress. The parties have outstanding disputes on interrogatories, RFP deficiencies, preservation, the protective order, and a discovery extension. None of these were discussed today.

I remain willing to confer on the substantive agenda. Please propose a date and time for a session dedicated exclusively to the outstanding discovery disputes.

Respectfully,

Corian

[Quoted text hidden]

 Gmail                                                           Corian Edwards <coriandelon@gmail.com>

---

## Edwards v. Bellagio Meet and Confer Fail II

2 messages

---

**Corian Edwards** <coriandelon@gmail.com>                                    Thu, Jun 4, 2026 at 11:23 AM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

This email memorializes today's continued meet-and-confer conference. The conference lasted approximately one hour. For the second consecutive session, zero substantive agenda items were addressed.

The entire conference was consumed by Defendant's counsel's repeated questioning regarding whether Plaintiff was recording or had previously recorded meet-and-confer conferences. This is not a discovery topic. It does not appear on the agenda proposed by either party. It is not among the issues identified in Plaintiff's April 27, 2026 correspondence, Defendant's June 1, 2026 correspondence, or any item previously raised for conferral. Plaintiff answered the question directly: I am not recording. Despite receiving a direct answer, Defendant's counsel continued to ask variations of the same question for the duration of the conference — approximately forty times over the course of one hour.

Defendant's counsel also demanded that Plaintiff answer questions regarding past conduct. Plaintiff is not obligated to submit to interrogation by opposing counsel during a meet-and-confer conference. The purpose of conferral under LR IA 1-3(f) and the Court's Standing Order is to discuss and attempt to resolve discovery disputes. It is not a forum for examining the opposing party on matters unrelated to the discovery agenda.

Additionally, Plaintiff notes the following conduct by Defendant's counsel during today's conference:

First, Defendant's counsel told Plaintiff to "keep my mouth shut." This language is inappropriate in any professional setting and particularly in a conferral between a licensed attorney and a pro se litigant.

Second, Defendant's counsel repeatedly accused Plaintiff of recording the conference, then when challenged, stated it was "not an accusation." Defendant's counsel cannot ask the same question forty times, frame it as an accusation, and then disclaim the characterization when pressed. The record reflects what was said.

Third, Defendant's counsel continued a pattern from prior conferences of characterizing interruptions as one-sided — attributing all interruptions to Plaintiff while engaging in the same conduct himself. Conferral is a two-way exchange. Both parties spoke, both parties responded to each other's statements, and Plaintiff rejects the characterization that any interruption during this conference was unilateral.

Fourth, Defendant's counsel accused Plaintiff of conferring in bad faith — specifically because Plaintiff interrupted him during conversation. Bad faith in the conferral context is a legal term with a specific meaning: a party's refusal to engage substantively, deliberate obstruction, or failure to make genuine efforts to resolve disputes. It does not mean being interrupted during a two-way discussion. Defendant's counsel — a licensed attorney — applied a legal accusation carrying potential sanctions consequences to ordinary conversational dynamics and directed it at a pro se litigant. Plaintiff identified this as a misstatement of the legal standard. Defendant's counsel ended the call shortly after.

For the second consecutive conference, the session ended after Plaintiff identified and corrected a mischaracterization by Defendant's counsel.

At no point during today's conference did either party address any of the following outstanding items:

- Plaintiff's April 27, 2026 discovery deficiencies (RFP deficiencies, preservation, comparator data, insurance)
- Interrogatories (the parties remain at Interrogatory No. 6 from the prior conference)
- Plaintiff's request to extend the discovery period
- Defendant's June 1, 2026 deficiency requests (Requests Nos. 1-44)
- Defendant's proposed Stipulated Protective Order
- Preservation questions regarding internal text messages and Signal communications
- The May 21, 2026 rescheduling and subsequent joinder filing

This is now a clear pattern:

- June 2: Defendant's counsel disconnected after 27 minutes. The session was consumed by a scheduling dispute. Zero agenda items addressed.
- Today: Defendant's counsel remained for approximately one hour. The session was consumed by non-conferral questions about recording. Zero agenda items addressed.
- Combined conferral time: approximately 90 minutes across two sessions. Substantive discovery issues resolved: zero.

I do not believe this pattern is accidental. Plaintiff has attended every conference prepared and willing to work through the agenda. Plaintiff has proposed structures, offered scheduling compromises, and attempted to advance discussion to the substantive issues that affect this case. On two consecutive occasions, Defendant's counsel has prevented that from happening — first by leaving, and now by consuming the entire session with questions that have nothing to do with the discovery disputes before us.

I want to be direct about the impact of this conduct. I am a pro se litigant. I do not bill these hours to a client. Every hour spent in an unproductive conference is an hour I am not earning income, not preparing my case, and not caring for my family. I have been up since 3:00 a.m. preparing for this litigation. I take this process seriously. I expect the same from opposing counsel.

The record of the June 2 and today's conferences will be included in the stipulated discovery dispute filing. The Court will evaluate whether two consecutive conferences producing zero substantive progress — one ended by Defendant's counsel leaving after 27 minutes and one consumed entirely by non-agenda questioning — reflects the "intentional, sincere, robust, and deliberately planned" conferral that the Court's Standing Order requires.

If Defendant's counsel is prepared to address the substantive agenda at our next session, Plaintiff remains willing to confer. If Defendant's counsel intends to continue using conferral time for purposes other than resolving discovery disputes, Plaintiff will seek Court intervention through the stipulation process.

Respectfully,

Corian

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                          Thu, Jun 4, 2026 at 11:27 AM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,


I do not agree that you have accurately memorialized the meet and confer.  My positions are set out in my email correspondence sent this morning at 11:25 a.m. You are welcome to disagree with my memorialization but I will not be engaging in further back-and-forth on the issues.


Best,

Chad




**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT G

Email Correspondence re: Stipulation Regarding Discovery Dispute
(June 6–9, 2026)

 Gmail

Corian Edwards <coriandelon@gmail.com>

---

**RE: Edwards v. Bellagio Meet and Confer Stipulation**
18 messages

---

**Corian Edwards** <coriandelon@gmail.com>                                         Sat, Jun 6, 2026 at 8:00 AM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: Jennifer.Levin@jacksonlewis.com, "Portelli, Rebecca L. (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Attached is Plaintiff's portion of a Stipulation Regarding Discovery Dispute pursuant to LR 26-7 and the Court's Standing Order. The sole issue presented is the meet-and-confer process and structure.

Section VII has been reserved for Defendant's position. Plaintiff requests that Defendant insert its positions and return the completed stipulation by 5:00 p.m. on Monday, June 8, 2026, so that the stipulation may be filed on Tuesday, June 9, 2026.

The exhibits referenced in the Exhibit Index consist of the parties' email correspondence, copies of which are in Defendant's possession. Exhibits will be filed with the Court as part of the stipulation package.

If Defendant declines to participate, Plaintiff will file the stipulation with Section VII noting: "Defendant declined to state a position."

Respectfully, Corian Edwards

---

📄 **Stipulation - Meet and Confer Process.docx**
24K

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>          Mon, Jun 8, 2026 at 11:13 AM
To: Corian Edwards <coriandelon@gmail.com>, "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>
Cc: "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Your draft does not comply with the requirements of Judge Couvillier's Standing Order and is replete with inaccuracies and irrelevant information. The Standing Order requires the following, which are absent or deficient in your draft:

1. A brief, joint summary of the discovery dispute not to exceed one (1) page.

The draft you provided does not include a joint summary. It sets forth your unilateral position. It also fails to identify the discovery dispute, which concerns: (1) Bellagio's objections to Plaintiff's interrogatories and requests for production of documents; and (2) Plaintiff's objections to Bellagio's requests for production of documents.

2. A restatement of the full text of the discovery requests, or deposition question, in dispute as originally stated, or deposition question, in dispute as originally stated and the responses to the requests. This may be done in single-spaced, 10-font.

The draft you provided does not include this information.

3. A joint summary of the meet-and-confer efforts as required by LR IA 1-3(f), which includes: (1) a summary of discussions; (2) identification of time, place, manner, and participants; and (3) certification from counsel that, despite a sincere effort, the parties were unable to resolve or narrow the dispute without court intervention. This joint meet-and-confer summary may not exceed two (2) pages.

The "conferral history" section in your proposed draft is one-sided and includes numerous matters which are not properly the subject of a Stipulation Regarding Discovery Dispute and not reflective of meet-and-confer conferences. It consists of Plaintiff's unilateral positions and characterizations and is not neutral or a joint statement.

4. An explanation, without boilerplate language, of the position taken by each side, not to exceed two (2) pages per side.

You have not included this section. Rather, the entire document is presented as Plaintiff's position.

5. Each side must make a proposal of compromise or resolution of the disputed discovery (*e.g.*, request, interrogatory, deposition question). The proposal may not exceed two (2) pages per side.

You have not included Plaintiff's proposal of compromise.

Your draft stipulation also includes several extraneous items, and presents as a motion, rather than a joint stipulation. With the exception of the section in which the parties present their respective positions (limited to 2 pages per side), the stipulation should be presented neutrally. Additionally, the Standing Order does not contemplate the submission of exhibits.

Please revise accordingly.

Sincerely,
Chad

---

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900

Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]


Respectfully, Corian Edwards

---

**Corian Edwards** <coriandelon@gmail.com>                                              Mon, Jun 8, 2026 at 1:17 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr Butterfield,

I have attached an edited copy in congruence with Judge Couvillier's Standing Order. Please complete your editions.


Respectfully,
Corian

> On Jun 8, 2026, at 11:13 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your draft does not comply with the requirements of Judge Couvillier's Standing Order and is replete with inaccuracies and irrelevant information. The Standing Order requires the following, which are absent or deficient in your draft:

1. A brief, joint summary of the discovery dispute not to exceed one (1) page.

   The draft you provided does not include a joint summary. It sets forth your unilateral position. It also fails to identify the discovery dispute, which concerns: (1) Bellagio's objections to Plaintiff's interrogatories and requests for production of documents; and (2) Plaintiff's objections to Bellagio's requests for production of documents.

2. A restatement of the full text of the discovery requests, or deposition question, in dispute as originally stated, or deposition question, in dispute as originally stated and the responses to the requests. This may be done in single-spaced, 10-font.

   The draft you provided does not include this information.

3. A joint summary of the meet-and-confer efforts as required by LR IA 1-3(f), which includes: (1) a summary of discussions; (2) identification of time, place, manner, and participants; and (3) certification from counsel that, despite a sincere effort, the parties were unable to resolve or narrow the dispute without court intervention. This joint meet-and-confer summary may not exceed two (2) pages.

   The "conferral history" section in your proposed draft is one-sided and includes numerous matters which are not properly the subject of a Stipulation Regarding Discovery Dispute and not reflective of meet-and-confer conferences. It consists of Plaintiff's unilateral positions and characterizations and is not neutral or a joint statement.

4. An explanation, without boilerplate language, of the position taken by each side, not to exceed two (2) pages per side.

   You have not included this section. Rather, the entire document is presented as Plaintiff's position.

5. Each side must make a proposal of compromise or resolution of the disputed discovery (*e.g.*, request, interrogatory, deposition question). The proposal may not exceed two (2) pages per side.

   You have not included Plaintiff's proposal of compromise.

Your draft stipulation also includes several extraneous items, and presents as a motion, rather than a joint stipulation. With the exception of the section in which the parties present their respective positions (limited to 2 pages per side), the stipulation should be presented neutrally. Additionally, the Standing Order does not contemplate the submission of exhibits.

Please revise accordingly.

Sincerely,
Chad


<image868477.png>    **Chad C. Butterfield**
                     Attorney at Law

                     **Jackson Lewis P.C.**
                     300 S. Fourth Street
                     Suite 900
                     Las Vegas, NV 89101
                     Direct: (702) 921-2462 | Main: (702) 921-2460
                     Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Saturday, June 6, 2026 8:00 AM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio Meet and Confer Stipulation


Mr. Butterfield,

Attached is Plaintiff's portion of a Stipulation Regarding Discovery Dispute pursuant to LR 26-7 and the Court's Standing Order. The sole issue presented is the meet-and-confer process and structure.

Section VII has been reserved for Defendant's position. Plaintiff requests that Defendant insert its positions and return the completed stipulation by 5:00 p.m. on Monday, June 8, 2026, so that the stipulation may be filed on Tuesday, June 9, 2026.

The exhibits referenced in the Exhibit Index consist of the parties' email correspondence, copies of which are in Defendant's possession. Exhibits will be filed with the Court as part of the stipulation package.

If Defendant declines to participate, Plaintiff will file the stipulation with Section VII noting: "Defendant declined to state a position."

Respectfully, Corian Edwards

---

 **Discovery dispute conferral.doc**
50K

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                          Tue, Jun 9, 2026 at 9:33 AM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute. I think an in-person meeting may be more productive and is something we have not yet attempted. We could meet at our office, or I would be happy to meet you at another location if you prefer.

Sincerely,

Chad

---

**JL**

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 8, 2026 1:18 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>

[Quoted text hidden]

[Quoted text hidden]

Respectfully,

Corian

On Jun 8, 2026, at 11:13 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your draft does not comply with the requirements of Judge Couvillier's Standing Order and is replete with inaccuracies and irrelevant information. The Standing Order requires the following, which are absent or deficient in your draft:

1. A brief, <u>joint summary</u> of the discovery dispute not to exceed one (1) page.

   The draft you provided does not include a joint summary. It sets forth your unilateral position. It also fails to identify the discovery dispute, which concerns: (1) Bellagio's objections to Plaintiff's interrogatories and requests for production of documents; and (2) Plaintiff's objections to Bellagio's requests for production of documents.

2. A restatement of the full text of the discovery requests, or deposition question, in dispute as originally stated, or deposition question, in dispute as originally stated and the responses to the requests. This may be done in single-spaced, 10-font.

   The draft you provided does not include this information.

3. A <u>joint summary</u> of the meet-and-confer efforts as required by LR IA 1-3(f), which includes: (1) a summary of discussions; (2) identification of time, place, manner, and participants; and (3) certification from counsel that, despite a sincere effort, the parties were unable to resolve or narrow the dispute without court intervention. This <u>joint</u> meet-and-confer summary may not exceed two (2) pages.

   The "conferral history" section in your proposed draft is one-sided and includes numerous matters which are not properly the subject of a Stipulation Regarding Discovery Dispute and not reflective of meet-and-confer conferences. It consists of Plaintiff's unilateral positions and characterizations and is not neutral or a joint statement.

4. An explanation, without boilerplate language, of the position taken by each side, not to exceed two (2) pages per side.

   You have not included this section. Rather, the entire document is presented as Plaintiff's position.

5. Each side must make a proposal of compromise or resolution of the disputed discovery (*e.g.*, request, interrogatory, deposition question). The proposal may not exceed two (2) pages per side.

   You have not included Plaintiff's proposal of compromise.

Your draft stipulation also includes several extraneous items, and presents as a motion, rather than a joint stipulation. With the exception of the section in which the parties present their respective positions (limited to 2 pages per side), the stipulation should be presented neutrally. Additionally, the Standing Order does not contemplate the submission of exhibits.

Please revise accordingly.

Sincerely,
Chad

— **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**

300 S. Fourth Street
Suite 900

Las Vegas, NV 89101

Direct: (702) 921-2462 | Main: (702) 921-2460

Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Saturday, June 6, 2026 8:00 AM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio Meet and Confer Stipulation

[Quoted text hidden]

---

Corian Edwards <coriandelon@gmail.com>                                                          Tue, Jun 9, 2026 at 2:21 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Thank you for your June 9 email. After careful deliberation, I am willing to meet in person. Meeting will be subject to the following conditions and preconditions.

**Preconditions** (to be satisfied before the meeting is scheduled):

1.    **Zenoti booking data.** Defendant shall produce Zenoti booking records for calendar year 2024 for the Bellagio Spa poolside massage operation, with staff names redacted to first-and-last initials only. This data was identified by Ms. Wood in her June 18, 2024 investigation interview (DEF000468) and is directly relevant to Plaintiff's claims. Production in Excel or CSV format is acceptable. Data shall include Times and dates of all booked pool massage therapy services from 01/01/2024- 12/31/2024, therapist name (Redacted, first and last initial only), Therapist gender identified as either "M" for male of "F" for female, service booked, amounts paid, guest name (Redacted, first and last initial only). Payment method (Room number and credit/debit card numbers redacted).

2.    **Preservation confirmation.** Defendant shall provide a written response to Plaintiff's February 26, 2026 Evidence Preservation Notice, which identified six categories of custodians and specific ESI including Signal communications and Workday audit logs. That notice requested written confirmation within seven days. Over three months have passed with no response. A one-paragraph confirmation of preservation measures taken is sufficient.

**Meeting Conditions:**

3.    **Neutral location.** The meeting shall take place at a mutually agreeable neutral location—not the offices of Jackson Lewis.

4.    **Written agenda and positions.** No later than 48 hours before the meeting, each party shall exchange: (a) a written agenda limited to the following items, in this order—(i) discovery extension, (ii) interrogatory numerosity, (iii) Plaintiff's RFP deficiencies, and (iv) Defendant's RFP deficiencies; and (b) a written summary of each party's current position on each agenda item, including any reductions or revised proposals already offered. If a party's pre-meeting position on any item is acceptable to the opposing party, that party may accept in writing before the meeting, and the item need not be addressed at the conference. No additional items may be raised at the meeting. Final positions are due by 11:59pm two days before conferral (i.e. If June 15, due 11:59pm on June 13)

5.    **Conferral waiver.** Any discovery dispute not substantively addressed at the meeting shall be deemed fully conferred on for purposes of LR 26-7(b) and may be raised in any subsequent Rule 37(a) motion without further meet-and-confer unless parties agree to a follow-up conferral. Any party resigning from conferral within the scheduled time allotted forfeits the exercise of this waiver for their party.

6.    **One-Man party.** To keep the conferral on a level playing field, each party shall only have one representative, in this case, Chad Butterfield for the Defense and Corian Edwards I for the Plaintiff.

Upon satisfaction of items 1 and 2, I will confirm a date for the meeting. I am generally available Monday through Thursday during business hours the week of June 15.

Respectfully,
Corian

On Jun 9, 2026, at 9:33 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute. I think an in-person meeting may be more productive and is something we have not yet attempted. We could meet at our office, or I would be happy to meet you at another location if you prefer.

Sincerely,
Chad

<image968363.png>    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                    Tue, Jun 9, 2026 at 2:50 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Conditioning your participation in a meet and confer conference is not reflective of a good faith effort to meet and confer, which is a reciprocal requirement and applies to all participants.  *See* LR IA 1-3(f). As I have already offered to meet you at a location other than our offices, which I remain willing to do. Please either withdraw your remaining meet and confer conditions or confirm that your position remains unchanged.

Sincerely,

Chad

    **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                    Tue, Jun 9, 2026 at 2:58 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

 I apologize if I have jumped the gun, but I interpreted this request to be in substitution for your participation in the stipulation, yes?

Respectfully,
Corian

On Jun 9, 2026, at 2:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Conditioning your participation in a meet and confer conference is not reflective of a good faith effort to meet and confer, which is a reciprocal requirement and applies to all participants.  *See* LR IA 1-3(f). As I have already offered to meet you at a location other than our offices, which I remain willing to do. Please either withdraw your remaining meet and confer conditions or confirm that your position remains unchanged.

Sincerely,

Chad

<image257093.png>    **Chad C. Butterfield**

Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Tue, Jun 9, 2026 at 3:00 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

The request was in furtherance of the parties' reciprocal obligation to meet and confer.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                    Tue, Jun 9, 2026 at 3:14 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Throughout our conferral efforts, there has been no electronic interference, loss of signal, or emergency that has disrupted our ability to confer. Your proposal to meet in person does not address any issue that has arisen during the conferral process. While I am not opposed to exploring alternative methods of conferral, you have not explained how meeting in person makes the process more productive for both sides. You have only stated your personal preference without consideration for my preferences, needs, or expectations.

In the course of this proposal, you have left unanswered my Stipulation Regarding Discovery Disputes. When that stipulation was not properly formatted, you sent a substantive email identifying the deficiencies. Those deficiencies were corrected and the stipulation was resubmitted. You have not responded. Your response was due June 8, 2026. While technically defaulted, I extended grace in good faith to allow you to substantiate any claim to which you believe I have m mischaracterized the defense.

It can only be naturally deduced that you intended this alternative to serve as a substitution for responding to the stipulation. If that deduction is incorrect, good faith conferral requires you to say so — and to provide your response to the stipulation.

Respectfully, Corian

[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Tue, Jun 9, 2026 at 3:18 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

I am attempting to exhaust all efforts before resorting to judicial intervention. If your position on withdrawing your conditions to meet and confer remains unchanged, please confirm. Otherwise, I would prefer to spend our time more productively by setting a time and place for a meet and confer conference.

Best,

Chad



**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                    Tue, Jun 9, 2026 at 3:24 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

There is considerable irony in an attorney who has resigned from two meet-and-confer conferences characterizing himself as the producing party, whose live response would be one in which you responded to the Stipulation. In that same good faith effort, we could discuss moving future conferences to an alternative platform. I am not going to officially disagree with your position on future conferences, but it does not get to skip the line.

Please make plain whether or not you intend to respond to the Stipulation Regarding Discovery Disputes. As of now, the record appears to insinuate that you do not.

Respectfully, Corian

> On Jun 9, 2026, at 3:18 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> The request was in furtherance of the parties' reciprocal obligation to meet and confer.
>
> Best,
> Chad
>
> <image667142.png>  **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> ---
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Tuesday, June 9, 2026 2:58 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
> **Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation
>
> Mr. Butterfield,
>
> [Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>    Tue, Jun 9, 2026 at 3:29 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Kindly refrain from injecting unproductive commentary. Please either withdraw your conditions so we can move forward with scheduling the meet and confer conference or confirm that your position remains unchanged.

Thank you in advance,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>    Tue, Jun 9, 2026 at 3:34 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr Butterfield,

If I have offended you, I greatly apologize. I was offended by any insinuation that somehow my stipulation request was less than productive. Please respond on your answer for stipulation, then I will respond to your subsequent request. I would argue that is more than fair.

Respectfully,
Corian

> On Jun 9, 2026, at 3:29 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Kindly refrain from injecting unproductive commentary. Please either withdraw your conditions so we can move forward with scheduling the meet and confer conference or confirm that your position remains unchanged.
>
> Thank you in advance,
> Chad
>
> <image744429.png>  **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900

Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Tue, Jun 9, 2026 at 3:39 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Your continued insistence on conditioning your participation in the meet and confer process is per se bad faith. Please re-read my initial email, in which I expressly stated: "I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute." If you are unwilling to meet and confer without condition, please simply advise.

Best,

Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>                                    Tue, Jun 9, 2026 at 3:53 PM
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

At no point have I communicated I was unwilling to have conference. By your own "per se" bad faith ideology, refusing to respond to the stipulation set forth and demanding I instead allow you to pretend it doesn't exist to manufacture the appearance of mutual obstruction isn't going to happen. Your quote, "*I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute.*" Already answered the question, I just wanted a direct response from you. Once Judge Couviller makes a decision on the stipulation, I would be more than happy to discuss venue/platform changes should they become necessary. I will give you 15 more minutes (based on your current reply speed) to substantively communicate your intent to participate in stipulation, after which I will accept your silence on stipulation as refusal. If you agree to participate, I will hold off on filing until tomorrow. I appreciate you for your time!

> On Jun 9, 2026, at 3:39 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Your continued insistence on conditioning your participation in the meet and confer process is per se bad faith. Please re-read my initial email, in which I expressly stated: "I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute." If you are unwilling to meet and confer without condition, please simply advise.
>
> Best,
> Chad
>
> <image397853.png>  **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>                                    Tue, Jun 9, 2026 at 4:04 PM
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Once again, I am attempting to exhaust all efforts prior to involving the Court. I have requested that we meet and confer in person. I offered the use of our offices, which you indicated was unacceptable. To be clear, I am willing to travel to the location of your choice within the greater Las Vegas metropolitan area for the conference, thereby minimizing any burden on you. You have expressly conditioned your further participation and appear to be intent on filing your unilateral "stipulation" with the Court rather than further engage in the meet and confer process. You are, of course, free to act as you deem appropriate.

Best,

Chad

**Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

[Quoted text hidden]
[Quoted text hidden]

---

**Corian Edwards** <coriandelon@gmail.com>
To: "Butterfield, Chad C. (Las Vegas)" <Chad.Butterfield@jacksonlewis.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Butterfield,

Thank you for your message. I wish to use this email to memorialize our interaction today. This correspondence and the full thread preceding it will be submitted to the Court as an exhibit to the stipulation filin

The sequence of events was as follows:

1.  On June 6th at 8:00 AM, I submitted the Plaintiff's portion of the Stipulation of Discovery Dispute for our meet-and-confer failures. I requested Defendant's portion by June 8, 2026.

2.  June 8th at 11:13 AM, you responded with a list of deficiencies and a request to "Revise accordingly."

3.  June 8th at 1:17 PM, I submitted a corrected copy of the stipulation with the corrections and another request for Defendant's portion.

4.  Today, June 9th at approximately 9:33 AM, you requested an in-person meet-and-confer before participating in the stipulation. The stipulation deadline, as stated, had already expired.

5.  June 9th at 2:21 PM, I provided a list of conditions under which I would be willing to meet and confer instead of filing the stipulation unilaterally due to Defense's default.

6.  June 9th at 2:50 PM, you responded that my conditions were not reflective of a "good faith effort" and that I needed to withdraw them or "confirm my position remains unchanged." This inferred to me you
furtherance of meet and confer, not delay or retraction of the stipulation agreement.

7.  June 9th at 2:58 PM, I asked for clarification whether or not you were looking for your meet-and-confer request to be in substitution of participation for stipulation.

8.  June 9th at 3:01 PM, I received a boilerplate response.

9.  June 9th at 3:14 PM, I clarified that our meet-and-confer conferences did not fail due to platform, and that your late request did not address the problems we encountered. I notified you that while I am not ag
does not address our current concern, which is the stipulation.

10. June 9th at 3:18 PM, you submitted more boilerplate. You offered the ultimatum of withdrawing my conditions or "spending time productively" by choosing a place and time for meet and confer.

11. June 9th at 3:24 PM, I responded addressing your "spending time productively" comment, continued to assure you we can talk about a venue change later, and once again asked you to answer whether or no
stipulation.

12. June 9th at 3:29 PM, you expressed you wanted me to "refrain from injecting unproductive commentary" and offered a new ultimatum: withdraw my conditions or admit "my position remains unchanged."

13. June 9th at 3:34 PM, I apologized for any inferred offense and notified you of the offense I inferred from my interpretation that my stipulation was somehow not productive. I asked you to answer my reques
would answer your request of meet and confer.

14. June 9th at 3:40 PM, you accused my position of "per se bad faith." This time, you asked me to withdraw my conditions, or "advise" you if I'm not willing.

15. June 9th at 3:53 PM, I clarified that at no point had I communicated unwillingness to confer. I pointed out that your own words _**"I propose making a final meet and confer attempt before proceeding with a**_
_**dispute"**_ answered the question I had been asking, which was if this was a _**substitution for stipulation**_. I offered to hold off on filing the stipulation until the next day if you confirmed your intent to participate.

16. June 9th at 4:05 PM, you reiterated your willingness to travel to a location of my choosing, characterized me as "intent on filing your unilateral 'stipulation' with the Court rather than further engage in the m
"You are, of course, free to act as you deem appropriate."

Your last response completely disregarded my genuine concerns and prioritized "your preference" which has been a running theme in our communications. While I often defer to your position as an officer of th
our joint engagements need to prioritize your "preferences", especially when they may arguably abuse the meet and confer standards, and waste the time I could be devoting to taking care of my family financial
conferral time was resigned by you. I do not get paid for that time. I have focused on completing all requirements for the courts to have opinion on this conduct, and tell us _**both**_ what is acceptable and what is ne
platform change solves the issues I have communicated to you, and offered the corrected stipulation. I am curious why you didn't offer when you received the deficient stipulation. I believe the Court will find r
fully exhausted and I will move forward accordingly. Thank you for you time.


Respectfully,

Corian

> On Jun 9, 2026, at 4:04 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Once again, I am attempting to exhaust all efforts prior to involving the Court. I have requested that we meet and confer in person. I offered the use of our offices, which you indicated wa
> willing to travel to the location of your choice within the greater Las Vegas metropolitan area for the conference, thereby minimizing any burden on you. You have expressly conditioned y
> appear to be intent on filing your unilateral "stipulation" with the Court rather than further engage in the meet and confer process. You are, of course, free to act as you deem appropriate
>
> Best,
> Chad
>
>
> <image732016.png>  **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> ---
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Tuesday, June 9, 2026 3:53 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.
> **Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation
>
> Mr. Butterfield,
>
> At no point have I communicated I was unwilling to have conference. By your own "per se" bad faith ideology, refusing to respond to the stipulation set forth and demanding I instead all
> to manufacture the appearance of mutual obstruction isn't going to happen. Your quote, "_**I propose making a final meet and confer attempt before proceeding with a stipulation fo**_
> answered the question, I just wanted a direct response from you. Once Judge Couviller makes a decision on the stipulation, I would be more than happy to discuss venue/platform chan

necessary. I will give you 15 more minutes [based on your current reply speed] to subsequently communicate your intent to participate in a stipulation, after which I will accept your silence [...] agree to participate, I will hold off on filing until tomorrow. I appreciate you for your time!

On Jun 9, 2026, at 3:39 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your continued insistence on conditioning your participation in the meet and confer process is per se bad faith. Please re-read my initial email, in which I expressly stated: "I propos[...] confer attempt before proceeding with a stipulation for discovery dispute." If you are unwilling to meet and confer without condition, please simply advise.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 3:34 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jackson[...]
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr Butterfield,

If I have offended you, I greatly apologize. I was offended by any insinuation that somehow my stipulation request was less than productive. Please respond on your answer for stip[...] to your subsequent request. I would argue that is more than fair.

Respectfully,
Corian

On Jun 9, 2026, at 3:29 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Kindly refrain from injecting unproductive commentary. Please either withdraw your conditions so we can move forward with scheduling the meet and confer conference or c[...] position remains unchanged.

Thank you in advance,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 3:25 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@j[...]
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

There is considerable irony in an attorney who has resigned from two meet-and-confer conferences characterizing himself as the productive party. A productive response wo[...] you responded to the Stipulation. In that same good faith effort, we could discuss moving future conferences to an alternative platform. I am not going to officially disagree wi[...] future conferences, but it does not get to skip the line.

Please make plain whether or not you intend to respond to the Stipulation Regarding Discovery Disputes. As of now, the record appears to insinuate that you do not.

Respectfully, Corian

On Jun 9, 2026, at 3:18 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

The request was in furtherance of the parties' reciprocal obligation to meet and confer.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 2:58 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

 I apologize if I have jumped the gun, but I interpreted this request to be in substitution for your participation in the stipulation, yes?

Respectfully,
Corian

On Jun 9, 2026, at 2:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Conditioning your participation in a meet and confer conference is not reflective of a good faith effort to meet and confer, which is a reciprocal requirement and ap participants.  *See* LR IA 1-3(f). As I have already offered to meet you at a location other than our offices, which I remain willing to do. Please either withdraw your meet and confer conditions or confirm that your position remains unchanged.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 2:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecc jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

Thank you for your June 9 email. After careful deliberation, I am willing to meet in person. Meeting will be  subject to the following conditions and preconditions.

**Preconditions** (to be satisfied before the meeting is scheduled):

1.      **Zenoti booking data.** Defendant shall produce Zenoti booking records for calendar year 2024 for the Bellagio Spa poolside massage operation, with staff names redacted last initials only. This data was identified by Ms. Wood in her June 18, 2024 investigation interview (DEF000468) and is directly relevant to Plaintiff's claims. Production in Exce format is acceptable. Data shall include Times and dates of all booked pool massage therapy services from 01/01/2024- 12/31/2024, therapist name (Redacted, first and last initial Therapist gender identified as either "M" for male of "F" for female,  service booked, amounts paid, guest name (Redacted, first and last initial only). Payment method (Room nu credit/debit card numbers redacted).

2.      **Preservation confirmation.** Defendant shall provide a written response to Plaintiff's February 26, 2026 Evidence Preservation Notice, which identified six categories of c and specific ESI including Signal communications and Workday audit logs. That notice requested written confirmation within seven days. Over three months have passed with no one-paragraph confirmation of preservation measures taken is sufficient.

**Meeting Conditions:**

3.      **Neutral location.** The meeting shall take place at a mutually agreeable neutral location—not the offices of Jackson Lewis.

4.      **Written agenda and positions.** No later than 48 hours before the meeting, each party shall exchange: (a) a written agenda limited to the following items, in this order—(i) extension, (ii) interrogatory numerosity, (iii) Plaintiff's RFP deficiencies, and (iv) Defendant's RFP deficiencies; and (b) a written summary of each party's current position on eac item, including any reductions or revised proposals already offered. If a party's pre-meeting position on any item is acceptable to the opposing party, that party may accept in writ

the meeting, and the item need not be addressed at the conference. No additional items may be raised at the meeting. Final positions are due by 2:59pm two days before conferral 15, due 11:59pm on June 13)

5.  **Conferral waiver.** Any discovery dispute not substantively addressed at the meeting shall be deemed fully conferred on for purposes of LR 26-7(b) and may be raised in a subsequent Rule 37(a) motion without further meet-and-confer unless parties agree to a follow-up conferral. Any party resigning from conferral within the scheduled time allotted exercise of this waiver for their party.

6.  **One-Man party.**    To keep the conferral on a level playing field, each party shall only have one representative, in this case, Chad Butterfield for the Defense and Corian for the Plaintiff.

Upon satisfaction of items 1 and 2, I will confirm a date for the meeting. I am generally available Monday through Thursday during business hours the week of June 15.

Respectfully,
Corian

> On Jun 9, 2026, at 9:33 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute. I think an in-person meeting may be more produ and is something we have not yet attempted. We could meet at our office, or I would be happy to meet you at another location if you prefer.
>
> Sincerely,
> Chad
>
> — **Chad C. Butterfield**
> Attorney at Law
>
> **Jackson Lewis P.C.**
> 300 S. Fourth Street
> Suite 900
> Las Vegas, NV 89101
> Direct: (702) 921-2462 | Main: (702) 921-2460
> Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Monday, June 8, 2026 1:18 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
> **Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation
>
> Mr Butterfield,
>
> I have attached an edited copy in congruence with Judge Couvillier's Standing Order. Please complete your editions.
>
> Respectfully,
> Corian
>
> > On Jun 8, 2026, at 11:13 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
> >
> > Mr. Edwards,
> >
> > Your draft does not comply with the requirements of Judge Couvillier's Standing Order and is replete with inaccuracies and irrelevant information. The Standing Order requires the following, which are absent or deficient in your draft:
> >
> > 1. A brief, joint summary of the discovery dispute not to exceed one (1) page.
> >
> >    The draft you provided does not include a joint summary. It sets forth your unilateral position. It also fails to identify the discovery dispute, which concerns: (1) Bellagio's objections to Plaintiff's interrogatories and requests for production of documents; and (2) Plaintiff's objections to Bellagio's requests for production of documents.
> >
> > 2. A restatement of the full text of the discovery requests, or deposition question, in dispute as originally stated, or deposition question, in dispute as originally stated and the responses to the requests. This may be done in single-spaced, 10-font.
> >
> >    The draft you provided does not include this information.
> >
> > 3. A joint summary of the meet-and-confer efforts as required by LR IA 1-3(f), which includes: (1) a summary of discussions; (2) identification of time, place, manner, and participants; and (3) certification from counsel that, despite a sincere effort, the parties were unable to resolve or narrow the dispute without court intervention. This joint meet-and-confer summary may not exceed two (2) pages.
> >
> >    The "conferral history" section in your proposed draft is one-sided and includes numerous matters which are not properly the subject of a Stipulation Regarding Discovery Dispute and not reflective of meet-and-confer conferences. It consists of Plaintiff's unilateral positions and characterizations and is not neutral or a joint statement.
> >
> > 4. An explanation, without boilerplate language, of the position taken by each side, not to exceed two (2) pages per side.
> >
> >    You have not included this section. Rather, the entire document is presented as Plaintiff's position.

v. Each side must make a proposal of compromise of resolution of the disputed discovery (e.g., request, interrogatory, deposition question). The proposal may not exceed two (2) pages per side.

You have not included Plaintiff's proposal of compromise.

Your draft stipulation also includes several extraneous items, and presents as a motion, rather than a joint stipulation. With the exception of the section in which the parties present their respective positions (limited to 2 pages per side), the stipulation should be presented neutrally. Additionally, the Standing Order does not contemplate the submission of exhibits.

Please revise accordingly.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Saturday, June 6, 2026 8:00 AM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

Attached is Plaintiff's portion of a Stipulation Regarding Discovery Dispute pursuant to LR 26-7 and the Court's Standing Order. The sole issue presented is the meet-and-confer process and structure.

Section VII has been reserved for Defendant's position. Plaintiff requests that Defendant insert its positions and return the completed stipulation by 5:00 p.m. on Monday, June 8, 2026, so that the stipulation may be filed on Tuesday, June 9, 2026.

The exhibits referenced in the Exhibit Index consist of the parties' email correspondence, copies of which are in Defendant's possession. Exhibits will be filed with the Court as part of the stipulation package.

If Defendant declines to participate, Plaintiff will file the stipulation with Section VII noting: "Defendant declined to state a position."

Respectfully, Corian Edwards

---

**Butterfield, Chad C. (Las Vegas)** <Chad.Butterfield@jacksonlewis.com>
To: Corian Edwards <coriandelon@gmail.com>
Cc: "Trimmer, Paul T. (Las Vegas)" <Paul.Trimmer@jacksonlewis.com>, "Levin, Jennifer (Las Vegas)" <Jennifer.Levin@jacksonlewis.com>, "Portelli, Rebecca (Las Vegas)" <Rebecca.Portelli@jacksonlewis.com>

Mr. Edwards,

Please consider this email as my express disagreement that it would be appropriate to submit a discover dispute stipulation. I have repeatedly expressed a willingness to continue to engage have not, as evidenced by your list of conditions and unilateral determination that the meet and confer process has been exhausted. Your stated intention to file a unilateral discovery dispute improper, in disregard of the Court's prior admonitions, and will unnecessarily impose on the Court's time and resources. Please consider this as my unambiguous objection to the course of a

Best,
Chad

 **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 6:12:01 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

Thank you for your message. I wish to use this email to memorialize our interaction today. This correspondence and the full thread preceding it will be submitted to the Court as an exhibit to the stipulation filin

The sequence of events was as follows:

1. On June 6th at 8:00 AM, I submitted the Plaintiff's portion of the Stipulation of Discovery Dispute for our meet-and-confer failures. I requested Defendant's portion by June 8, 2026.

2. June 8th at 11:13 AM, you responded with a list of deficiencies and a request to "Revise accordingly."

3. June 8th at 1:17 PM, I submitted a corrected copy of the stipulation with the corrections and another request for Defendant's portion.

4. Today, June 9th at approximately 9:33 AM, you requested an in-person meet-and-confer before participating in the stipulation. The stipulation deadline, as stated, had already expired.

5. June 9th at 2:21 PM, I provided a list of conditions under which I would be willing to meet and confer instead of filing the stipulation unilaterally due to Defense's default.

6. June 9th at 2:50 PM, you responded that my conditions were not relevant if a "good faith attempt" and that I needed to withdraw them or confirm my position remains unchanged." This inferred to me you furtherance of meet and confer, not delay or retraction of the stipulation agreement.

7. June 9th at 2:58 PM, I asked for clarification whether or not you were looking for your meet-and-confer request to be in substitution of participation for stipulation.

8. June 9th at 3:01 PM, I received a boilerplate response.

9. June 9th at 3:14 PM, I clarified that our meet-and-confer conferences did not fail due to platform, and that your late request did not address the problems we encountered. I notified you that while I am not ag does not address our current concern, which is the stipulation.

10. June 9th at 3:18 PM, you submitted more boilerplate. You offered the ultimatum of withdrawing my conditions or "spending time productively" by choosing a place and time for meet and confer.

11. June 9th at 3:24 PM, I responded addressing your "spending time productively" comment, continued to assure you we can talk about a venue change later, and once again asked you to answer whether or no stipulation.

12. June 9th at 3:29 PM, you expressed you wanted me to "refrain from injecting unproductive commentary" and offered a new ultimatum: withdraw my conditions or admit "my position remains unchanged."

13. June 9th at 3:34 PM, I apologized for any inferred offense and notified you of the offense I inferred from my interpretation that my stipulation was somehow not productive. I asked you to answer my reques would answer your request of meet and confer.

14. June 9th at 3:40 PM, you accused my position of "per se bad faith." This time, you asked me to withdraw my conditions, or "advise" you if I'm not willing.

15. June 9th at 3:53 PM, I clarified that at no point had I communicated unwillingness to confer. I pointed out that your own words ***"I propose making a final meet and confer attempt before proceeding with dispute"*** answered the question I had been asking, which was if this was a ***substitution for stipulation***. I offered to hold off on filing the stipulation until the next day if you confirmed your intent to participate.

16. June 9th at 4:05 PM, you reiterated your willingness to travel to a location of my choosing, characterized me as "intent on filing your unilateral 'stipulation' with the Court rather than further engage in the n "You are, of course, free to act as you deem appropriate."

Your last response completely disregarded my genuine concerns and prioritized "your preference" which has been a running theme in our communications. While I often defer to your position as an officer of th our joint engagements need to prioritize your "preferences", especially when they may arguably abuse the meet and confer standards, and waste the time I could be devoting to taking care of my family financial conferral time was resigned by you. I do not get paid for that time. I have focused on completing all requirements for the courts to have opinion on this conduct, and tell us ***both*** what is acceptable and what is ne platform change solves the issues I have communicated to you, and offered the corrected stipulation. I am curious why you didn't offer when you received the deficient stipulation. I believe the Court will find fully exhausted and I will move forward accordingly. Thank you for you time.

Respectfully,

Corian

On Jun 9, 2026, at 4:04 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Once again, I am attempting to exhaust all efforts prior to involving the Court. I have requested that we meet and confer in person. I offered the use of our offices, which you indicated wa willing to travel to the location of your choice within the greater Las Vegas metropolitan area for the conference, thereby minimizing any burden on you. You have expressly conditioned y appear to be intent on filing your unilateral "stipulation" with the Court rather than further engage in the meet and confer process. You are, of course, free to act as you deem appropriate

Best,
Chad

<image732016.png>  **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 3:53 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

At no point have I communicated I was unwilling to have conference. By your own "per se" bad faith ideology, refusing to respond to the stipulation set forth and demanding I instead allo to manufacture the appearance of mutual obstruction isn't going to happen. Your quote, "***I propose making a final meet and confer attempt before proceeding with a stipulation fo*** answered the question, I just wanted a direct response from you. Once Judge Couviller makes a decision on the stipulation, I would be more than happy to discuss venue/platform chan necessary. I will give you 15 more minutes (based on your current reply speed) to substantively communicate your intent to participate in stipulation, after which I will accept your silence agree to participate, I will hold off on filing until tomorrow. I appreciate you for your time!

On Jun 9, 2026, at 3:39 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your continued insistence on conditioning your participation in the meet and confer process is per se bad faith. Please re-read my initial email, in which I expressly stated: "I propos confer attempt before proceeding with a stipulation for discovery dispute." If you are unwilling to meet and confer without condition, please simply advise.

Best,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 3:34 PM

**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jackson
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr Butterfield,

If I have offended you, I greatly apologize. I was offended by any insinuation that somehow my stipulation request was less than productive. Please respond on your answer for stip
to your subsequent request. I would argue that is more than fair.

Respectfully,
Corian

> On Jun 9, 2026, at 3:29 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> Kindly refrain from injecting unproductive commentary. Please either withdraw your conditions so we can move forward with scheduling the meet and confer conference or co
> position remains unchanged.
>
> Thank you in advance,
> Chad
>
> — **Chad C. Butterfield**
>   Attorney at Law
>
>   **Jackson Lewis P.C.**
>   300 S. Fourth Street
>   Suite 900
>   Las Vegas, NV 89101
>   Direct: (702) 921-2462 | Main: (702) 921-2460
>   Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>
> **From:** Corian Edwards <coriandelon@gmail.com>
> **Sent:** Tuesday, June 9, 2026 3:25 PM
> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@j
> **Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation
>
> Mr. Butterfield,
>
> There is considerable irony in an attorney who has resigned from two meet-and-confer conferences characterizing himself as the productive party. A productive response wo
> you responded to the Stipulation. In that same good faith effort, we could discuss moving future conferences to an alternative platform. I am not going to officially disagree wi
> future conferences, but it does not get to skip the line.
>
> Please make plain whether or not you intend to respond to the Stipulation Regarding Discovery Disputes. As of now, the record appears to insinuate that you do not.
>
> Respectfully, Corian
>
>> On Jun 9, 2026, at 3:18 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>>
>> Mr. Edwards,
>>
>> The request was in furtherance of the parties' reciprocal obligation to meet and confer.
>>
>> Best,
>> Chad
>>
>> — **Chad C. Butterfield**
>>   Attorney at Law
>>
>>   **Jackson Lewis P.C.**
>>   300 S. Fourth Street
>>   Suite 900
>>   Las Vegas, NV 89101
>>   Direct: (702) 921-2462 | Main: (702) 921-2460
>>   Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com
>>
>> **From:** Corian Edwards <coriandelon@gmail.com>
>> **Sent:** Tuesday, June 9, 2026 2:58 PM
>> **To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
>> **Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Por jacksonlewis.com>
>> **Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation
>>
>> Mr. Butterfield,
>>
>>  I apologize if I have jumped the gun, but I interpreted this request to be in substitution for your participation in the stipulation, yes?
>>
>> Respectfully,
>> Corian
>>
>>> On Jun 9, 2026, at 2:50 PM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Conditioning your participation in a meet and confer conference is not reflective of a good faith effort to meet and confer, which is a reciprocal requirement and ap[plicable to all] participants. *See* LR IA 1-3(f). As I have already offered to meet you at a location other than our offices, which I remain willing to do. Please either withdraw your meet and confer conditions or confirm that your position remains unchanged.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Tuesday, June 9, 2026 2:22 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecc[a...@]jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

Thank you for your June 9 email. After careful deliberation, I am willing to meet in person. Meeting will be subject to the following conditions and preconditions.

**Preconditions** (to be satisfied before the meeting is scheduled):

1.    **Zenoti booking data.** Defendant shall produce Zenoti booking records for calendar year 2024 for the Bellagio Spa poolside massage operation, with staff names redacted [to] last initials only. This data was identified by Ms. Wood in her June 18, 2024 investigation interview (DEF000468) and is directly relevant to Plaintiff's claims. Production in Exce[l] format is acceptable. Data shall include Times and dates of all booked pool massage therapy services from 01/01/2024- 12/31/2024, therapist name (Redacted, first and last initial[s]) Therapist gender identified as either "M" for male of "F" for female, service booked, amounts paid, guest name (Redacted, first and last initial only). Payment method (Room nu[mber,] credit/debit card numbers redacted).

2.    **Preservation confirmation.** Defendant shall provide a written response to Plaintiff's February 26, 2026 Evidence Preservation Notice, which identified six categories of c[ustodians] and specific ESI including Signal communications and Workday audit logs. That notice requested written confirmation within seven days. Over three months have passed with no [response.] one-paragraph confirmation of preservation measures taken is sufficient.

**Meeting Conditions:**

3.    **Neutral location.** The meeting shall take place at a mutually agreeable neutral location—not the offices of Jackson Lewis.

4.    **Written agenda and positions.** No later than 48 hours before the meeting, each party shall exchange: (a) a written agenda limited to the following items, in this order—(i) [deadline] extension, (ii) interrogatory numerosity, (iii) Plaintiff's RFP deficiencies, and (iv) Defendant's RFP deficiencies; and (b) a written summary of each party's current position on eac[h] item, including any reductions or revised proposals already offered. If a party's pre-meeting position on any item is acceptable to the opposing party, that party may accept in writ[ing before] the meeting, and the item need not be addressed at the conference. No additional items may be raised at the meeting. Final positions are due by 11:59pm two days before conferra[l (for June] 15, due 11:59pm on June 13)

5.    **Conferral waiver.** Any discovery dispute not substantively addressed at the meeting shall be deemed fully conferred on for purposes of LR 26-7(b) and may be raised in a[ny] subsequent Rule 37(a) motion without further meet-and-confer unless parties agree to a follow-up conferral. Any party resigning from conferral within the scheduled time allotted [is an] exercise of this waiver for their party.

6.    **One-Man party.**    To keep the conferral on a level playing field, each party shall only have one representative, in this case, Chad Butterfield for the Defense and Coria[n Edwards] for the Plaintiff.

Upon satisfaction of items 1 and 2, I will confirm a date for the meeting. I am generally available Monday through Thursday during business hours the week of June 15.

Respectfully,
Corian

> On Jun 9, 2026, at 9:33 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:
>
> Mr. Edwards,
>
> I propose making a final meet and confer attempt before proceeding with a stipulation for discovery dispute. I think an in-person meeting may be more produ[ctive] and is something we have not yet attempted. We could meet at our office, or I would be happy to meet you at another location if you prefer.
>
> Sincerely,
> Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Monday, June 8, 2026 1:18 PM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>
**Cc:** Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>; Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** Re: Edwards v. Bellagio Meet and Confer Stipulation

Mr Butterfield,

I have attached an edited copy in congruence with Judge Couvillier's Standing Order. Please complete your editions.

Respectfully,
Corian

On Jun 8, 2026, at 11:13 AM, Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com> wrote:

Mr. Edwards,

Your draft does not comply with the requirements of Judge Couvillier's Standing Order and is replete with inaccuracies and irrelevant information. The Standing Order requires the following, which are absent or deficient in your draft:

1. A brief, <u>joint summary</u> of the discovery dispute not to exceed one (1) page.

   The draft you provided does not include a joint summary. It sets forth your unilateral position. It also fails to identify the discovery dispute, which concerns: (1) Bellagio's objections to Plaintiff's interrogatories and requests for production of documents; and (2) Plaintiff's objections to Bellagio's requests for production of documents.

2. A restatement of the full text of the discovery requests, or deposition question, in dispute as originally stated, or deposition question, in dispute as originally stated and the responses to the requests. This may be done in single-spaced, 10-font.

   The draft you provided does not include this information.

3. A <u>joint summary</u> of the meet-and-confer efforts as required by LR IA 1-3(f), which includes: (1) a summary of discussions; (2) identification of time, place, manner, and participants; and (3) certification from counsel that, despite a sincere effort, the parties were unable to resolve or narrow the dispute without court intervention. This <u>joint</u> meet-and-confer summary may not exceed two (2) pages.

   The "conferral history" section in your proposed draft is one-sided and includes numerous matters which are not properly the subject of a Stipulation Regarding Discovery Dispute and not reflective of meet-and-confer conferences. It consists of Plaintiff's unilateral positions and characterizations and is not neutral or a joint statement.

4. An explanation, without boilerplate language, of the position taken by each side, not to exceed two (2) pages per side.

   You have not included this section. Rather, the entire document is presented as Plaintiff's position.

5. Each side must make a proposal of compromise or resolution of the disputed discovery (*e.g.*, request, interrogatory, deposition question). The proposal may not exceed two (2) pages per side.

   You have not included Plaintiff's proposal of compromise.

Your draft stipulation also includes several extraneous items, and presents as a motion, rather than a joint stipulation. With the exception of the section in which the parties present their respective positions (limited to 2 pages per side), the stipulation should be presented neutrally. Additionally, the Standing Order does not contemplate the submission of exhibits.

Please revise accordingly.

Sincerely,
Chad

— **Chad C. Butterfield**
Attorney at Law

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2462 | Main: (702) 921-2460
Chad.Butterfield@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Corian Edwards <coriandelon@gmail.com>
**Sent:** Saturday, June 6, 2026 8:00 AM
**To:** Butterfield, Chad C. (Las Vegas) <Chad.Butterfield@jacksonlewis.com>; Trimmer, Paul T. (Las Vegas) <Paul.Trimmer@jacksonlewis.com>
**Cc:** Levin, Jennifer (Las Vegas) <Jennifer.Levin@jacksonlewis.com>; Portelli, Rebecca (Las Vegas) <Rebecca.Portelli@jacksonlewis.com>
**Subject:** RE: Edwards v. Bellagio Meet and Confer Stipulation

Mr. Butterfield,

Attached is Plaintiff's portion of a Stipulation Regarding Discovery Dispute pursuant to LR 26-7 and the Court's Standing Order. The sole issue presented is the meet-and-confer process and structure.

Section VII has been reserved for Defendant's position. Plaintiff requests that Defendant insert its positions and return the completed stipulation by 5:00 p.m. on Monday, June 8, 2026, so that the stipulation may be filed on Tuesday, June 9, 2026.

The exhibits referenced in the Exhibit Index consist of the parties' email correspondence, copies of which are in Defendant's possession. Exhibits will be filed with the Court as part of the stipulation package.

If Defendant declines to participate, Plaintiff will file the stipulation with Section VII noting: "Defendant declined to state a position."


Respectfully, Corian Edwards