PAUL T. TRIMMER, ESQ.
Nevada State Bar No. 9291
CHAD C. BUTERFIELD, ESQ.
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Tel: (702) 921-2460
Fax: (702) 921-2461
Email: paul.trimmer@jacksonlewis.com
        chad.butterfield@jacksonlewis.com

*Attorney for Defendants*
*Bellagio LLC d/b/a Bellagio Hotel & Casino*
*and MGM Resorts International*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CORIAN EDWARDS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BELLAGIO, LLC d/b/a BELLAGIO HOTEL & CASINO, *et al.*,<br><br>Defendants. | Case No. 2:25-cv-01247-JAD-MDC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S UNILATERAL STIPULATION REGARDING DISCOVERY DISPUTE** |

Defendants Bellagio, LLC d/b/a Bellagio Hotel & Casino ("Bellagio") and MGM Resorts International ("MGMRI" and, together with Bellagio, "Defendants"), by and through their counsel, the law firm of Jackson Lewis P.C., provides the following response to Plaintiff's Stipulation Regarding Discovery Dispute (ECF No. 67).[1]

///

///

---

[1] Plaintiff unilaterally filed the subject Stipulation Regarding Discovery Dispute (ECF No. 67) over Bellagio's express objection that the parties had not exhausted their meet and confer obligations, and Bellagio's stated willingness to continue engaging in the meet and confer process. (*See* ECF No. 67, at p. 234 of 239.)

1

## I.      SUMMARY OF THE DISCOVERY DISPUTE

The following quote succinctly describes the instant discovery dispute:

> This case is filling up with black kettles and pots, gooses and ganders, slivers and logs, and folks dying by their swords.
>
> "A further counsel bear in mind:
> If that thy roof be made of glass,
> It shows small wit to pick up stones
> To pelt the people as they pass."

*Son Ba Le v. VBS TV*, No. SACV 13-689 AG (JPRx), 2013 U.S. Dist. LEXIS 198725, at \*4 (C.D. Cal. Dec. 9, 2013) (quoting Miguel de Cervantes Saavedra, *The Ingenious Gentleman Don Quixote of La Mancha* (John Ormsby trans.)).

Plaintiff's unilateral Stipulation Regarding Discovery Dispute (ECF No. 67) exemplifies the "throwing stones in a glass house" approach cautioned against by the court in *Son Ba Le v. VBS TV*. Plaintiff has presented a decidedly one-sided version of events while omitting his significant contributions to the present discovery dispute. As this Court is well-aware, such one-sided narratives are unproductive and rarely, if ever, provide an accurate depiction of the events at issue. Defendants have no desire to engage in a finger-pointing campaign—which the Court presumably has no desire to mediate—and have therefore have elected to refrain from reciting the numerous ways in which Plaintiff has frustrated and impeded both the discovery process and the meet and confer requirement.[2]

Defendants respectfully submit that the present dispute, which is the product of failures by both parties with fault lying on both sides, was entirely unnecessary as defense counsel remained willing to continue the meet and confer process, thereby potentially avoiding judicial intervention. Counsel for Defendants acknowledges there is room for improvement and is committed to moving forward in good faith in a civil, respectful, and productive manner irrespective of Plaintiff's position or intentions.

///

---

[2] Defendants are willing to provide this information in a supplemental filing in the unlikely event the Court determines such information would be beneficial to the Court's consideration of the present dispute.

## II.    RESPONSE TO PLAINTIFF'S SUMMARY OF THE DISCOVERY DISPUTE

Defendants vehemently dispute Plaintiff's contention that Defendants have failed to engage in the meet and confer process in good faith. Plaintiff has identified five examples, none of which reflects bad faith participation, including "[1] cancelling a confirmed conference on shifting grounds, [2] imposing an undisclosed time limit, [3] filibustering, [4] departing conferences before the substance was reached, and [5] consuming conference time on collateral matters." (ECF No. 67, at 1:17-18, 2:3-17.) Defendants address each contention below.

### A.    The "Same Day Cancellation" Issue

Plaintiff's contention that defense counsel's routine request to reschedule the meet and confer conference (that was originally initiated at Plaintiff's request) evidences bad faith participation is without merit.

Counsel for Defendants acknowledges that the parties had agreed to meet and confer at 4:00 p.m. on May 21, 2026, and that counsel for Defendants offered May 21st as an available date, although Plaintiff proposed the 4:00 p.m. start time. After the parties had confirmed the May 21st meet and confer conference, counsel for Defendants accepted a request for a follow-up settlement conference that same afternoon, fully anticipating it would be finished by the 4:00 p.m. meet and confer conference with Plaintiff. When it became apparent that the settlement conference was likely to run longer than originally anticipated, counsel for Defendants promptly reached out to Plaintiff requesting to reschedule the meet and confer conference for the following day, May 22, 2026, noting availability any time before 3:00 p.m.[3] (*See* ECF No. 67, at pp. 12-13 of 239.)

In response, Plaintiff proposed moving the start time of the May 21st conference to 4:30 or 5:00 p.m., which he contended "should give you sufficient time to wrap up your settlement conference." (ECF No. 67, at p. 13 of 239.) Counsel for Defendants responded by advising he had family commitments that night and requesting Plaintiff's availability the following week in the event he was not available on May 22nd. (ECF No. 67, at p. 14 of 239.) Rather than simply provide his availability for either May 22nd (Friday) or the following week, Plaintiff demanded answers to

---

[3] In fact, the settlement conference did not finish until approximately 4:30 p.m.

3

the following series of questions:

> You notified me of this change at 2:40 PM — 80 minutes before the scheduled conference. Your scheduling email stated you were available any time after 2:30. That means either you discovered this conflict moments before notifying me, or you were aware of it earlier and did not reach out to reschedule. Which is it?
>
> When I suggested starting at 4:30 or 5:00, you declined, citing a family engagement. I am confused by this. Based on our prior meet-and-confer conferences, I was under the impression that you kept your schedule open so that the conference could run as long as necessary. Has that practice changed? If so, how much time were you allotting for today's conference?
>
> If you have a shortened window available this evening rather than no availability at all, I would ask that we use whatever time is available now and schedule a continuation for the remaining issues. That is a more reasonable accommodation than cancelling entirely — particularly given that this is the third time a confirmed conference has been cancelled or missed same-day by defense counsel.
>
> I need a substantive response to these questions. The record in this case must reflect whether the meet-and-confer process is being conducted in the "intentional, sincere, robust, and deliberately planned" manner that Judge Couvillier's Standing Order requires.

(ECF No. 67, at p. 14 of 239.)

Plaintiff then escalated the matter by mischaracterizing Defendants' request to reschedule as a cancellation and concluding "I will consider today's conference a missed obligation and will memorialize this exchange in any subsequent filing." (ECF No. 67, at p. 15 of 239.) Immediately upon completing the settlement conference, counsel for Defendants wrote to Plaintiff as follows:

> I have offered my availability tomorrow and requested yours. I also requested alternative dates/times next week if you are not available tomorrow, which you have not yet provided. I am neither obligated nor inclined to make myself available after normal business hours. As I explained earlier, I had a settlement conference this afternoon that took longer than previously anticipated. As you noted in your 3:09 p.m. email, "schedules shift – these things happen." You also represented that you are "willing to be as reasonable as possible to facilitate this conference" yet you still have not provided your availability next week. I do appreciate your willingness to be as reasonable as possible and look forward to receiving your availability so we can re-set the conference you requested.

(ECF No. 67, at p. 15 of 239.)

4

Again, rather than simply provide his availability, such that the parties could efficiently reschedule the conference, Plaintiff further escalated his rhetoric and stated he would not provide his availability for a re-scheduled conference until defense counsel provided answers to his questions:

> Are you selectively reading my emails? I informed you that I am unavailable tomorrow specifically because I rearranged tomorrow's schedule to accommodate today's conference at your request. I also asked you several direct questions in an effort to understand why a confirmed conference was cancelled with 80 minutes' notice, instead of a gentle message stating you would be late. You have not answered any of them. Are you declining to respond?

> I said I was willing to be reasonable, and I am. But reasonableness is not a one-way obligation. You asked me to pick a time. I picked a time. I rearranged my professional obligations around that time. You cancelled 80 minutes before, declined my offer to start 30 to 60 minutes later — still within your own proposed availability window — and are now requesting that I rearrange my schedule a second time while offering no explanation for why the first rearrangement was wasted.

> At no point did my offer of reasonableness extend to allowing the meet-and-confer schedule to be operated unilaterally and without accountability. My reasonableness was offering to work outside the original time to accommodate your last-minute change. That offer was rejected.

> You have not explained when you became aware of today's conflict. You have not explained how family commitments arose after you confirmed a 4:00 PM obligation. You have not explained why we could not use partial time today and schedule a continuation. You have not explained why 4:30 or 5:00 PM — normal business hours — was unworkable. Instead, you quoted my courtesy back to me and asked for more dates.

> I am currently unable to distinguish this conduct from intentional obstruction of the meet-and-confer process. I would welcome any explanation that changes that conclusion.

> I will provide next week's availability once you have answered the questions I have already asked. The meet-and-confer process requires good faith from both parties, and I am not prepared to continue rearranging my schedule without understanding why the last arrangement was discarded.

(ECF No. 67, at p. 15 of 239.) Counsel for Defendants replied to the foregoing email stating: "Either provide your availability next week or not. It's your meet-and-confer request, not mine" (ECF No. 67, at p. 16 of 239), to which Plaintiff responded:

You have now declined to answer any of the questions I asked, and your position is that this is "your meet-and-confer request, not mine."

For the record: the meet-and-confer obligation under LR 26-7(b) is mutual. It is a prerequisite that both parties must satisfy before discovery disputes may be presented to the Court. It is not a courtesy I am requesting from you, it is a procedural obligation you share.

Your refusal to explain today's cancellation, your refusal to answer direct questions about your scheduling conduct, and your statement that you do not consider this conference your obligation are now part of the record. I will provide this correspondence to the Court in connection with any filing under FRCP 37(a) and LR 26-7.

I am available Monday 12-5pm , Wednesday at 10AM-1PM, or Thursday 9am-5pm. If none of these work, propose an alternative by 5:00 PM Friday. I will consider any further delay to be an act of intentional obstruction.[4]

(ECF No. 67, at p. 16 of 239.) Counsel for Defendants responded by advising he was available Wednesday, May 27, 2026, and asked Plaintiff to circulate a calendar invitation. (ECF No. 67, at p. 16 of 239.)

The foregoing exchange is representative of the parties' written and verbal communications throughout the meet and confer process. Rather than cast stones from a glass house, Defendants will leave it to the Court to determine whether either of the parties' conduct above is reflective of good or bad faith participation in the meet and confer process.

### B.    The "Undisclosed Time Limit" Issue

Plaintiff's contention that Defendants participated in bad faith on the basis that defense counsel advised Plaintiff that he was limited to one hour for the May 27, 2026 meet and confer conference is wholly unwarranted.

Plaintiff's contention is based on his mischaracterization that defense counsel "previously represent[ed] that he would allow as much time as the conferral required." (ECF No. 67, at 2:8-9.) Further context is necessary. In a conversation with Plaintiff several weeks earlier, defense counsel generally expressed a willingness to spend as much time as necessary to work through the meet and confer process, which Plaintiff appears to misconstrue as an unqualified offer to spend as much

---

[4] Plaintiff has continued to demand answers to these questions on numerous occasions.

time as necessary <u>in a single setting</u> without regard to other professional and personal obligations, including outside of normal business hours. Plaintiff's apparent interpretation is unreasonable, and his accusation of bad faith is unfounded – particularly since the Zoom invitation that Plaintiff created and sent to defense counsel identified a scheduled time of 10:00 a.m. to 11:00 a.m. (*i.e.*, one hour). Defense counsel's stated one-hour limitation for a conference that had been set for one hour cannot possibly be deemed bad faith participation.

### C.    The "Filibustering" Issue

Plaintiff has unjustifiably accused defense counsel of "filibustering" and "refus[ing] to identify authority" during the May 27, 2026 conference. (ECF No. 67, at 2:9-12.)

During the parties' conferral regarding Bellagio's objections to Plaintiff's Interrogatory No. 7, Plaintiff repeatedly demanded that defense counsel "identify the specific legal authority" supporting Defendants' numerosity objection. As a threshold matter, Plaintiff's demand for "the specific legal authority" supporting Bellagio's objection was unwarranted as Bellagio expressly cited to *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) as the basis for the objection in its answers to Plaintiff's interrogatories.

Defense counsel repeatedly attempted to answer Plaintiff's question, including by citing to *Kendall* and informing Plaintiff that defense counsel had also reviewed numerous cases in the District of Nevada in which courts have addressed numerosity objections. Plaintiff repeatedly interrupted defense counsel, repeating an unfortunate pattern that has plagued all meet and confer efforts. Defense counsel also attempted to explain the thought process underlying Bellagio's determination that Interrogatory No. 7 consists of nine discrete interrogatories but was unable to say more than a few words before being interrupted. Plaintiff also mischaracterized defense counsel's position, stating "From what I hear, you're saying you did not rely on any case."

After several minutes of badgering and harassment by Plaintiff, defense counsel attempted to again answer Plaintiff's question by reading the following excerpt from *Kendall*:

> [p]robably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate

7

interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related.

*Id.* Plaintiff once again interrupted defense counsel after only a few words and dismissively stated he was already familiar with *Kendall* and made the bizarre accusation that defense counsel was "filibustering."

Defendants respectfully submit that the meet and confer process requires mutual civility and respect such that if an appropriate question is asked, the party asking the question should allow the answering party to respond fully without interruptions, accusations, and mischaracterizations.

### D.     The "Early Departure" Issue

Counsel for Defendants acknowledges leaving the conferences on June 2, 2026 and June 4, 2026, both of which were precipitated by Plaintiff's constant interruptions, insults, berating language, hostility, and raised voice. (*See* ECF No. 67, at pp. 95, 183-84, 198, and 217-220 of 239.) Defendants respectfully submit that good faith participation does not require defense counsel's subjection to harassment.

### E.     The "Collateral Matters" Issue

Defendants disagree with Plaintiff's characterization of the so-called "collateral matters" issue during the June 4, 2026 conference.

Defense counsel suspects Plaintiff may have, without consent, recorded and/or transcribed one or more of the parties' meetings conducted via videoconference. On numerous occasions in which defense counsel set up the meeting via Teams, defense counsel received notifications that "Corian's Notetaker (Otter.ai)" was waiting in the lobby, as reflected below:



Upon information and belief, Otter.ai an artificial intelligence ("AI") meeting assistant which engages in real-time recording and transcription of Google Meet, Zoom, and Microsoft Teams meetings for Otter accountholders. Of concern, Otter.ai is apparently capable of joining virtual meetings hosted by Otter accountholders without any disclosure to or consent of the other meeting participants. Plaintiff hosted the May 27 and June 2 conference via Zoom, such that defense counsel was reasonably concerned that Plaintiff, through his Otter.ai Notetaker, may have recorded and/or transcribed those meetings without defense counsel's consent.

Defense counsel raised this issue at the beginning of the June 4 conference by asking Plaintiff if he had recorded/transcribed or caused to be recorded/transcribed any of the parties' prior meetings. Plaintiff offered a carefully worded denial in response, stating "I am not recording or transcribing" and "I do not record or transcribe." Defense counsel sought clarification, noting Plaintiff's use of the present tense did not respond to defense counsel's inquiry regarding whether Plaintiff had recorded or transcribed any prior meetings. Plaintiff refused to confirm that he had not recorded or transcribed any prior meetings and repeatedly asserted "asked and answered." Throughout this exchange, Plaintiff acted in a hostile and accusatory manner and repeatedly interrupted and spoke over defense counsel.

Defendants respectfully submit that it was entirely appropriate for defense counsel to inquire as to whether Plaintiff was or had been recording or transcribing the parties' meetings without consent, as this bears directly on the issue of Plaintiff's good faith participation in the meet and confer process, as it is unlawful to intercept (*i.e.*, record or transcribe) or attempt to intercept wire communications without the consent of all parties. *See* NRS 200.620; *see also Lane v. Allstate Ins. Co.*, 114 Nev. 1176, 969 P.2d 938 (Nev. 1998) (interpreting NRS 200.620 as requiring the consent of all parties to the wire communication).

**III.     CERTIFICATION OF COUNSEL**

I, Chad C. Butterfield, subject to penalties of perjury under the laws of the United States, hereby declare that the assertions in this Certification of Counsel are true and correct and are based upon my personal knowledge, unless otherwise stated.

9

1.      I am an attorney with Jackson Lewis P.C. and am one of the attorneys of record for Defendants Bellagio LLC d/b/a Bellagio Hotel & Casino and MGM Resorts International in the above-captioned action.

2.      The factual averments set forth in Section II are true and correct and based upon my personal knowledge.

3.      On June 6, 2026, Plaintiff sent me a proposed Stipulation Regarding Discovery Dispute. On Monday, June 8, 2026, I sent Plaintiff an email identifying numerous inaccuracies and deficiencies. Plaintiff responded by providing a revised draft, which remained defective.

4.      On June 9, 2026, I sent an email to Plaintiff in which I proposed "making a final meet and confer attempt before proceeding with a stipulation for discovery dispute" and suggested that "an in-person meeting may be more productive[.]" (ECF No. 67, at p. 224 of 239.)

5.      In response, Plaintiff advised that he would be willing to meet in person, subject to two "preconditions" to be satisfied before any meeting would be scheduled, and four "conditions" under which the meeting would proceed. (ECF No. 67, at pp. 225-26 of 239.) Plaintiff declined to withdraw the preconditions and conditions and proceeded to unilaterally file the subject Stipulation Regarding Discovery Dispute over my express objection. (ECF No. 67, at pp. 226-230, and 234 of 239.)

6.       I cannot, in good faith, certify that the parties were unable to resolve or narrow the subject dispute without court intervention. I repeatedly informed Plaintiff that I remained willing to make another attempt to meet and confer. Plaintiff rejected my offer and instead elected to seek court intervention.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2026

                                                               */s/ Chad C. Butterfield*
                                                               CHAD C. BUTTERFIELD

///

///

10

## IV.    DEFENDANTS' PROPOSAL OF COMPROMISE

Defendants propose that the Court issue an order: (1) requiring the parties to conduct an in person meet and confer conference within fourteen (14) days; (2) instructing the parties to engage in civility and mutual respect; (3) instructing the parties to refrain from engaging in conduct that undermines the meet and confer process, including, but not limited to, making insulting and disparaging remarks, accusations or attributions of ill-intent or bad faith, interrupting the other speaker, mischaracterizing the other party's statements and positions, raising their voices, and making veiled and/or explicit threats; (4) instructing the parties to cooperate in good faith in scheduling and/or rescheduling conferences; (5) prohibiting the parties from imposing unilateral deadlines; (6) prohibiting making ultimatums and/or conditioning further participation on the satisfaction of unilateral demands; and (7) prohibiting the parties from recording and/or transcribing any videoconference or telephonic meetings, whether personally or via the use of AI agent or other means.

Counsel for Defendants respectfully represents to the Court that he is willing to adhere to the terms set forth in the foregoing proposal.

DATED this 23rd day of June, 2026.

JACKSON LEWIS P.C.

*/s/ Chad C. Butterfield*
Paul T. Trimmer, Esq.
Nevada State Bar No. 9291
Chad C. Butterfield, Esq.
Nevada State Bar No. 10532
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

*Attorneys for Defendants Bellagio LLC*
*d/b/a Bellagio Hotel & Casino*
*and MGM Resorts International*

11

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 23rd day of June, 2026, I caused to be served a true and correct copy of the above and foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S UNILATERAL STIPULATION REGARDING DISCOVERY DISPUTE** via the U.S. District Court, District of Nevada's CM/ECF electronic filing and service system.

Corrian Edwards
Las Vegas, Nevada
Email: coriandelon@gmail.com

*Plaintiff Pro Se*

                                        /s/ Jennifer Levin
                                        Employee of Jackson Lewis P.C.